**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JO BENNETT, | |
|        Plaintiff, | |
| v. | No. 24-cv-00592-JMY |
| SCHNADER HARRISON SEGAL & LEWIS LLP, et al., | |
|        Defendants | |

<u>**JOINT REPORT OF RULE 26(f) MEETING**</u>

In accordance with Federal Rule of Civil Procedure 26(f), counsel for the parties conferred on May 3, 2024 and submit the following report of their meeting for the court's consideration:

    **1.**      **Discussion of Claims, Defenses and Relevant Issues**

<u>**Plaintiff's Description of the Claims:**</u> Plaintiff is a former Income Partner at Defendant Schnader Harrison Segal & Lewis, LLP, a limited liability partnership in dissolution ("Schnader"). As an Income Partner, she was a statutory employee of Schnader and a participant in the Schnader Harrison Segal & Lewis LLP Retirement and Savings Plan ("the Plan"), which is an "employee pension benefit plan" within the meaning of § 3(2)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(2)(A). The Plan purports to be a "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). The Defendants in this action are Schnader, which serves as the Plan's Administrator, as that term is defined in ERISA § 3(16), 29 U.S.C. § 1002(16), and each of the individuals that Schnader identified in writing as being Plan fiduciaries pursuant to a request for Plan documents Ms. Bennett submitted pursuant to ERISA § 104(b),

29 U.S.C. § 1024(b).  The individual defendants are also former equity partners of Schnader.

The Complaint alleges that Defendants mishandled certain employee contributions to the Plan that were in the form of mandatory deferred compensation and for which non-equity partners and counsel were required to defer a portion of their compensation into the Plan and Defendants failed to segregate the contributions from the firm's general assets and promptly remit them to the Plan. Instead, these employee contributions were comingled with Schnader's general assets and were used to fund the firm's operations, including making regular distributions to the firm's equity partners (including Defendants). Specifically, the complaint alleges that Schnader and its equity partners withheld deferred compensation contributions from non-equity partners and counsel for up to 18 months at a time.  Moreover, contributions withheld in 2022 and 2023 were never paid to the Plan due to Schnader's financial difficulties and liquidation.

The Complaint alleges that these actions represent breaches of fiduciary duty, prohibited transactions, and violations of ERISA.  The Complaint seeks relief on behalf of a proposed class of non-equity partners and counsel who had contributions withheld but not remitted to the Plan.  The Complaint alleges that Defendants engaged in: various breaches of fiduciary duty to the putative class in violation of Section ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) (Count I); various prohibited transactions pursuant to ERISA § 406(b), 29 U.S.C. § 1106(b), (Count II); various prohibited transactions pursuant to ERISA § 406(a), 29 U.S.C. § 1106(a), (Count III); various breaches of fiduciary duty to the putative class in violation of Section ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) (Count IV); violations of ERISA § 102, 29 U.S.C. § 1022, and § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), (Count V); and knowing participation in a fiduciary breach, prohibited transaction, or other violations (Count VII).  In addition, Count VI seeks to hold Defendants jointly and severally liable for the breaches of their co-fiduciaries pursuant to ERISA §405(a), 29 U.S.C. § 1105(a).  For

the violations alleged in the Complaint, Plaintiff seeks equitable relief pursuant to ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3), in the form of an accounting of contributions and investment losses, a surcharge against the defendants for financial harm caused, and the imposition of a constructive trust over all unremitted contributions. The Complaint further seeks declaratory and injunctive relief, including a declaration that the defendants breached their fiduciary duties under ERISA and an order compelling the defendants to make good on all losses to the Plan.

**Defendants' Description of their Defenses:** Defendants intend to file a motion to dismiss on May 14.  Their motion will argue, among other things, that what Plaintiff has not plausibly alleged that the contributions in question are employee contributions; instead, they are discretionary employer contributions. As such, they are not plan assets and fall outside of ERISA's regulatory regime. Moreover, Defendants will argue that, even if Plaintiff has plausibly alleged that the contributions were employee contributions, (i) ERISA's three-year statute of limitations bars Plaintiff's claims from 2018 through 2020, (ii) Plaintiff lacks standing to challenge Schnader's alleged violations arising in 2023, and (iii) Plaintiff has not plausibly alleged that the individual equity partners who were not on the Executive or Wind-up Committees had fiduciary obligations for the alleged fiduciary misconduct.

