**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JO BENNETT,<br><br>                    Plaintiff,<br><br>v.<br><br>SCHNADER HARRISON SEGAL & LEWIS LLP, et al.,<br><br><br>                    Defendants. | Case No.  2:24-cv-00592-JMY |

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

BACKGROUND ....................................................................................................................... 3

  I.   The Firm.......................................................................................................................... 3

  II.  The Plan ......................................................................................................................... 3

  III. The Lawsuit ................................................................................................................... 6

ARGUMENT ............................................................................................................................ 10

  I.   Legal Standard ............................................................................................................. 10

      A.  Fed. R. Civ. P. 12(b)(1)........................................................................................ 10

      B.  Fed. R. Civ. P. 12(b)(6)........................................................................................ 10

  II.  The Court must dismiss all claims for failure to state a claim. ........................................ 11

      A.  Plaintiff fails to plausibly allege that the Employer Contributions were employee contributions. ...................................................................................................... 12

      B.  The Court should dismiss with prejudice Plaintiff's breach of fiduciary duty claim because the Employer Contributions were employer, not employee, contributions... 15

      C.  Because the Employer Contributions were not "plan assets," Plaintiff has not plausibly pleaded a prohibited transaction claim.......................................................... 17

      D.  Plaintiff fails to state a co-fiduciary liability claim. .................................................. 18

  III. If the Complaint is not dismissed in its entirety, it must be trimmed. .............................. 20

      A.  Plaintiff lacks standing to bring claims based on the 2024 Contribution. ................. 20

      B.  ERISA's three-year statute of limitations bars Plaintiff's breach of fiduciary duty claims arising before February 2021.......................................................................... 21

      C.  Plaintiff fails to plausibly allege that the Non-Committee Defendants were Plan fiduciaries.............................................................................................................. 23

      D.  Plaintiff's allegations relating to the September contributions are limited to the Executive Committee Defendants, and her allegations relating to the 2023 and 2024 Contributions are limited to the Wind-Up Committee Defendants. .................. 26

  IV. Plaintiff has not properly pleaded any claims against non-fiduciaries. ............................ 27

CONCLUSION.......................................................................................................................... 30

i

**TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
   727 F.3d 502 (6th Cir. 2013) ......................................................................... 15

*Ahrendsen v. Prudent Fiduciary Servs.*,
   No. 21-cv-2157, 2022 WL 294394 (E.D. Pa. Feb. 1, 2022) .............................. 28, 29

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................... 11

*Bohus v. Restaurant.com, Inc.*,
   784 F.3d 918 (3d Cir. 2015) ........................................................................... 21

*Boley v. Universal Health Servs., Inc.*,
   36 F.4th 124 (3d Cir. 2022) ........................................................................... 21

*Buck v. Hampton Twp. Sch. Dist.*,
   452 F.3d 256 (3d Cir. 2006) ............................................................................. 4

*Chesemore v. All. Holdings, Inc.*,
   No. 09-CV-413, 2013 WL 6989526 (W.D. Wis. Oct. 16, 2013), *aff'd sub nom.*
   *Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016)......................................... 29, 30

*Chesemore v. Fenkell*,
   829 F.3d 803 (7th Cir. 2016) ......................................................................... 29

*Daniels v. Thomas & Betts Corp.*,
   263 F.3d 66 (3d Cir. 2001).............................................................................. 23

*Danza v. Fid. Mgmt. Tr. Co.*,
   533 F. App'x 120 (3d Cir. 2013) ...................................................................... 24

*Falberg v. Goldman Sachs Grp., Inc.*,
   No. 19-CV-9910, 2022 WL 4280634 (S.D.N.Y. Sept. 14, 2022), *aff'd*, No. 22-CV-2689,
   2024 WL 619297 (2d Cir. Feb. 14, 2024)........................................................ 25

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014)....................................................................................... 10

*Gamino v. KPC Healthcare Holdings, Inc.*,
   No. 5:20-CV-01126, 2022 WL 4596576 (C.D. Cal. Aug. 15, 2022), *appeal dismissed sub nom.*
   *Gamino v. SPCP Grp., LLC*, No. 23-55347, 2023 WL 4539851 (9th Cir. June 8, 2023). ....... 29

*Hafez v. Equifax Info. Servs., LLC*,
   666 F. Supp. 3d 455 (D.N.J. 2023) ................................................................... 4

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
    530 U.S. 238 (2000) ................................................................................................... 27, 28

*Harrison-El v. Doe*,
    No. 23-CV-4725, 2024 WL 897578 (E.D. Pa. Mar. 1, 2024) ...................................... 11

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ..................................................................................... 4, 6

*In re Donald J. Trump Casino Sec. Litig.*,
    7 F.3d 357 (3rd Cir. 1993) ............................................................................................. 4

*In re Halpin*,
    566 F.3d 286 (2d Cir. 2009) ..................................................................................... 17, 18

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002) ..................................................................................... 11, 24

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
    678 F.3d 235 (3d Cir. 2012) ......................................................................................... 10

*In re Unisys Sav. Plan Litig.*,
    74 F.3d 420 (3d Cir. 1996) ........................................................................................... 11

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
    140 S. Ct. 768 (2020) ............................................................................................... 21, 22

*Krauter v. Siemens Corp.*,
    725 F. App'x 102 (3d Cir. 2018) .................................................................................. 10

*Lingis v. Motorola, Inc.*,
    649 F. Supp. 2d 861 (N.D. Ill. 2009), *aff'd sub nom. Howell v. Motorola, Inc.*,
    633 F.3d 552 (7th Cir. 2011) ........................................................................................ 25

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................. 20, 21

*MacKay v. Donovan*,
    No. 10-cv-218, 2012 WL 460305 (E.D. Pa. Feb. 14, 2012) ........................................ 14

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993) ...................................................................................................... 23

*Noa v. Keyser*,
    519 F. Supp. 2d 481 (D.N.J. 2007) ............................................................................... 25

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ................................................................................................. 23, 24

iii

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) .................................................................................. 10

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) .................................................................................. 6

*Renfro v. Unisys Corp.*,
  671 F.3d 314 (3d Cir. 2011) ................................................................. 11, 19, 20, 23

*Robinson v. Johnson*,
  313 F.3d 128 (3d Cir. 2002) .................................................................................. 21

*Rose v. PSA Airlines, Inc.*,
  80 F.4th 488 (4th Cir. 2023), *cert. denied*, No. 23-734, 2024 WL 1607769
   (U.S. Apr. 15, 2024) ............................................................................................... 7

*Smith v. Hillside Vill.*,
  279 F. Supp. 3d 537 (D.N.J. 2017) ......................................................................... 5

*Spear v. Fenkell*,
  No. 13-CV-2391, 2016 WL 5661720 (E.D. Pa. Sept. 30, 2016), *clarified on denial of reconsideration*, No. 13- CV-2391, 2016 WL 7475814 (E.D. Pa. Dec. 29, 2016) ...... 27, 28, 29

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ........................................................................................ 20, 21

*Sweda v. Univ. of Pa.*,
  923 F.3d 320 (3d Cir. 2019) ................................................................. 10, 11, 17, 23

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ................................................................................................ 4

*Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Showtime on the Piers, LLC*,
  No. 19-CV-7755, 2020 WL 2749572 (S.D.N.Y. May 26, 2020) ....................... 22, 23

**Statutes**

26 U.S.C. § 401(a)(30) ............................................................................................. 3, 14

26 U.S.C. § 401(k)(2)(A) .......................................................................................... 3, 12

26 U.S.C. § 402(g)(1) ......................................................................................... 3, 12, 14

26 U.S.C. § 402(g)(3) ..................................................................................................... 4

26 U.S.C. § 404(a)(1) ............................................................................................... 16, 18

26 U.S.C. § 404(a)(6) .......................................................................................... 5, 14

26 U.S.C. § 415(c) ............................................................................................... 4, 12

ERISA § 3(21)(A) ..................................................................................................... 23

ERISA § 104(b)(4) .............................................................................................. 5, 7, 24

ERISA § 404(a)(1) ..................................................................................... 8, 9, 11, 16, 18

ERISA § 405(a) ................................................................................... 9, 18, 19, 20, 23

ERISA § 406 ......................................................................................... 9, 17, 23, 27

ERISA § 413(2) ........................................................................................................ 21

**Rules**

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 2, 10

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 2, 10

Fed. R. Evid. 201(b)(2) ............................................................................................. 6

**Regulations**

29 C.F.R. § 2510.3-102(b) ......................................................................................... 16

Treas. Reg. §1.401(m)-1(a)(2) ............................................................................... 4, 13

Treas. Reg. § 1.401(a)-30(a) ...................................................................................... 14

Treas. Reg. § 1.401(k)-6 ....................................................................................... 4, 13

Treas. Reg. § 1.402(g)-1(d)(1) ............................................................................... 3, 12

Treas. Reg. § 1.415(c)-1(b) ........................................................................................ 4

**Other Authorities**

Preamble to DOL Prohibited Transaction Exemption 76-1,
     41 Fed. Reg. 12740 (Mar. 26, 1976) ................................................................... 18

For years, Schnader Harrison Segal & Lewis LLP ("Schnader" or the "Firm") chose to contribute cash annually to its 401(k) plan, the Schnader Harrison Segal & Lewis LLP Retirement and Savings Plan (the "Plan"), to help its employees save for retirement. These contributions included a matching contribution for all employees and a discretionary contribution for Income Partners and Counsel (i.e. non-equity attorneys) that Schnader calculated using a formula that followed applicable U.S. Treasury rules for employer contributions. U.S. Department of Labor reporting shows that Schnader elected to contribute more than $10 million to its employees since 2018.