Should the case proceed beyond the pleadings stage, Defendants will take the position that the proposed class fails to satisfy the Rule 23 standard for class certification. Defendants expect to argue, among other things, that categorizing the challenged contributions as employee contributions as Plaintiff alleges would mean that the putative class members contributed amounts above the Internal Revenue Code's employee contribution limits. Consequently, Internal Revenue Code rules would require these class members to remove the excess contributions from tax qualified accounts, pay distribution taxes and retroactive income taxes on those amounts, and incur an additional excise tax.

**Other issues:** The parties will need discovery regarding class certification and the merits in the form of written discovery requests, document production from Plaintiff and Defendants, deposition testimony, and expert testimony.  The parties may also require limited non-party discovery.  Discovery may reveal that there are additional defendants.

### 2.    Informal Disclosures

The parties have made initial disclosures as is required under Federal Rule of Civil Procedure 26(a)(1).  Those initial disclosures were made on April 9, 2024.  In addition, the parties have discussed informally exchanging additional documentary evidence for purposes of addressing a potential motion to dismiss and settlement, with such exchange contingent upon the entry of an appropriately worded protective order. The parties anticipate submitting a proposed protective order by May 17.

### 3.    Formal Discovery

Discovery has already commenced, with Plaintiff having served initial interrogatories on Schnader. The parties have been discussing, and will continue to discuss, how to best address e-discovery in connection with this matter and the costs of conducting such discovery, which will be necessary.

**Plaintiff's position:** Plaintiff does not believe that discovery needs to be bifurcated and addressed in phases. Defendants' proposal regarding bifurcation is premature as all of the Defendants are currently alleged to be *fiduciaries* based on a document that Schnader provided to Ms. Bennett in response to a pre-litigation request pursuant to ERISA § 104(b)(4).  Plaintiff is amenable to postponing or delaying discovery with respect to tracing of assets (which may be necessary for relief for claims against any Defendants who are found not to be fiduciaries) until later in the discovery period (e.g. after briefing of class certification is complete). Expert discovery can also run concurrently with

4

fact discovery and is discussed further below.

It is Plaintiff's position that 120 days will not be sufficient to complete discovery in this complex class action. Instead, Plaintiff proposes a discovery period at least nine months from Defendants' Answer given the number of Defendants, complexity of Plaintiff's claims against Defendants, the class action allegations alleged, and the anticipated volume of documentary evidence that will need to be reviewed by the parties prior to taking depositions. With respect to depositions, there are presently 35 Defendants in this action, each of whom may need to be deposed, and scheduling and taking those depositions will take a significant amount of time. Notwithstanding the foregoing, Plaintiff proposes completing discovery related to class certification within 120 days of Defendants filing of an answer and moving for class certification within 150 days following Defendants' answer.

Defendants proposed schedule is problematic for several reasons: First, Defendants' due date for Plaintiff's motion for class certification is set on a date when one of Plaintiff's counsel (Joseph Barton) expects to be in a two week ERISA class action trial (from July 29 through August 9, 2024); Second, Defendants' proposed schedule provides insufficient time to conduct class discovery, given that Defendants have not yet answered the Complaint. Third, Defendants' proposed schedule provides inadequate time to conduct merits discovery in this case following class certification, particularly given the number of Defendants.

To the extent that Court intends to set specific dates now, Plaintiff proposes the following schedule:

- Motion for class certification:        October 1, 2024
- Opening expert reports:                March 3, 2025
- Response expert reports:               April 3, 2025
- Close of all discovery:                May 2, 2025

- Dispositive motions:                              June 2, 2025

**Defendants' positions:**  Defendants believe this case should proceed two phases: (i) class certification, merits discovery on the Fiduciary Claims, and trial on the Fiduciary Claims; and then—if necessary—(ii) merits discovery and trial on the Nonfiduciary Claims.

*Class certification & Fiduciary Claims.*  As described above, Defendants believe they have strong arguments in opposition to class certification—in short, that Plaintiff's theory would harm the putative class members she purports to represent. Class certification discovery will likely require limited document discovery from the parties, little or no third-party discovery, and likely one deposition (Plaintiff). Deciding class certification on the front end would allow the parties to more accurately determine the amount at issue going forward, aid potential settlement discussions, and streamline remaining merits discovery on the Nonfiduciary claims (defined below).

Defendants propose that class certification discovery proceed concurrently with merits discovery on Plaintiff's Fiduciary Claims, but that the Court bifurcate discovery and trial as to the Nonfiduciary Claims.

Plaintiff brings essentially two categories of claims: those against alleged fiduciaries for violating their ERISA fiduciary obligations ("Fiduciary Claims"), and those against alleged nonfiduciaries for allegedly "knowingly participating" in the fiduciaries' underlying breaches ("Nonfiduciary Claims").