Each year, in January, September, and November, Schnader distributed memoranda about its discretionary employer contribution to all if its Income Partners and Counsel. The memoranda reminded participants of the employer contribution formula, identified the maximum allowable contribution based on that year's Treasury limits for employer contributions, informed each individual of the amount of their contribution, and stated that the employer contribution would be made the following September. Schnader made employer contributions each year until 2023, when the financial difficulties that forced it to dissolve also prevented it from contributing funds.

Plaintiff Jo Bennett was an Income Partner at Schnader from 2016 through January 13, 2023. She is currently a partner at Culhane Meadows in Philadelphia, PA. She practices employment law, including in the areas of executive benefits and compensation; is Culhane Meadows' Employment and Labor Chair; is barred in two states; and has been listed in the Best Lawyers of America publication for the last six years.[1] As a former Income Partner at Schnader,

---

[1] Culhane, *Jo Bennett*, https://culhane.law/attorney/jo-bennett/ (last visited May 10, 2024).

Ms. Bennett received the memoranda describing the employer contribution formula, amount, and timing in 2016, 2017, 2018, 2019, 2020, 2021, and 2022.

Now, eight years after she began participating in the Schnader Plan, Ms. Bennett brings this putative class action claiming that Schnader's annual contributions were not ***discretionary employer*** contributions, but, in fact, were ***employee*** contributions to which she is entitled under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Consequently, she says, Schnader's longstanding policy of making annual September contributions and its inability to contribute funds in 2023 violated ERISA's fiduciary duty and prohibited transaction rules (Counts I–III). Ms. Bennett further alleges that the Plan's fiduciaries failed to administer the Plan in accordance with its written documents or to properly inform plan participants of the process for making these contributions (Counts IV and V). Finally, Ms. Bennett asserts two wide-ranging, catchall claims: she alleges that Plan fiduciaries are liable for their fellow fiduciaries' alleged breaches, and that any Defendants who were not Plan fiduciaries are still liable for knowingly participating in the underlying alleged fiduciary breaches (Counts VI and VII).

These claims fail under Rules 12(b)(1) and 12(b)(6). The Complaint fails to plausibly allege that the contributions at issue were employee contributions; rather, its allegations and the documents on which it relies actually show that the amounts were discretionary employer contributions. Without this centerpiece, all of the Complaint's claims fail. And that is probably best for Ms. Bennett and the putative class members because, if her theory is correct, then she and the putative class members have been contributing beyond the permitted limits for employee contributions and must face years'-worth of substantial tax consequences.

The Complaint fails to state a claim for various other reasons, which are shown below. For example, Ms. Bennett lacks standing to bring her claims in certain time periods, her claims are

partially time barred, and she does not plausibly allege that all 34 individual Defendants were fiduciaries of the Plan. For all of these reasons, the Court should dismiss the Complaint with prejudice.

## BACKGROUND

### I.    The Firm

For 88 years, Schnader was a prominent full-service Philadelphia law firm. Dkt. 1, Compl. ¶¶ 2, 5, 97. During the time period relevant here, Schnader's partnership consisted of both equity partners and "non-equity owning 'Income Partner[s]'." *Id.* ¶¶ 2, 4. The firm also employed counsel (together with Income Partners, "IPCO"). *Id.* ¶ 2. In August 2023, the firm announced it would cease operations at the end of the month. *Id.* ¶ 97.

### II.   The Plan

Schnader sponsored the Plan to help its employees save for retirement. *Id.* ¶ 1. The tax code allows for two broad categories of contributions to 401(k) plans: employee contributions and employer contributions. Employee contributions are those that employees choose to defer from their salaries into their plan accounts. 26 U.S.C. § 401(k)(2)(A) (called a "cash or deferred arrangement" because the employee can choose cash or deferrals into their plan accounts). Those contributions are capped at a fixed amount every year—for example, at $20,500 in 2022.[2] Employer contributions are contributions made by an employer into participants' accounts. Those contributions are made at an employer's election, include both employer matching and other types

---

[2] IRS, *Retirement topics: 401(k) and profit-sharing plan contribution limits*, https://www.irs.gov/retirement-plans/plan-participant-employee/retirement-topics-401k-and-profit-sharing-plan-contribution-limits (last visited May 10, 2024); *see* 26 U.S.C. § 401(a)(30); 26 U.S.C. § 402(g)(1); Treas. Reg. § 1.402(g)-1(d)(1).

of employer contributions, and a separate cap governs them.[3] The Plan permitted both employee and employer contributions. *See* Ex. 1, Adoption Agreement §§ 1.10, 12.2; Compl. ¶¶ 78, 79 (quoting the Summary Plan Description); *see* Ex. 2, Summary Plan Description ("SPD") at 5–7 (describing matching contributions and profit-sharing contributions).[4] During the purported class period, Schnader made more than $10 million in discretionary employer contributions ("Employer Contribution" or "Employer Contributions") to the Plan.[5] At the heart of this case is Plaintiff's allegation that the Employer Contributions were "deferred" from IPCO's salaries and thus were employ**ee**, not employ**er**, contributions.

---

[3]   IRS, *Retirement topics: 401(k) and profit-sharing plan contribution limits*, https://www.irs.gov/retirement-plans/plan-participant-employee/retirement-topics-401k-and-profit-sharing-plan-contribution-limits (last visited May 10, 2024); *see* Treas. Reg. § 1.401(k)-6 (defining "nonelective contributions"); Treas. Reg. §1.401(m)-1(a)(2) (defining "matching contributions"). These amounts are not elective deferrals from the employee's salary that are subject to the $20,500 cap. *See* 26 U.S.C. § 402(g)(3). Instead, these are employer contributions, subject to a $61,000 limit for 2022. *See* 26 U.S.C. § 415(c); Treas. Reg. § 1.415(c)-1(b).

[4] In ruling on a motion to dismiss, a court may rely on documents outside the four corners of the complaint when those documents are incorporated by reference into the complaint, integral to the allegations in the complaint, or otherwise properly subject to judicial notice. *See, e.g.*, *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). For example, the Third Circuit has explained that "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (cleaned up). A document need not be "explicit[ly] refer[red] to or cite[d]" in a complaint to be properly considered at the motion to dismiss stage—rather the appropriate inquiry is whether "the claims in the complaint are 'based' on an extrinsic document." *Id.* (emphasis omitted) (quoting *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3rd Cir. 1993)). Courts may also take "judicial notice of information published to government websites on a motion to dismiss." *Hafez v. Equifax Info. Servs., LLC*, 666 F. Supp. 3d 455, 457 n.2 (D.N.J. 2023) (collecting cases). Finally, a court may properly consider "documents incorporated into the complaint by reference" at this stage. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

[5] Dep't of Lab., Form 5500s for Schnader Harrison Segal & Lewis LLP Retirement and Savings Plan for FY 2018, Financial Statements at 5-8 https://tinyurl.com/447atvkc; FY 2019, Financial Statements at 5-8 https://tinyurl.com/yneytcey; FY 2020, Financial Statements at 5-8 https://tinyurl.com/48f3bjn8; Ex. 9, FY 2021, Financial Statements at 7-8; and FY 2022, Financial Statements at 7-10 https://tinyurl.com/yrpnjvb5.