Plaintiff's Nonfiduciary Claims against several dozen individual equity partners with no role in plan administration bring with them massive discovery burdens. *First,* as Plaintiff notes, she will likely seek to establish each Defendant's knowledge of the underlying breach via depositions and trial testimony of each of the several dozen Nonfiduciary Claim Defendants. *Second,* Plaintiff will likely seek years'-worth of personal financial records for each of these individual Defendants—an

incredibly burdensome proposition. This is because the relief available to Plaintiff is not legal, but equitable, *see* 29 U.S.C. § 1132(a)(3), meaning the Court may only order the return of property in a Defendant's possession that rightfully belongs to an ERISA plan; ERISA's equitable relief provision does not allow an award of legal damages from a defendant's general assets. *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250 (2000). Thus, to recover equitable relief, Plaintiff must first demonstrate the property can "clearly be traced to particular funds or property in the defendant's possession," *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002), which Plaintiff's counsel has stated during conferrals will require discovery into Defendants' personal finances. The tracing issue will also likely require each side to engage a forensic accountant to provide expert testimony on the tracing issue. At trial, it will require testimony from each individual about their knowledge and from the forensic accounting experts.

Because the Nonfiduciary Claims are derivative of the Fiduciary Claims—that is, if the Fiduciary Claims fail, the Nonfiduciary Claims necessarily do, as well—these onerous discovery burdens and trial costs are moot if the Court were to determine that there was no underlying ERISA violation. Defendants thus propose proceeding with the Fiduciary Claims first, followed by the Nonfiduciary Claims, if necessary.

*Proposed schedule:*

- Motion for class certification:              August 1, 2024
- Close of fact discovery on Fiduciary Claims:     December 20, 2024
- Opening expert reports on Fiduciary Claims:      January 31, 2025
- Response expert reports on Fiduciary Claims:     February 28, 2025
- Close of expert discovery on Fiduciary Claims:   March 28, 2025
- Dispositive motions on Fiduciary Claims:         May 2, 2025

4.      **Expert Witness Disclosures**

**Plaintiff's position:**  Plaintiff believes that expert discovery should run concurrently with fact discovery and proposes the above schedule.

**Defendants position:** As outlined above, Defendants propose roughly three months of expert discovery following fact discovery.  Defendants believe that the most efficient way to proceed is for fact discovery to conclude before expert discovery. Doing so will allow the parties' experts to have the benefit of a complete factual record before opining, reducing the risk that the parties will submit supplemental or amended reports.

5.      **Early Settlement or Resolution**

The parties have discussed whether they can reach an out-of-court resolution via private mediation and the appropriate timing for doing so. Plaintiff's counsel has discussed this issue with their client and Plaintiff is willing to engage in an early mediation. Defendants' Counsel are in the process of conferring with their clients and hope to provide an update regarding mediation to the Court at the Rule 16 conference.  In the event a settlement is reached on behalf of a class, it will require court approval pursuant to Federal Rule of Civil Procedure 23.

6.      **Magistrate Jurisdiction**

The parties do not consent to proceeding before a United States Magistrate Judge.

7.      **Trial date**

Given the nature of Plaintiff's claims, and the possibility that some or all of them may be narrowed or resolved by or before summary judgment, the parties do not believe that it makes sense to schedule a date for trial at this time.

8.      **Other Matters**

None at this time.

Respectfully submitted:

/s/ Adam H. Garner

Adam Harrison Garner (320476)
Melanie J. Garner (315058)
The Garner Firm, Ltd.
1617 John F. Kennedy Blvd., Suite 550
Philadelphia, PA 19103
Tel: (215) 645-5955
Fax: (215) 645-5960
adam@garnerltd.com
melanie@garnerltd.com

R. Joseph Barton (admitted *pro hac vice*)
Barton & Downes LLP
1633 Connecticut Ave, Suite 200
Washington D.C. 20009
Tel: (202) 734-7046
jbarton@bartondownes.com

*Attorneys for Plaintiff*

Dated: May 9, 2024

/s/ Andrew Salek-Raham

William J. Delany (PA 74864)
Lars C. Golumbic (admitted *pro hac vice*)
Andrew D. Salek-Raham (admitted *pro hac vice*)
M. Caroline Wood (admitted *pro hac vice*)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, NW
Washington, DC 20006
Phone: (202) 861-6643
Fax: (202) 659-4503
wdelany@groom.com
lgolumbic@groom.com
asalek-raham@groom.com
cwood@groom.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of May 2024, a copy of the foregoing was electronically served on all counsel of record via the Court's CM/ECF system:

/s/ Adam H. Garner
Adam Harrison Garner