The Complaint (including the documents on which it relies and the documents referenced therein, hereinafter "Complaint") alleges that the firm followed the same process for the Employer Contributions "each year" until 2023, when the firm dissolved and was unable to make its usual annual elective contribution, *id.* ¶¶ 58, 83, 97–98. Every January, Schnader would calculate each IPCO's Employer Contribution amount for the coming year and notify each IPCO of their contribution amount, articulated as both annual and monthly amounts. *Id.* ¶ 83; Ex. 3, 2022 J. Bennett Spreadsheet, Rows 41–42, 50. For example, in January 2022, Ms. Bennett was informed that Schnader would contribute $25,995 for the calendar year, or $2,166.29 per month. Compl. ¶ 89.

In September of every year, timed to conform with the requirements of the Internal Revenue Code,[6] Schnader deposited the Employer Contribution from the prior year into participants' accounts and informed participants when it had done so. *Id.* ¶¶ 88–89; Ex. 4, Sept. Memo. In other words, Schnader deposited Ms. Bennett's Employer Contribution from 2021 into her account in September 2022 and informed her once the contribution was made. Compl. ¶ 88; Ex. 4, Sept. Memo.

Finally, in November of every year, Schnader sent a memo to IPCO reminding them of the applicable Employer Contribution formula and limits for the forthcoming year, and that the contribution would be made in September. Ex. 5, Nov. Memo at 1–2 ("The 2021 retirement contribution will be made to your Plan account on or before September 15, 2022.").[7]

---

[6] IRS, *Issue Snapshot — Deductibility of employer contributions to a 401(k) plan made after the end of the tax year*, https://www.irs.gov/retirement-plans/issue-snapshot-deductibility-of-employer-contributions-to-a-401k-plan-made-after-the-end-of-the-tax-year; *see* 26 U.S.C. § 404(a)(6).

[7] Ms. Bennett received this memo in response to her § 104(b)(4) request, on which she bases her Complaint. *See, e.g.*, Compl. ¶¶ 8–42, 48, 130. Thus, it may properly be relied on here. *See supra* n.4; *Smith v. Hillside Vill.*, 279 F. Supp. 3d 537, 544 n.8 (D.N.J. 2017) ("[W]here a complaint is

### III.   The Lawsuit

Plaintiff Jo Bennett has been a licensed Pennsylvania attorney since December 1996. Compl. ¶ 70. She is currently a partner at Culhane Meadows.[8] According to her firm profile, she serves as the Employment and Labor Chair there and practices employment law, including in the area of "employee and executive benefits and compensation."[9]

Before joining Culhane, Ms. Bennett was an Income Partner at Schnader from 2016, when she also began participating in the Plan, through January 13, 2023. Compl. ¶¶ 4, 72–73. As such, like all IPCO, she "[stood] in a fiduciary relationship to the Firm." Ex. 6, Policies for IPCO ¶ 3. Because she left the Firm in early January 2023, Ms. Bennett was not credited with any Employer Contribution amounts for the 2023 calendar year.

In August 2023, eight months after Ms. Bennett left, Schnader announced that the firm would dissolve. *Id.* ¶ 97. Until that point, the Firm was managed through an Executive Committee comprised of a small sub-set of the Firm's Equity Partners ("Executive Committee Defendants").[10]

---

based on particular documents, a defendant may submit and rely on such documents in its motion to dismiss. The reasons for the rule are (1) that the plaintiff, having relied on the document, cannot claim unfair surprise; and (2) the plaintiff cannot base a claim on a document while shielding the document itself from view.") (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)).

[8] Culhane, *Jo Bennett*, https://culhane.law/attorney/jo-bennett/ (last visited May 10, 2024). The Court may consider information on publicly-available websites. *See* Fed. R. Evid. 201(b)(2) (permitting judicial notice of "sources whose accuracy cannot reasonably be questioned").

[9] Culhane, *Jo Bennett*, https://culhane.law/attorney/jo-bennett/ (last visited May 10, 2024).

[10] Plaintiff alleges that Defendants Barry S. Alexander, Richard A. Barkasy, Melissa Sue Blanton, Nadine Doolittle, Megan E. Harmon, Nicholas J. LePore III, Theresa E. Loscalzo, Kenneth R. Puhala, Ira Neil Richards, Edward J. Sholinsky, Samuel W. Silver, and David Smith served at various times on the Firm's Executive Committee (collectively, "Committee Defendants"). Plaintiff alleges in Paragraph 45 that Defendant Cynthia A. Murray was on the Executive Committee, but that appears to be a scrivener's error because Plaintiff does not identify Ms. Murray as a mem-

Compl. ¶ 45. When the firm's equity partnership voted to dissolve, Plaintiff alleges that a smaller group of Equity Partners (the "Wind-Up Committee Defendants") stepped into the Executive Committee's shoes.[11] *See, e.g.*, Compl. ¶¶ 46, 157. On September 15, 2023, the Wind-Up Committee Defendants sent IPCO a letter informing them that the Firm would not make Plan contributions in September 2023 as it had in years past. *Id.* ¶ 98.

In late-October 2023, more than ten months after she left the firm, Ms. Bennett sent a letter to the Plan's Administrator requesting certain documents relating to the Plan, pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).[12] *Id.* ¶ 7. The Complaint describes that she received "a number of documents" in response, *id.* ¶ 8, including:

1. the plan document, Compl. ¶¶ 8, 48, Ex. 7, Basic Plan Doc;

2. the plan document's Adoption Agreement, *id.* ¶ 48, Ex. 1, Adoption Agreement;

3. the plan's summary plan description ("SPD"), Compl. ¶ 8, Ex. 2, SPD;

4. certain resolutions regarding the Plan, Compl. ¶ 157;

5. the spreadsheet sent to her in January 2022 regarding her 2022 Employer Contribution, Compl. ¶ 89, Ex. 3, 2022 Spreadsheet;

6. the 2021 September memo stating her Employer Contribution had been made to her plan account, Ex. 4, Sept. Memo;

---

ber of the Executive Committee in the paragraph specific to Murray. *See* Compl. ¶¶ 25, 45. Similarly, she identifies Mr. Puhala as a member of the Executive Committee in the allegations specific to Mr. Puhala, but she does not name him in paragraph 45. *Id.* ¶¶ 26, 45.

[11] The members of the Wind-Up Committee are alleged to be Defendants Loscalzo, Smith, and Whitson. Compl. ¶ 46. Ms. Loscalzo and Mr. Smith are alleged to be Executive Committee Defendants; Mr. Whitson is not. *See id.* ¶ 45.

[12] The original ERISA statute is codified in the U.S. Code. "[I]n keeping with the trend in this practice area," this brief cites to the original ERISA provisions, *Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 494 (4th Cir. 2023), *cert. denied*, No. 23-734, 2024 WL 1607769 (U.S. Apr. 15, 2024), but when citing a provision for the first time, Defendants provide citations to both the statue and the U.S. Code for ease of reference. The following link provides a cross-reference guide between the provisions of the ERISA statute and the U.S. Code: https://benefitslink.com/erisa/cross-reference.html.

7. the November 2021 memo restating the formulas and limits applicable to Plan contributions, Ex. 5, Nov. Memo;

8. her employment agreement, Compl. ¶ 82;

9. the Firm's Policies for Income Partners and Counsel, Compl. ¶ 81, Ex. 6, Policies for IPCO; and, among other documents,

10. an excel spreadsheet entitled "Equity Partners from January 2022 to August 2023," with the file name "Plan fiduciaries -- list of equity partners from 1_1_2022 to 8_31_2023," Compl. ¶ 8; Ex. 8, Equity Partner List, which contained the names of all 34 Equity Partners who have been named as Defendants in this lawsuit ("Equity Partner Defendants").[13]

Based on her review of these materials, *see, e.g.*, Compl. ¶¶ 8–42, 48, 130, Ms. Bennett filed the Complaint against Schnader, the Plan, and all Equity Partner Defendants (together with Schnader and the Plan, "Defendants") challenging Schnader's decision to contribute the Employer Contribution in September of every year, and its inability to contribute those amounts for 2022 in September 2023 or to pay the Employer Contribution attributable to January through August 2023. She brings her claims pursuant to ERISA and seeks to represent a purported class of IPCOs going back to February 7, 2018. Compl. ¶ 52.

Counts I, IV, and V assert ERISA breach of fiduciary duty claims pursuant to ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). Count I alleges that all Defendants breached their fiduciary duties under § 404(a)(1)(A) and (B) in three ways: *first*, when the Employer Contribution was made in September of every year through 2022; *second* when the Wind-Up Committee determined not to contribute the 2022 Employer Contribution in 2023 ("2023 Contribution"); and *third*, when

---

[13] The 34 Equity Partner Defendants include Barry S. Alexander, Samantha J. Banks, Richard A. Barkasy, Roberta Barsotti, Kevin Blanton, Melissa Sue Blanton, Nadine Doolittle, Allison Fihma Drachman, Stephen Dye, Stephen Fogdall, Megan E. Harmon, Theodore Hecht, Anne Kane, Nicholas J, LePore III, Theresa E. Loscalzo, Bruce P. Merenstein, Cynthia A. Murray, Kenneth R. Puhala, Ira Neil Richards, Lisa Joan Rodriguez Jacobs, Roy S. Ross, Carl J. Schaerf, H. Lee Schwartzberg, Stephen J, Shapiro, Edward J. Sholinsky, James D. Shupe, Samuel W. Silver, Jonathan B. Skowron, David Smith, Bruce M. Strikowsky, Matthew S. Tamasco, Keith E. Whitson, Michael J. Wietrzychowski, and Robert J. Williams.

the Wind-Up Committee determined not to contribute the 2023 Employer Contribution (which would have been deposited in 2024 but for the dissolution of the Firm) upon the dissolution of the Firm ("2024 Contribution"). Compl. ¶¶ 110–11. Count IV alleges that all Defendants violated § 404(a)(1)(D) because, she claims, the Plan did not require IPCO to make Employer Contributions, and therefore the Plan was not operated in accordance with its written instruments. *Id.* ¶¶ 138–39. Count V alleges that Schnader itself, as Plan Administrator, breached its fiduciary duties under § 404(a)(1)(A) and (B) because the Plan's Summary Plan Description did not contain "sufficient" "information about the contributions and benefits under the Plan" and the "administration" of those "contributions." *Id.* ¶¶ 147, 151. Count VI further alleges that all Defendants knowingly participated in these alleged breaches, pursuant to ERISA § 405(a), 29 U.S.C. § 1105(a).

Counts II and III assert prohibited transaction and self-dealing claims against all Defendants. *See* ERISA § 406, 29 U.S.C. § 1106. Count II is an ERISA § 406(b) prohibited transaction claim alleging that all Defendants, at some unnamed point, received assets of the Plan in contravention of ERISA. Compl. ¶ 117. Count III is a § 406(a) party in interest claim alleging that all Defendants engaged in prohibited transactions as "parties in interest" by allowing the alleged "deferred compensation" to be used to "fund the firm's operations" and "to make distributions to the Equity Partner Defendants." *Id.* ¶¶ 129, 131.

Finally, Count VII is a broad, non-fiduciary knowing participation claim, alleging that all Equity Partner Defendants, even if they were not fiduciaries, received equity distributions that included "amounts derived from employee contributions," making these Defendants "gratuitous transferees." *Id.* ¶¶ 165–66.

## ARGUMENT

### I.  Legal Standard

Motions to dismiss are an "important mechanism for weeding out meritless claims," and courts are charged with carefully reviewing complaints in ERISA cases to separate the "plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). That is because "the prospect of discovery" in a putative class action claiming a fiduciary breach—especially one in which a plaintiff has sued three dozen defendants—is "ominous" and "elevates the possibility that a 'plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (alteration in original).

#### A.    Fed. R. Civ. P. 12(b)(1)

A motion to dismiss for lack of standing is properly considered under Federal Rule of Civil Procedure 12(b)(1). *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). To withstand a motion based on lack of standing under Article III of the Constitution, Plaintiff's Complaint must show: "(1) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Krauter v. Siemens Corp.*, 725 F. App'x 102, 107–08 (3d Cir. 2018) (internal quotation marks omitted). If a plaintiff fails to establish any of these three elements, her claim must be dismissed.

#### B.    Fed. R. Civ. P. 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must make factual allegations sufficient "to 'state a claim for relief that is plausible on its face.'"

*Sweda v. Univ. of Pa.*, 923 F.3d 320, 315 (3d Cir. 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Though courts must take factual allegations as true and draw reasonable inferences in favor of plaintiffs, they may "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *Sweda*, 923 F.3d at 325; *see In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) ("[C]ourts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint."). Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678–79. A claim is plausible when the properly pleaded allegations give rise to a "reasonable inference that the defendant is liable for the misconduct alleged." *Sweda*, 923 F.3d at 325–26. "Pleadings that establish only a *mere possibility* of misconduct" must be dismissed. *Id.* at 326 (emphasis added); *see Harrison-El v. Doe*, No. 23-CV-4725, 2024 WL 897578, at *4 (E.D. Pa. Mar. 1, 2024) (dismissing claim where plaintiff "has not 'nudged' his claims from the merely possible to the plausible").

## II. The Court must dismiss all claims for failure to state a claim.

The duty of prudence under ERISA requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." ERISA § 404(a)(1)(B). This "prudent person" standard focuses on a fiduciary's *process* in arriving at a decision. *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996). Here, Plaintiff has made *no* allegations regarding the Plan fiduciaries' decision-making process. Thus, to survive a motion to dismiss, she must allege facts from which the Court can "infer . . . that the process was flawed." *Renfro v. Unisys Corp.*, 671 F.3d 314, 320, 327 (3d Cir. 2011).

As explained below, Plaintiff fails to plausibly allege that the Employer Contributions were actually employee contributions, requiring dismissal of the Complaint in its entirety.

**A. Plaintiff fails to plausibly allege that the Employer Contributions were employee contributions.**

The Complaint hinges on Plaintiff's theory that the Employer Contributions were "employee contributions" to the Plan. Compl. ¶¶ 84–85. Because they were employee contributions deferred from her wages, Plaintiff's logic goes, ERISA required the amounts to be remitted into participants' accounts within days of being "withheld from the employee's pay," instead of every September. *Id.* ¶ 85. And because they were employee contributions, the 2023 and 2024 Employer Contributions were supposedly ***required*** to be put in participants' accounts instead of being treated as discretionary. *Id.* at ¶¶ 85–88. The Complaint shows the implausibility of this theory—in fact, it shows that these amounts could not have been employee contributions and, instead, were discretionary employer contributions.

As discussed above, there are two overarching buckets of retirement plan contributions: employee and employer contributions.[14] The Internal Revenue Code ("IRC") defines employee contributions as amounts that an "employee may ***elect*** to have the employer make [ ] as contributions to a trust under the plan on behalf of the employee, or to the employee directly in cash." 26 U.S.C. § 401(k)(2)(A). Stated differently, for a contribution to be considered an employee contribution, it must be an amount that a participant may ***choose*** to receive either as wages or as deferrals to a tax-qualified plan.

But the Complaint plainly alleges that IPCO could ***not elect*** whether to defer these amounts to the Plan—the contributions were, instead, "mandatory." Compl. ¶¶ 84, 90, 158; *see also, e.g.*,

---

[14] *See, e.g.*, IRS, *Retirement topics: 401(k) and profit-sharing plan contribution limits*, https://www.irs.gov/retirement-plans/plan-participant-employee/retirement-topics-401k-and-profit-sharing-plan-contribution-limits; 26 U.S.C. § 402(g)(1); Treas. Reg. §§ 1.402(g)-1(d)(1), 1.415(c)-1(b); I.R.C. § 415(c).

*id.* ¶ 83 (alleging that IPCO were "required" to make contributions). By Plaintiff's own admission, then, the Employer Contributions do not meet the IRC's definition of employee contribution.

Thus, there is only one plausible story: the amounts in question are employer, not employee, contributions. This conclusion is consistent with applicable IRS and U.S. Treasury rules, the governing Plan documents, and communications to participants.

The IRS describes several types of employer contributions that may be made to participants' accounts, in addition to participants' own elective deferrals. Those include "employer matching contributions" and "employer nonelective contributions."[15] These are the same types of employer contributions provided for in the Plan: "matching contributions" and "non-elective contributions – profit-sharing plans," (*i.e.* the Employer Contributions). Ex. 1, Adoption Agreement §§ 1.10, 12.2(a)(1) (providing that non-elective profit-sharing contributions to the Plan are "totally discretionary on the part of the Employer").

The memoranda and Plan communications that Schnader sent to participants summarizing the Employer Contributions then repeatedly refer to this Plan language. The Plan's Summary Plan Description explains exactly how "profit sharing contributions" are calculated. Ex. 2, SPD at 6–7. Likewise, the November memo sent to IPCO every year set forth the two types of plan contributions—"non-elective" and "elective"—and included the formulas used for calculating non-elective contributions. The spreadsheet sent to IPCOs every January showing their annual Employer Contribution provided an annual total for the "***Non-Elective Retirement Contribution***" (where the monthly "deferral" amount in the spreadsheet simply divides the non-elective total by

---

[15] IRS, *Retirement topics: 401(k) and profit-sharing plan contribution limits*, https://www.irs.gov/retirement-plans/plan-participant-employee/retirement-topics-401k-and-profit-sharing-plan-contribution-limits; *see* Treas. Reg. § 1.401(k)-6 (defining "nonelective contributions"); *id.* § 1.401(m)-1(a)(2) (defining "matching contributions").

12).[16] Ex. 3, 2022 J. Bennett Spreadsheet. And the non-elective retirement contribution described in Ms. Bennett's spreadsheet clearly showed that that amount was ***not*** tied to the annual ***employee*** contribution cap.

Moreover, the timing of the September deposits of Employer Contributions into participant accounts is consistent with tax requirements for ***employer*** contributions to a 401(k) plan. Employer profit-sharing or matching contributions can be made "after the close of the tax year" so long as those contributions are made "before the due date of the employer's tax return, including extensions."[17] Those extensions typically run into October of the year following the Plan year.[18] Thus—contrary to Plaintiff's suggestion that Defendants engaged in some sort of annual plot to

---

[16] To the extent Plaintiff asserts that the inclusion of the term "deferred compensation" in that spreadsheet is ambiguous and should be interpreted in her favor, courts interpret ambiguous contract terms "in a manner consistent with governing law." *MacKay v. Donovan*, No. 10-cv-218, 2012 WL 460305, at *3–4 (E.D. Pa. Feb. 14, 2012). Interpreting the terms of the Schnader Plan— which clearly provide for non-elective profit-sharing employer contributions—to possibly provide for those amounts to be *employee* contributions would cause the Plan to be in violation of the U.S. Code and applicable tax laws. *See* IRS, *Retirement topics: 401(k) and profit-sharing plan contribution limits*, https://www.irs.gov/retirement-plans/plan-participant-employee/retirement-topics-401k-and-profit-sharing-plan-contribution-limits; *see* 26 U.S.C. §§ 402(g)(1), 415(c) This, in turn, would cause the Plan to be disqualified and all class members to be required to amend their tax filings for the class period. IRS, *401(k) plan fix-it guide - Elective deferrals weren't limited to the amounts under IRC Section 402(g) for the calendar year and excesses weren't distributed*, https://www.irs.gov/retirement-plans/401k-plan-fix-it-guide-elective-deferrals-werent-limited-to-the-amounts-under-irc-section-402g-for-the-calendar-year-and-excesses-werent-distributed; *see* 26 U.S.C. § 401(a)(30); Treas. Reg. § 1.401(a)-30(a).

[17] IRS, *Issue Snapshot — Deductibility of employer contributions to a 401(k) plan made after the end of the tax year*, https://www.irs.gov/retirement-plans/issue-snapshot-deductibility-of-employer-contributions-to-a-401k-plan-made-after-the-end-of-the-tax-year; *see* 26 U.S.C. § 404(a)(6).

[18] The following example is provided by the IRS: "For example, if the due date of the employer's calendar-year 2022 Form 1040 or Form 1120 is April 18, 2023, with an extended due date of October 16, 2023 (after the automatic six-month extension), the employer has until October 16, 2023, to make a 2022 profit-sharing contribution and deduct it on their 2022 return." IRS, *Issue Snapshot — Deductibility of employer contributions to a 401(k) plan made after the end of the tax year*, https://www.irs.gov/retirement-plans/issue-snapshot-deductibility-of-employer-contributions-to-a-401k-plan-made-after-the-end-of-the-tax-year.

withhold employee contributions from the Plan and distribute the funds to themselves before contributing them in September—Schnader simply contributed the funds in September in accordance with IRS rules for the timing of its annual October tax filing. *See* Ex. 9, 2021 Form 5500 at Note 1 (Contributions) (explaining that Schnader's "Employer contributions are contributed during the following year before the Partnership's tax return is due to be filed with the IRS"). In short, the Complaint, read alongside relevant tax rules, demonstrates the sheer implausibility of Plaintiff's allegation that the Employer Contributions were "employee contributions." *See 16630 Southfield Ltd. P'ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013) ("[T]he existence of obvious alternative explanations . . . illustrates the unreasonableness of the inference sought and the implausibility of the claims made.").

### B. The Court should dismiss with prejudice Plaintiff's breach of fiduciary duty claim because the Employer Contributions were employer, not employee, contributions.

Each of Plaintiff's breach of fiduciary duty claims requires a threshold presumption that the Employer Contributions were employee contributions. Because these allegations are implausible, the Court should dismiss with prejudice all three of Plaintiff's breach of fiduciary duty claims.[19]

Count I asserts that Defendants breached their fiduciary duties in two ways: by making the Employer Contributions in September from 2018 through 2022, and by deciding not to make the 2023 and 2024 Contributions. Neither of these claims are viable. As to the timing claim, by Plaintiff's own admission, the rules on which she relies to assert that Schnader should have made

---

[19] As shown below, *infra* III.C, the 21 Non-Committee Defendants are not alleged to be fiduciaries, and thus Plaintiff's breach of fiduciary duty and prohibited transaction claims additionally fail as to them. Further, Plaintiff's allegations relating to the 2023 and 2024 Contributions are necessarily limited to the Wind-Up Committee Defendants, and her claims relating to the timing of the September deposits are necessarily limited to the Executive Committee Defendants. *See infra* III.

the deposits within days apply only to employee contributions. Compl. ¶ 108 ("29 C.F.R. § 2510.3-102(b) sets for the maximum time to segregate *employee contributions*.") (emphasis added). As shown above, Schnader's September deposits were consistent with the rules for employer contributions, which permit employer contributions to be made over a much longer time frame than employee contributions. As to the 2023 and 2024 Contributions claim, that claim fails because it is premised upon the notion that employee contributions are funds that belong to participants, and therefore must be made. However, the Adoption Agreement is clear—the non-elective profit-sharing contributions are "[t]otally discretionary" on the part of the employer, Ex. 1, Adoption Agreement § 12.2(a)(1)—participants are not entitled to them.[20] Plaintiff cannot state a claim, then, simply because Defendants followed the terms of the Plan. Therefore, the Court should dismiss with prejudice Count I in its entirety.

The Court should also dismiss Count IV. That count alleges that Defendants breached their fiduciary duties by failing to operate the Plan in accordance with its governing documents. ERISA § 404(a)(1)(D). She claims that "nothing in the Plan Document or Adoption Agreement allowed" Defendants "to force contributions by Income Partners or by Counsel." Compl. ¶ 138. Because Plaintiff has not plausibly alleged that the Employer Contribution was an employee contribution, Count IV must be dismissed with prejudice.

Finally, the Court should dismiss Count V for similar reasons. Plaintiff alleges that the Plan's Summary Plan Description "fail[ed] to adequately disclose" to participants that the

---

[20] *Accord* IRS, *Choosing a Retirement Plan: Profit-Sharing Plan*, https://www.irs.gov/retirement-plans/choosing-a-retirement-plan-profit-sharing-plan ("A profit-sharing plan accepts discretionary employer contributions. There is no set amount that the law requires you to contribute. If you can afford to make some amount of contributions to the plan for a particular year, you can do so. Other years, you do not need to make contributions.") (last visited May 10, 2024).

Employer Contributions "were inconsistent with the terms of the Plan." Compl. ¶ 151. As explained above, they were not. Count V should be dismissed with prejudice.

> **C.    Because the Employer Contributions were not "plan assets," Plaintiff has not plausibly pleaded a prohibited transaction claim.**

Because Plaintiff fails to plausibly allege that the Employer Contributions were employee contributions, her prohibited transaction claims in Counts II and III fail, too.[21]

Plaintiff brings Count II pursuant to two sub-sections of ERISA § 406(b), which, in relevant part, prohibit "a fiduciary" from "(1) deal[ing] with the ***assets of the plan*** in his own interest or for his own account," and (3) "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the ***assets of the plan***." *Id.* § 406(b)(1), (3) (emphasis added); Compl. ¶¶ 118, 120 (citing §§ 406(b)(1) and (3)). Plaintiff brings Count III under § 406(a) in what is known as a "party in interest" prohibited transaction claim. A plaintiff states a party in interest claim when she alleges that "(1) the fiduciary cause[d] (2) a listed transaction to occur (3) between the plan and a party in interest." *Sweda*, 923 F.3d at 335 (citing ERISA § 406(a)(1)). Plaintiff focuses on the following "listed transactions" in her Complaint: (B) the "***lending of money*** or other extension of credit between a plan and a party in interest," and (D) "transfer to, use by or for the benefit of a party in interest, of any ***assets of the plan***." ERISA §§ 406(a)(1)(B), (D).

Critically, Section 406 claims only apply to transactions involving "assets of the plan." "[E]mployer contributions become an asset of the plan only when the contribution has been made." DOL Field Assistance Bulletin 2008-01; *accord* U.S. Dep't of Labor, Advisory Op. No. 93–14A (May 5, 1993); U.S. Dep't of Labor, Advisory Op. No. 2005–08A (May 11, 2005); *In re Halpin*,

---

[21] Section 406 only applies to plan *fiduciaries*. As established below, Plaintiff has not pleaded facts sufficient to establish that the Non-Committee Defendants were Plan fiduciaries. *See infra* III.C.

566 F.3d 286, 290 (2d Cir. 2009); *see also* Preamble to DOL Prohibited Transaction Exemption 76-1, 41 Fed. Reg. 12740, 12741 (Mar. 26, 1976) ("[G]enerally neither the failure of a participating employer in a multiemployer plan to make a contribution to the plan when the contribution is due nor the failure of the plan to collect such a delinquent contribution constitutes a prohibited transaction."). The September contributions were not "plan assets" until they were contributed to participant accounts, and Plaintiff does not allege that the Defendants undertook any transactions relating to those funds once they were contributed. Similarly, the 2023 and 2024 Contributions were not "plan assets" because those contributions were never made. Therefore, the Court should dismiss Counts II and III with prejudice for failure to state a prohibited transaction.

### D.      Plaintiff fails to state a co-fiduciary liability claim.

Count VI brings a co-fiduciary liability claim pursuant to ERISA § 405(a) against the Wind-Up Committee Defendants and the Equity Partner Defendants. Compl. ¶¶ 159–61. Section 405(a) provides that an ERISA fiduciary may be liable "for a breach of fiduciary responsibility of another fiduciary" if he: (1) "participates knowingly in, or knowingly undertakes to conceal" the breach of another fiduciary; (2) fails to meet his own fiduciary standards laid out in ERISA § 404(a)(1), and thereby "enable[s] such other fiduciary to commit a breach;" or (3) does not make "reasonable efforts" to "remedy" another fiduciary's breach. ERISA § 405(a).

As an initial matter, Plaintiff has stated no viable underlying breach of fiduciary duty claims, so the Court should dismiss with prejudice Plaintiff's derivative co-fiduciary breach claim. *See* ERISA § 405(a) (establishing that a co-fiduciary may be "liable for a *breach of fiduciary responsibility* of another fiduciary") (emphasis added). And, as shown below, *infra* Part III.C, Plaintiff has not plausibly alleged that the Defendants who served on neither the Executive

Committee nor the Wind-Up Committee (the "Non-Committee Defendants")[22] were fiduciaries, so Count VI necessarily fails as to them. *See* ERISA § 405(a) (establishing liability for *fiduciaries*).

Even if Plaintiff had stated viable fiduciary and prohibited transaction claims as to the remaining Defendants (she has not), Count VI still fails because she does not plead facts sufficient to state a claim under any of the three sub-sections of the statute. *Id.* § 405(a)(1)–(3); *see* Compl. ¶¶ 159–61.

Plaintiff alleges that the Wind-Up Committee Defendants are liable for co-fiduciary breaches under § 405(a)(1) and (2). First, she alleges that they "accept[ed] and fail[ed] to disclose that the Plan does not require mandatory deferrals of Income Partner and Counsel compensation to the Plan," and thereby "participated knowingly in or knowingly undertook to conceal the breaches by the Plan Administrator." Compl. ¶ 159; ERISA § 405(a)(1). Second, she alleges that these same Defendants' "fail[ure] to disclose" "enabled the Plan Administrator of the Plan to commit a breach." *Id.* ¶ 160; ERISA § 405(a)(2).

But these allegations, which parrot the language of the statute, are insufficient. *See Renfro*, 671 F.3d at 320 ("[C]ourts evaluating the viability of a complaint under Rule 12(b)(6) must look beyond conclusory statements and determine whether the complaint's well-pled factual allegations, taken as true, are enough to raise a right to relief above the speculative level.") (cleaned up). The Complaint contains just two factual allegations even connecting the Wind-Up Committee Defendants to the Plan at all. Ms. Bennett only alleges that the three Wind-Up Committee Defendants "performed the functions as Plan Administrator" *after* the decision to liquidate the

---

[22] The 21 Non-Committee Defendants, thus, are alleged to be Samantha J. Banks, Roberta Barsotti, Kevin Blanton, Allison Fihma Drachman, Stephen Dye, Stephen Fogdall, Theodore Hecht, Anne Kane, Bruce P. Merenstein, Cynthia A. Murray, Lisa Joan Rodriguez Jacobs, Roy S. Ross, Carl J. Schaerf, H. Lee Schwartzberg, Stephen J. Shapiro, James D. Shupe, Jonathan B. Skowron, Bruce M. Strikowsky, Matthew S. Tamasco, Michael J. Wietrzychowski, and Robert J. Williams.

Firm was made (allegedly "on or about August 3, 2023"). Compl. ¶¶ 46, 97. Then, she alleges that these Defendants sent IPCO a letter on September 15, 2023 stating that that the Firm would not make September deposits into IPCO accounts. Compl. ¶ 98. These limited allegations fail to plausibly establish that the Wind-Up Committee Defendants participated in, concealed, or enabled any breach, much less that they did so with the ***actual*** knowledge required in the Third Circuit for § 405(a)(1) claims. *See Renfro*, 671 F.3d at 324 ("[S]ections 1105(a)(1) and (3) require actual knowledge of the breach.").

**III.    If the Complaint is not dismissed in its entirety, it must be trimmed.**

As explained in Part II, above, Plaintiff fails to plausibly allege that the Employer Contributions were actually employee contributions, and thus the Court should dismiss the Complaint in its entirety with prejudice. Even if Plaintiff had plausibly alleged her core theory, the Complaint nevertheless requires pruning. As explained further below, 1) Plaintiff lacks standing to bring any claims based on the 2024 Contributions; 2) ERISA's statute of limitations bars Plaintiff's breach of fiduciary duty claims for periods prior to February 2021; 3) Plaintiff has failed to allege that the 21 Non-Committee Defendants were plan fiduciaries; and 4) Plaintiff admits that only the Wind-Up Committee Defendants were fiduciaries with respect to the decision not to make 2023 and 2024 Contributions.

**A.  Plaintiff lacks standing to bring claims based on the 2024 Contribution.**

To satisfy the first requirement of Article III standing, Plaintiff must show that she "ha[s] suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). A particularized injury is one that affects "the plaintiff in a personal and individual way." *Spokeo,*

*Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1). To be concrete, an injury "must actually exist." *Spokeo*, 578 U.S. at 340.

Here, Plaintiff has suffered no injury relating to the 2024 Contribution—*i.e.*, the Employer Contribution tied to each month of employment in 2023 scheduled for depositing in September 2024. Ms. Bennett alleges that she left Schnader on January 13, 2023, that Schnader paid employees monthly, and that it did not calculate contribution amounts until "mid-January of each year." Compl. ¶¶ 4, 83–84. Ms. Bennett thus had no Employer Contribution withheld in 2023— she left before monthly amounts had even been calculated for that upcoming year—and therefore suffered no injury from the decision not to deposit those funds into participants' accounts when the firm dissolved. Without an injury, Ms. Bennett lacks standing to bring any claims for Employer Contribution amounts tied to 2023 (the 2024 Contribution). *See Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 130 (3d Cir. 2022) ("[A] lack of standing" is a "fundamental problem for the Named Plaintiffs because a lack of standing necessitates dismissal of claims, whether brought in a class action or in any other kind of suit.").

## B.   ERISA's three-year statute of limitations bars Plaintiff's breach of fiduciary duty claims arising before February 2021.

ERISA's three-year statute of limitations also applies to narrow Plaintiff's claims. ERISA § 413(2), 29 U.S.C. § 1113(2). In this Circuit, a statute of limitations defense is an appropriate basis for pleadings-stage dismissal when the "defense is 'apparent on the face of the complaint'" and "documents relied on in the complaint." *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 923 n.2 (3d Cir. 2015); *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). A plaintiff must file an ERISA breach of fiduciary duty suit within "three years of 'the earliest date on which the plaintiff had actual knowledge of the breach or violation.'" *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 774 (2020). *Intel* permits the establishment of actual knowledge "through inference from

circumstantial evidence." *Id.* at 779 (internal quotation marks omitted). Here, Plaintiff's allegations demonstrate that she knew before February 2021 that the Employer Contributions were deposited to participant accounts in September of the following year.

Plaintiff was employed at Schnader from 2016 until 2023. Every January, Schnader informed her of the amount of her annual Employer Contribution. Compl. ¶¶ 88–90. Every September, Schnader notified her when it deposited the prior year's Employer Contribution into her account. *See* Ex. 4, Sept. Memo. And every November, Schnader reminded her of the formulas used to calculate her Employer Contribution and that it would deposit the Employer Contribution into her account the following September. *See* Ex. 5, Nov. Memo at 1–2.

It is entirely implausible, then, that Plaintiff, a seasoned employment attorney with extensive experience in benefits, compensation, and wage and hour matters, and who was a fiduciary of the Firm, would have had thousands of dollars allegedly contributed from her paycheck every year, and would have received numerous employer communications regarding those contributions, and yet would not have known that those contributions were being made. Consequently, the Complaint makes plain that Plaintiff had actual knowledge that the contributions in question were Employer Contributions that were not made within days of each paycheck, but rather were made each September. Thus, the statute of limitations ran on her September 2018 contribution in 2021; on her September 2019 contribution in 2022; and on her September 2020 contribution in 2023. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Showtime on the Piers, LLC*, No. 19-CV-7755, 2020 WL 2749572, at \*5 (S.D.N.Y. May 26, 2020) ("[O]nce a beneficiary becomes aware of a fiduciary's decision to withhold employee benefit contributions,

the clock starts"). The last September deposit that the statute of limitations does *not* bar is the September 2021 deposit.

### C.     Plaintiff fails to plausibly allege that the Non-Committee Defendants were Plan fiduciaries.

Plaintiff has failed to allege the most basic "threshold" element of her substantive claims with respect to the 21 Non-Committee Defendants: that they were Plan fiduciaries. *Renfro*, 671 F.3d at 321–22; *see Sweda*, 923 F.3d at 328; *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001); ERISA § 406 (prohibiting *fiduciaries* from engaging in certain transactions). This requires the dismissal of Plaintiff's breach of fiduciary duty, co-fiduciary liability, and prohibited transaction claims as to those Defendants.

There are two ways to become a fiduciary. First, a Plan can designate named fiduciaries. ERISA § 402(a) (establishing that the "written instrument" of a plan "shall provide for one or more named fiduciaries"); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993). Named fiduciaries may (and often do) delegate certain aspects of their fiduciary authority to other committees or individuals pursuant to the plan's governing rules. *See* ERISA § 405(c)(1) (establishing that a plan may permit "named fiduciaries to designate persons . . . to carry out fiduciary responsibilities"). Here, Schnader is the named fiduciary, and the Plan document permits the Firm to appoint another plan administrator and to form a committee to manage the Plan. Compl. ¶ 6; Ex. 1, Adoption Agreement § 2.1; Ex. 7, Basic Plan Doc. §§ 1.108, 8.1–8.3. Plaintiff alleges that the Executive Committee and the Wind-Up Committee constituted such committees. Compl. ¶¶ 45–46.

Second, a person can become a fiduciary by "exercis[ing] discretionary control or authority over the plan's management, administration, or assets." *Mertens*, 508 U.S. at 251; ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). In that case, "the threshold question is" whether a person "was acting as a fiduciary . . . when taking actions subject to the complaint." *Pegram v. Herdrich*,

530 U.S. 211, 226 (2000). When a person becomes a fiduciary through discretionary control or authority, they are a fiduciary *only to the extent they exercise that discretion*, and not for all purposes relating to the Plan. *Danza v. Fid. Mgmt. Tr. Co.*, 533 F. App'x 120, 124–25 (3d Cir. 2013).

While Plaintiff alleges that the Executive Committee was the Plan Administrator and that the Wind-Up Committee took over the Executive Committee's role in late 2023, Compl. ¶¶ 45–46, she fails to plausibly allege that the remaining Non-Committee Defendants were ERISA fiduciaries in any capacity. That is because she has not alleged that any of the 21 Non-Committee Defendants are named fiduciaries in the Plan document, that they were delegated authority by the named fiduciary pursuant to the Plan document, or that they otherwise exercised any discretionary control over any matters relating to the Employer Contributions.[23]

She instead speculates based entirely on the *file name* of the Equity Partner List sent to her in response to her § 104(b)(4) request—not its contents—that all 34 of the Equity Partners must have also formed some sort of "Committee to the Plan." Compl. ¶ 44.[24] This is implausible, first, based on a simple review of the spreadsheet itself. The document bears the title "Equity Partners from January 2022 to August 2023." Ex. 8, Equity Partner List. Plaintiff hangs her hat entirely on the word "fiduciaries" in the excel *filename*: "Plan fiduciaries -- list of equity partners from 1_1_2022 to 8_31_2023." *Id.* A single word in a filename is simply not sufficient to bestow ERISA

---

[23] Defendants concede for the limited purpose of this motion that Plaintiffs have alleged that Schnader, the Executive Committee Defendants, and the Wind-Up Committee Defendants have, at certain points, served as fiduciaries to the Plan. Defendants do <u>not</u> concede the factual accuracy of these allegations.

[24] If Plaintiff claims that she alleges that some mystery committee "exercised discretionary authority or discretionary control . . . or a combination of both," those allegations are conclusory and simply parrot the language of the rule. Compl. ¶ 44. These are precisely the kind of conclusory "bald assertions" that are insufficient at the motion to dismiss stage. *In re Rockefeller Ctr.*, 311 F.3d at 216.

fiduciary obligations on three dozen individuals, especially when there is no allegation that the individuals were named fiduciaries in the Plan document, appointed by a named fiduciary, or actually exercised fiduciary discretion. The only plausible explanation is that the spreadsheet is a list of all equity partners, *a subset of whom* were Plan fiduciaries; in no way does this ***file name*** make ***all*** partners listed therein fiduciaries.

Second, as Plaintiff well knows as an experienced employment lawyer, fiduciary committees typically consist of, at most, no more than 10 or so members. *E.g.*, *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861, 881 (N.D. Ill. 2009), *aff'd sub nom. Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011) (committee consisted of 6 members); *Falberg v. Goldman Sachs Grp., Inc.*, No. 19-CV-9910, 2022 WL 4280634, at \*2 (S.D.N.Y. Sept. 14, 2022), *aff'd*, No. 22-CV-2689, 2024 WL 619297 (2d Cir. Feb. 14, 2024) (10 to 12 members); *Noa v. Keyser*, 519 F. Supp. 2d 481, 484 n.5 (D.N.J. 2007) (7 members). It is simply implausible that 34 individuals simultaneously served as fiduciaries to the Plan.

Third, Plaintiff alleges that the Executive Committee (and, later, the Wind-Up Committee) exercised fiduciary discretion over Plan contributions. It is implausible that all Equity Partners operated as part of ***another*** fiduciary committee that had fiduciary discretion duplicative of the Executive and Wind-Up Committees.

Lastly, the context is crucial. Ms. Bennett made an onerous request for information to Schnader, a dissolved entity in wind-up mode operating with a reduced workforce. Compl. ¶¶ 5, 46, 97–98. Even if the spreadsheet did purport to name each Equity Partner as a Plan fiduciary— it did not—it would be understandable for that designation to be in error under the circumstances. Despite all indications that the spreadsheet did not intend to identify every Equity Partner as a Plan fiduciary, Ms. Bennett—an expert in labor and employment law—does not allege that she sought

25

any clarification. Instead, she used what was, at best, an ambiguity as an opportunity to name several dozen of her former colleagues as defendants in this suit.

As such, Plaintiff has failed to allege that the Non-Committee Defendants were Plan fiduciaries, and the Court should dismiss with prejudice as to those 21 Defendants all claims except for the knowing participation claim (Count VII).

**D.    Plaintiff's allegations relating to the September contributions are limited to the Executive Committee Defendants, and her allegations relating to the 2023 and 2024 Contributions are limited to the Wind-Up Committee Defendants.**

Finally, Plaintiff's Complaint limits her claims relating to the timing of the September deposits to the Executive Committee Defendants. Similarly, Plaintiff limits her claims relating to the 2023 and 2024 Contributions to the Wind-Up Committee Defendants.

Plaintiff alleges that the Executive Committee was a plan fiduciary. Compl. ¶ 45. However, Schnader announced "[o]n or about August 3, 2023" that it would "cease operations at the end of August," *id.* ¶ 97, and "[s]ince the decision by the Equity Partners to liquidate Schnader," the Wind-Up Committee Defendants "have performed the functions of Plan Administrator on behalf of Schnader," *id.* ¶ 46. She does not allege that the Wind-Up Committee was formed prior to the decision to dissolve the firm, nor that the Executive Committee continued to exist once the Wind-Up Committee was formed. Therefore, she cannot plausibly state any claims against the Wind-Up Committee Defendants for decisions made before August 2023, and she cannot plausibly state any claims against the Executive Committee Defendants for decisions made during or after August 2023. Practically speaking, this means her claims relating to the timing of the September payments can only possibly be asserted against the Executive Committee Defendants, and her claims relating to the 2023 and 2024 Contributions can only possibly be asserted against the Wind-Up Committee Defendants.

**IV.    Plaintiff has not properly pleaded any claims against non-fiduciaries.**

Recognizing that she has not plausibly alleged that the Non-Committee Defendants are Plan fiduciaries, Plaintiff brings her final claim, Count VII—a catchall "knowing participation" claim—seeking equitable relief pursuant to ERISA § 502(a)(3). Plaintiff alleges that the Non-Committee Defendants "knowingly participated in the [alleged] fiduciary breaches and prohibited transactions . . . by receiving as part of their distributions, amounts derived from employee contributions that they knew or should have known had been commingled with firm assets." Compl. ¶ 165; *see Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247–49 (2000) (recognizing claim against nonfiduciary who "knowingly participates" in a "transaction prohibited by § 406(a)").

To make out a knowing participation claim, Plaintiff must plead plausible facts establishing, in relevant part, that that the underlying conduct was prohibited or resulted in a fiduciary breach, and that the Equity Partner Defendants "had actual or constructive knowledge of the circumstances that rendered the transaction unlawful," which in turn "involve[s] a showing that the *plan fiduciary*, with actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction." *Harris Tr.*, 530 U.S. at 251; *see Spear v. Fenkell*, No. 13-CV-2391, 2016 WL 5661720, at *44 (E.D. Pa. Sept. 30, 2016) (placing on plaintiff the "burden of showing that assets of the plan were transferred in breach of trust, and that [defendant] 'knowingly participated' in a fiduciary breach"), *clarified on denial of reconsideration*, No. 13- CV-2391, 2016 WL 7475814 (E.D. Pa. Dec. 29, 2016). The Complaint fails to establish either of these elements.

First, as shown above, Plaintiff has not pleaded an underlying breach or prohibited transaction. Plaintiff's derivative knowing participation claim fails as a result.

Second, Plaintiff does not allege any purported facts plausibly suggesting that the Non-Committee Defendants had any knowledge of the imagined ERISA violation. Plaintiff does not allege any facts showing that the Non-Committee Defendants had any knowledge of Plan matters or about the Employer Contributions. *See Ahrendsen v. Prudent Fiduciary Servs.*, No. 21-cv-2157, 2022 WL 294394, at *8 (E.D. Pa. Feb. 1, 2022) (dismissing knowing participation claim relating to a prohibited transaction, explaining that "knowledge of the [prohibited] transaction itself is . . . not enough to plead that they knew the transaction was prohibited"). Nor does Plaintiff plausibly allege that any of the Non-Committee Defendants "knew" that the Employer Contributions were untimely, if/when deposits were made to Plan accounts, or the source of their partnership "distributions." Plaintiff admits as much by alleging, contrary to the law, that Defendants "are liable as gratuitous transferees ***regardless of whether they knew or should have known***" when "the withheld employee contributions" should have been made. Compl. ¶ 166 (emphasis added); *but see Spear*, 2016 WL 5661720, at *30 (explaining, in the context of a gratuitous transferee knowing participation claim, that "liability only attaches to a non-fiduciary if they ***knowingly*** participated in a prohibited transaction") (emphasis added); *Harris Tr.*, 530 U.S. at 251 (explaining that "knowing participation" requires "actual or constructive knowledge of the circumstances that rendered the transaction unlawful.").

Third, the Plan's written instruments show that Equity Partners participated in the Plan in the same manner as IPCO, rendering Plaintiff's knowing participation claim even more implausible. *See* Ex. 1, Adoption Agreement at § 4.1 and Addendum to § 4.1(q) (excluding only "leased employees," "temporary/seasonal employees," and "[a]ssociate [l]awyers"—not Equity Partners—from participation in the Plan). The Complaint does not allege that the Equity Partners received different Plan communications or had access to different information from the IPCO—

communications she seems to allege prevented her from discovering the supposed truth about the Employer Contributions. Thus, Plaintiff's suggestion that all of the firm's Equity Partners were knowingly covering up and intending to benefit from some retirement contribution scheme *to which they were also subject* based on the same information Plaintiff had is entirely implausible. *See Ahrendsen*, 2022 WL 294394, at *8; *Gamino v. KPC Healthcare Holdings, Inc.*, No. 5:20-CV-01126, 2022 WL 4596576, at *6 (C.D. Cal. Aug. 15, 2022) ("[T]he nonfiduciary must know or have reason to know of the circumstances that made the transaction unlawful, beyond the mere fact that it is prohibited from the perspective of a fiduciary."), *appeal dismissed sub nom. Gamino v. SPCP Grp., LLC*, No. 23-55347, 2023 WL 4539851 (9th Cir. June 8, 2023).

Plaintiff's final fallback is a gratuitous transfer theory—essentially, that the Non-Committee Defendants received plan assets without providing value and, thus, should return them regardless of whether they knew of the underlying breach. *See Chesemore v. All. Holdings, Inc.*, No. 09-CV-413, 2013 WL 6989526 (W.D. Wis. Oct. 16, 2013), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016). But inherent in the concept of a "gratuitous transfer" is the notion that the Defendants received a benefit *gratuitously*—i.e., that they provided no value in exchange. *See Spear*, 2016 WL 5661720, at *38–39. It is implausible that the equity partner distributions about which Plaintiff complains were provided in exchange for no value. The value is inherent in the concept because the Equity Partners received distributions, like equity partners of any limited liability partnership, in return for their originations, time billed, management functions performed, and the equity they paid into the partnership, among other things. A proper gratuitous transferee claim is brought against someone like the defendant in *Chesemore*, whose fiduciary husband allegedly transferred plan assets into her name in exchange for which she "neither paid nor provided anything of tangible value" to her husband. 2013 WL 6989526, at *1.

Equity Partners receiving distributions under the firm's partnership agreement in return for their contributions and investments is entirely unlike *Chesemore*.

For these reasons, Plaintiff has failed to state a knowing participation or "gratuitous transfer" claim, and the Court should dismiss with prejudice Count VII.

## **CONCLUSION**

For all of these reasons, the Court should dismiss with prejudice Plaintiff's Complaint.


Dated: May 14, 2024


*/s/ Andrew D. Salek-Raham*
Andrew D. Salek-Raham (admitted *pro hac vice*)
William J. Delany (74864)
Lars C. Golumbic (admitted *pro hac vice*)
M. Caroline Wood (admitted *pro hac vice*)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, NW
Washington, DC 20006
Phone: (202) 861-5408
Fax: (202) 659-4503
asalek-raham@groom.com
wdelany@groom.com
lgolumbic@groom.com
cwood@groom.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this date, a true and correct copy of the foregoing was filed electronically, is available for viewing and downloading from the ECF system, and was served upon the following under the ECF Guidelines of this Court:

Adam Harrison Garner (320476)
Melanie J. Garner (315058)
The Garner Firm, Ltd.
1617 John F. Kennedy Blvd., Suite 550 Philadelphia, PA 19103
Tel: (215) 645-5955
Fax: (215) 645-5960
adam@garnerltd.com
melanie@garnerltd.com

R. Joseph Barton (admitted *pro hac vice*)
Barton & Downes LLP
1633 Connecticut Ave, Suite 200
Washington D.C. 20009
Tel: (202) 734-7046
jbarton@bartondownes.com

Date: May 14, 2024                          */s/ Andrew D. Salek-Raham*
                                            Andrew D. Salek-Raham