IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JO BENNETT, on behalf of herself and all
others similarly situated,

                                    *Plaintiff*

v.

SCHNADER HARRISON SEGAL & LEWIS
LLP, et al.,

                                    *Defendants*

Case No. 2:24-cv-00592-JMY

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

R. Joseph Barton (admitted pro hac vice)
The Barton Firm, LLP
1633 Connecticut Avenue NW, Suite 200
Washington, DC 20009
(202) 734-7046 (Tel)
jbarton@thebartonfirm.com

Adam Harrison Garner (320476)
Melanie J. Garner (315058)
The Garner Firm, Ltd.
1617 John F. Kennedy Blvd., Suite 550
Philadelphia, PA 19103
(215) 645-5955 (Tel)
(215) 645-5960 (Fax)
adam@garnerltd.com
melanie@garnerltd.com

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 2

ARGUMENT .................................................................................................... 7

    I.     The Class Should be Certified for Purposes of Settlement. .................... 7

    II.    The Proposed Settlement Merits Preliminary Approval. ....................... 7

          A.     The Settlement is the Result of Good Faith, Arm's-Length
                  Negotiations by Well-Informed and Experienced Counsel. ...................... 8

          B.     The Settlement Falls Within the Range of Possible Approval
                  and has no Obvious Deficiencies. ............................................. 10

               1.     The Settlement Provides the Class with Reasonable and
                       Adequate Relief. ..................................................... 10

               2.     The Settlement Does Not Unduly Favor Plaintiff or a
                       Segment of the Class. ................................................. 12

               3.     The Settlement Does Not Contemplate Excessive
                       Compensation for Class Counsel. ................................... 14

    III.   The Plan of Allocation Should be Preliminarily Approved. ................. 15

    IV.   The Court Should Make Preliminary Findings to Ensure the Tax-Favored
         Provisions of the Settlement. ........................................................ 16

               1.     The Qualified Settlement Fund meets the requirements of a
                       "qualified settlement fund" pursuant to Treas. Reg. §
                     1.468B-1. ............................................................ 17

               2.     Payments from the Special SubTrust are "restorative
                     payments," and are not subject to annual contribution limits. ...... 18

               3.     The Special SubTrust qualifies as a sub-trust of the Plan and
                     should maintain 100% of its assets in a federally insured
                       financial institution. ................................................. 20

               4.     The Special Fiduciary should be authorized to report
                     distributions from the Special SubTrust on Form 1099-R
                     using the Plan's EIN. ................................................. 21

               5.     Distributions from the Special SubTrust should be
                     determined to be eligible for tax-free rollover treatment. ........... 22

V.     The Proposed Form of Class Notice and Notice Plan Should Be Approved ........ 22

VI.    The Court Should Appoint CPT Group as the Settlement Administrator ............ 23

VII.   The Court Should Appoint William Einhorn as the Special Fiduciary ................ 24

CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aetna Inc.*,
  No. CIV. A. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) .........................................15

*Alderfer v. Clemens Markets, Inc. Ret. Sav. & Profit Sharing Plan 003*,
  No. CIV.A. 10-4423, 2012 WL 12292160 (E.D. Pa. Apr. 19, 2012) .....................................11

*Alves v. Main*,
  No. 01-cv-789, 2012 WL 6043272 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F.App'x
  151 (3d Cir. 2014) ...............................................................................................................9

*Atis v. Freedom Mortg. Corp.*,
  No. CV 15-03424 (RBK/JS), 2018 WL 5801544 (D.N.J. Nov. 6, 2018) ...........................7, 10

*In re Baby Prods. Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013) ...............................................................................................23

*Chesemore v. Alliance Holdings, Inc.*,
  No. 09-cv-413-wmc, 2014 WL 4415919 (W.D. Wis. Sept. 5, 2014) .....................................24

*Cohen v. Resolution Tr. Corp.*,
  61 F.3d 725 (9th Cir. 1995), *vacated on other grounds*, 72 F.3d 686 (9th Cir.
  1996) ...................................................................................................................................12

*In re Corel Corp. Sec. Litig.*,
  293 F.Supp.2d 484 (E.D. Pa. 2003) .....................................................................................11

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000) ...........................................................................................11

*Cunningham v. Wawa, Inc.*,
  No. 18-3355, 2021 WL 1626482 (E.D. Pa. Apr. 21, 2021)...............................................11, 12

*Curiale v. Lenox Grp. Inc.*,
  No. 07-cv-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) ...............................................7

*Currie v. Joy Cone Co.*,
  No. 2:23-CV-00764-CCW, 2024 WL 3157870 (W.D. Pa. June 25, 2024) ...........................14

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).............................................................................................................23

*Gates v. Rohm & Haas Co.*,
   248 F.R.D. 434 (E.D. Pa. 2008)......................................................................8

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995).........................................................................14

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975).........................................................................8

*Holmes v. Cont'l Can Co.*,
   706 F.2d 1144 (11th Cir. 1983) .................................................................12

*Huffman v. Prudential Ins. Co. of Am.*,
   No. 2:10-CV-05135, 2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) ...........................8

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000).................................................................12

*In re Ins. Brokerage Antitrust Litig.*,
   297 F.R.D. 136 (D.N.J. 2013)....................................................................16

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009)..................................................................12, 13

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
   No. 16-cv-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018)....................11

*Kopchak v. United Res. Sys.*,
   No. CV 13-5884, 2016 WL 4138633 (E.D. Pa. Aug. 4, 2016)............................15

*Lewis-Abdulhaadi v. Union Sec. Ins. Co.*,
   No. 21-cv-03805-WB, 2025 WL 1510577 (E.D. Pa. Mar. 20, 2025)............9, 11, 14

*Mazon v. Wells Fargo Bank, N.A.*,
   No. CIV. 10-700 ....................................................................................10

*Mehling v. N.Y. Life Ins. Co.*,
   246 F.R.D. 467 (E.D. Pa. 2007).............................................................8, 16, 23

*Mehling v. N.Y. Life Ins. Co.*,
   248 F.R.D. 455 (E.D. Pa. 2008).................................................................16

*In re Nat'l Football League Players' Concussion Injury Litig.*,
   301 F.R.D. 191 (E.D. Pa. 2014)...............................................................8, 9, 14

*Perelman v. Perelman*,
   No. 10-5622, 2012 WL 3704783 (E.D. Pa. Aug. 28, 2012) ...............................24

*Perez v. Kwasny*,
   No. 14-4286, 2016 WL 558721 (E.D. Pa. Feb. 9, 2016) .......................................................24

*In re Pet Food Prods. Liab. Litig.*,
   629 F.3d 333 (3d Cir. 2010) ........................................................................................................12

*Pfeifer v. Wawa, Inc.*,
   No. 16-497, 2018 WL 2057466 (E.D. Pa. May 1, 2018) ...............................................7, 23, 24

*Pfeifer v, Wawa, Inc.*,
   No. 16-497, 2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) .......................................................12

*In re Remicade Antitrust Litig.*,
   No. 17-cv-04326, 2022 WL 3042766 (E.D. Pa. Aug. 2, 2022) ........................................23, 24

*Rudel Corp. v. Heartland Payment Sys., Inc.*,
   No. 16-cv-2229, 2017 WL 4422416 (D.N.J. Oct. 4, 2017) .........................................................8

*Saint v. BMW of N. Am., LLC*,
   No. CIV.A. 12-6105 CCC, 2015 WL 2448846 (D.N.J. May 21, 2015) ..................................23

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
   No. 08-1432, 2012 WL 1964451 (D.N.J. May 31, 2012) ..........................................................15

*Shapiro v. All. MMA, Inc.*,
   No. CV 17-2583, 2018 WL 3158812 (D.N.J. June 28, 2018) .....................................................7

*Sims v. BB&T Corp.*,
   No. 1:15-CV-732, 2019 WL 1995314 (M.D.N.C. May 6, 2019) .............................................11

*Skeen v. BMW of N. Am., LLC*,
   No. 2:13-CV-1531WHW-CLW, 2016 WL 4033969 (D.N.J. July 26, 2016).........................23

*Somogyi v. Freedom Mortg. Corp.*,
   495 F.Supp.3d 337 (D.N.J. 2020) ...............................................................................................13

*Stevens v. SEI Invs. Co.*,
   No. CV 18-4205, 2020 WL 996418 (E.D. Pa. Feb. 28, 2020)..............................................8, 11

*Su v. Env'l Instrumentation Co.*,
   No. 23-cv-01824-JCS, 2023 WL 4995721 (N.D. Cal. July 17, 2023)......................................24

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011)..........................................................................................................15

*Torres v. BrandSafway Indus. LLC*,
   No. 2:21-CV-01771-CCW, 2023 WL 346667 (W.D. Pa. Jan. 20, 2023) ...............................14

*Urakhchin v. Allianz Asset Mgmt. of Am.*,
    L.P., No. 8:15-cv-01614-JLS-JCG, 2018 WL 8334858 (C.D. Cal. July 30,
    2018) ...................................................................................................................11

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
    No. CV157658MASLHG, 2021 WL 358611 (D.N.J. Feb. 1, 2021) .......................15

*In re Wilmington Tr. Sec. Litig.*,
    No. 10-CV-0990-ER, 2018 WL 3369674 (D. Del. July 10, 2018).........................15

*Wilson v. Venture Financial Group, Inc.*,
    No. 09-cv-05768-BHS, 2011 WL 4389374 (W.D. Wash. Apr. 26, 2011) .............24

**Statutes**

ERISA § 102, 29 U.S.C. § 1022 ................................................................................4

ERISA § 404, 29 U.S.C. § 1104 .........................................................................4, 20

ERISA § 405, 29 U.S.C. § 1105 ................................................................................4

ERISA § 406, 29 U.S.C. § 1106 ................................................................................4

**Other Authorities**

12 C.F.R. § 330.14 ...................................................................................................21

26 C.F.R. § 1.414(w)-1(d)(iii) .................................................................................22

26 C.F.R. § 1.415(c)-1 .......................................................................................19, 20

26 C.F.R. § 301.6057-2.............................................................................................20

29 C.F.R. § 2510.3-102..............................................................................................3

Fed. R. Civ. P. 23 ....................................................................7, 8, 15, 22, 23

IRS Regulation § 1.415(c)-1(b)(2)(ii)(C) ...............................................................18

Rev. Rul. 2002-45, 2002-2 C.B. 116, 2002 WL 1378252 (July 22, 2002)..........17, 19

Treas. Reg. § 1.468B-1 ..............................................................................5, 16, 17, 18

## INDEX OF EXHIBITS

Declaration of R. Joseph Barton with the following attachments:

Exhibit A:    Class Action Settlement Agreement signed by Plaintiff's counsel (which was authorized by Plaintiff) and all Defendants

Exhibit B:    Proposed Class Notice which has been agreed to by Plaintiff and Defendants

Exhibit C:    Class Counsel's Proposed Plan of Allocation

Exhibit D:    Mr. Einhorn's Proposal to Serve as Special Fiduciary

Exhibit E:    CPT Group's Proposal for Settlement Administration Services (assuming notice only to participants)

Exhibit F:    CPT Group's Proposal for Settlement Administration Services (assuming notice to participants and beneficiaries).

## INTRODUCTION

With the assistance of a private mediator, Plaintiff and Defendants have reached a settlement in this case on behalf of a proposed Class consisting of participants in the Schnader Harrison Segal & Lewis LLP Retirement and Savings Plan ("The Plan") and their beneficiaries. The settlement proposes to resolve the claims of the Class for a payment by Defendants of $675,000, which Plaintiff's counsel calculates is 68% of the Class's maximum loss. After deduction of any Court approved attorneys' fees and litigation expenses, the settlement will be allocated among Class Members who are either participants or beneficiaries entitled to an immediate distribution under the Plan. The settlement is structured to ensure the tax-favored treatment of these payments. No Class Member will need to submit a claim form to receive payment. Instead, Class Members will only need to submit an election distribution to receive a payment in tax-advantage manner and even those who do not will still receive a check for their share of the settlement.

The claims in this case arise under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA") and alleged that the Plan fiduciaries breached their fiduciary duties and committed prohibited transactions by failing to segregate employee contributions to the Plan and remit them to the participants' Plan accounts in a timely fashion, if at all. The Complaint alleges that the contributions at issue were employee contributions and that Defendants breached their fiduciary duties and engaged in prohibited transactions (or participated in those violations) by using the contributions at issue to fund Schnader's operating expenses and distributions to its equity partners. The Complaint alleges that all Class Members were affected in the same way by Defendants' alleged misconduct: the failure to remit employee contributions to the Plan resulted in investment losses to the Plan that affected the value of each participant's Plan account and

resulted, ultimately, in Schnader's failure to remit these alleged employee contributions to participant accounts at all upon the announced dissolution of the firm. As the Third Circuit has recognized, these claims are paradigmatic examples of claims suited for Class certification.

The Settlement satisfies the requirements for preliminary approval: it was reached through arm's length negotiation during a day-long private mediation with representation by well-informed and experienced counsel. While the settlement was reached in an early phase of the litigation, Plaintiff's counsel had requested and obtained sufficient information to make an informed decision about whether to settle. Based on data Defendants produced, Plaintiff's counsel estimates the total losses at approximately $990,000. The $675,000 cash portion of the Settlement represents approximately 68% of the Class's maximum losses. This not only falls within the range of other class action settlements approved in this District, but it exceeds the percentage recovery for most other class actions and most ERISA class actions. Indeed, few ERISA class actions have recovered a percentage this high, even when they are settled at later stages of litigation. Thus, preliminary approval of the Settlement should be granted, and a date should be set for a final approval hearing at which to consider whether the Settlement is fair, reasonable and adequate.

## BACKGROUND

Plaintiff Jo Bennett is a former non-equity partner and statutory employee of Schnader Harrison Segal & Lewis, LLP ("Schnader") and a participant in the Plan. ECF No. 70 at ¶ 4. The Plan is governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq*. *Id*. at ¶ 1. Schnader is the Plan's Administrator and a Plan fiduciary. ECF 1 at ¶ 6. Plaintiff further alleged that each of Schnader's equity partners served as fiduciaries of the Plan based on information Schnader provided to Plaintiff identifying the Plan's fiduciaries. *Id*. at ¶¶ 9-46.

As a fiduciary, Schnader was responsible for interpreting and implementing the terms of the Plan. ECF 1 at ¶ 6. The Complaint alleges that the Plan fiduciaries breached their fiduciary duties and engaged in prohibited transactions by requiring non-equity partners and counsel (for which both groups were W-2 employees) to defer a portion of their compensation instead of requiring Schnader to make employer contributions to the Plan (as required by the terms of the Plan), and by failing to remit those employee contributions to the Plan for up to approximately 18 months at a time and for 2022 and 2023 by failing to remit them to the Plan at all (or return them to the participants) and instead using those deferred employee contributions to fund Schnader's operations. ECF No. 1 ¶¶ 2, 75-78, 80, 86-89; ECF No. 65 at 4-5.

Defendants' policies (which were separate from the Plan terms themselves) required Income Partners and Counsel to defer a portion of their compensation, which was supposed to be eventually paid into the Plan and into the accounts for the income partner or counsel. ECF No. 55-8. The Complaint alleges that Defendants failed to remit employee contributions withheld from their employees' pay as "deferred compensation" to the Plan on the earliest date on which contributions can be reasonably segregated from the employer's general assets, as required by Department of Labor ("DOL") regulation 29 C.F.R. § 2510.3-102, and instead used the employee contributions to fund Schnader's operations, including distributions to its equity partners. ECF No. 1 at ¶¶ 85-87. After announcing that Schnader would cease operations at the end of August 2023, Schnader's Liquidating Partners announced to Schander's Income Partners and Counsel that any "deferred compensation" contributions relinquished to the Plan would not be remitted to the employees. ECF No. 70 at ¶ 98. As a result, the Complaint alleges that amounts that had been deferred in 2022 and a portion of 2023 were in fact, *never* paid into the Plan as had been promised,

but instead those amounts were simply retained by Schnader and were used to pay Schnader's expenses and also distributions to its equity partners. ECF No. 1 at ¶¶ 87, 94 and 96.

### *The Litigation & Settlement Negotiations*

On February 7, 2024, Plaintiff filed a Complaint on behalf of herself and a Class of participants and beneficiaries in the Plan against Schnader and Schnader's equity partners (naming the Plan as a nominal defendant). ECF No. 1. Count I alleges that all Defendants violated their respective fiduciary duties under ERISA § 404(a)(1) by failing to segregate contributions to the Plan from Schnader's general assets. *Id*. at ¶¶ 106, 111. Counts II and III allege that all Defendants violated their respective fiduciary duties under ERISA §§ 406(a)(b), 29 U.S.C. § 1106(a)(b) by retaining the employee contributions and converting them to their own use. *Id*. at ¶¶ 114-140. Count V alleges that Schnader as Plan Administrator violated its fiduciary duties under ERISA § 102, 29 U.S.C. § 1022, and ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B) by failing to properly disclose to Plan participants information about the administration of the Plan. *Id*. at ¶¶ 147, 151-153. Count VI alleges that all Defendants violated their respective fiduciary duties under ERISA § 405(a), 29 U.S.C. § 1105(a) by failing to disclose that the Plan does not require mandatory deferrals of Income Partner and Counsel compensation. *Id*. at ¶¶ 159-161. Count VII alleges that all Defendants are liable to Plaintiff and to the class as gratuitous transferees of the fiduciary breaches and prohibited transactions of the Plan. *Id*. at ¶ 166.

The Court denied Defendants' Motion to Dismiss on July 22, 2024. ECF No. 65. Thereafter, Defendants filed their Answers to the Complaint. ECF Nos. 70-75. After the motion to dismiss was denied, the Parties agreed to engage in a mediation, but only after Defendants produced certain key documents and data (including participant account statements, spreadsheets of participant data, and plan-related communications). Settlement Agreement ("Agmt") at Recital

¶ G. The Parties and their counsel engaged in a mediation with John Utz who is an experienced ERISA attorney with experience mediating ERISA cases. *Id.* at ¶ H. After attending a full day of private mediation on October 15, 2024, counsel for the Parties agreed on certain monetary and non-monetary terms that they believed formed the basis for class-wide resolution. *Id.*; ECF No. 81 ¶¶ 3, 4. The Parties then engaged in significant negotiations over the next six weeks about the terms of a written term sheet that was executed on November 25, 2024. Agmt at Recital ¶ H. The Court granted the Parties' joint requests for extensions of the deadline for Plaintiff to file for preliminary approval of their settlement (ECF Nos. 69, 78, 83, 87, 92, and 96). ECF No. 103. During that time, the Parties engaged in extensive settlement negotiations and reached the agreement for which Plaintiff now seeks approval. ECF Nos. 81, 84, and 88.

### *The Settlement Agreement*

The Settlement Agreement provides for a payment of $675,000, which Defendants have previously paid into an interest-bearing escrow account. Agmt § IV.1. The Settlement Fund is intended to be a "qualified settlement fund" for federal income tax purposes under IRC 468B and Treas. Reg. § 1.468B-1. *Id.* at Agmt § IV.2. The Settlement Agreement has been structured to have settlement payments qualify for the tax benefits associated with ERISA-covered and IRC-qualified plans. *Id.* To accomplish this goal, the settlement amounts will be distributed through a Special SubTrust that Defendant Schnader will establish within fifteen (15) days after the entry of the Preliminary Approval Order, and which will be administered by a court-appointed Special Fiduciary. *Id.* § VI.1. The Special SubTrust will have the same EIN as the Plan and is intended to operate as a sub-trust of the Plan to ensure that the settlement payments to the Class Members will be treated for income tax purposes as distributions to Class Members from a tax-qualified retirement plan and trust. *Id.* The Settlement contemplates that the Court appoint a "Special

Fiduciary" to manage the Special SubTrust, including by reporting distributions from the Special SubTrust on Form 1099-R using the Plan's EIN. *Id*. § VI.3, VIII.3, X.1(e). Plaintiff proposes that William J. Einhorn serve as the Special Fiduciary. Declaration of R. Joseph Barton ("Barton Decl.") ¶ 8.

The Settlement will be administered by a court-appointed Settlement Administrator. Agmt § III.5. Class Counsel propose that CPT Group serve as the Settlement Administrator. Barton Decl. ¶ 10. Among the Settlement Administrator's duties will be providing notice to Class Members. Agmt § VIII.2. Within thirty (30) days after the Settlement Agreement was fully executed, Defendants will provide Class Counsel with the form of the Election Distribution Packet used by the Plan. *Id.* § V.5. Class Counsel will provide the Settlement Administrator with an Election Distribution Packet to be sent to each Class Member. *Id.* Class Members will be able to elect to receive distributions either by (a) a rollover distribution from the Special SubTrust to a tax qualified retirement vehicle or (b) by check from the Settlement Fund. *Id.*

After deducting any court approved deductions for attorneys' fees, expenses and/or service award from the Settlement Fund (which will also include interest earned since the money was deposited on December 30, 2024), the resulting Net Settlement Fund[1] will be allocated among Class Members pursuant to a Court-approved Plan of Allocation. Agmt § VII For those Class Members who timely return an election form, their settlement proceeds will be transferred to and paid from a Special SubTrust, which is designed to preserve the tax-qualified benefits of the payments. *Id*. § V.6. Class Members who do not timely return election distribution forms will be

---

[1] The Net Settlement Fund will be the amounts held in the Escrow Account less any taxes owed on the income or earnings by the Settlement Fund, expenses incurred in connection with the administration of the Settlement or the Settlement Fund, any amounts owed to the Special Fiduciary, and attorney's fees/costs. *Id*. § V.4.

paid by check directly from the Settlement Fund. *Id*. In the settlement, Class Members will release their claims in the case or those based on the same factual predicate. *Id.* § XV1.a.

## ARGUMENT

### I.    The Class Should be Certified for Purposes of Settlement.

On June 23, 2025, Plaintiff moved for class certification. ECF No. 101. Pursuant to the Settlement Agreement, Defendants agreed not to oppose class certification for purposes of settlement. Agmt § II.3. Defendants' response to Plaintiff's motion for class certification confirms the same. ECF No. 104. As such, the class as defined in the Settlement Agreement should be certified for the reasons set forth in Plaintiff's Motion for Class Certification.

### II.    The Proposed Settlement Merits Preliminary Approval.

The settlement of a claim certified as a class action requires court approval. Fed. R. Civ. P. 23(e)(2). Review of a proposed class action settlement generally proceeds in two stages: (1) preliminary approval and notice to class members of the proposed settlement; and (2) final approval following a fairness hearing in which the Court determines whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

The standard for obtaining preliminary approval of a proposed class action settlement is "far less demanding" than the standard to obtain final approval. *Curiale v. Lenox Grp. Inc.*, No. 07-cv-1432, 2008 WL 4899474, at *9 n.4 (E.D. Pa. Nov. 14, 2008). At preliminary approval, the Court must merely determine "if there are any obvious deficiencies and whether the settlement falls within the range of reason." *Pfeifer v. Wawa, Inc.*, No. 16-497, 2018 WL 2057466, at *2 (E.D. Pa. May 1, 2018) (granting preliminary approval of ERISA settlement). "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Shapiro v. All. MMA, Inc.*, No. CV 17-2583 (RBK/AMD), 2018 WL 3158812, at *2 (D.N.J. June 28, 2018); *Atis v. Freedom Mortg. Corp.*, No. CV 15-03424 (RBK/JS), 2018 WL 5801544, at *2 (D.N.J. Nov. 6,

2018) (applying same "obviously deficient" standard); *Rudel Corp. v. Heartland Payment Sys., Inc.*, No. 16-cv-2229, 2017 WL 4422416, at *2 (D.N.J. Oct. 4, 2017) (same). The court also "consider[s] whether the negotiations occurred at arm's length, [and] whether there was significant investigation of Plaintiffs' claims . . . ." *In re Nat'l Football League Players' Concussion Injury Litig.* ("*NFL*"), 301 F.R.D. 191, 198 (E.D. Pa. 2014). Under Rule 23, a settlement "fall[s] within the range of possible approval," if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy, and reasonableness—will be satisfied. *Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007).

Here, the proposed Settlement was reached by counsel with substantial experience litigating ERISA class actions after obtaining sufficient discovery in advance of settlement discussions and is the result of arm's-length negotiations aided by a private mediator. As the amount and other terms of the Settlement has every indication of being fair, reasonable, and adequate, and devoid of obvious deficiencies, preliminary approval should be granted.[2]

### A.    The Settlement is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel.

"Whether a settlement arises from arm's length negotiations is a key factor in deciding

---

[2] While Rule 23(e)(2) was amended effective December 1, 2018 to list factors to guide a court's inquiry for final approval, courts in the Third Circuit still continue to evaluate final approval of class action settlements under the nine factors in *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). *Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-CV-05135, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019); *see Stevens v. SEI Invs. Co.*, No. CV 18-4205, 2020 WL 996418, at *3-*6 (E.D. Pa. Feb. 28, 2020). Those factors are: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157. On preliminary approval, the Court does need not address these factors as "the standard for preliminary approval is far less demanding." *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008).

whether to grant preliminary approval." *NFL*, 301 F.R.D. at 198. "The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Alves v. Main*, No. 01-cv-789, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F.App'x 151 (3d Cir. 2014); *see Lewis-Abdulhaadi v. Union Sec. Ins. Co.,* No. 21-cv-03805-WB, 2025 WL 1510577, at *3 (E.D. Pa. Mar. 20, 2025) ("The assistance of a professional mediator reinforces that the Settlement Agreement is non-collusive.").

Here, the parties engaged in a day-long mediation with a private mediator. Agmt at Recital ¶ H; Barton Decl. ¶ 4. This mediation took place only after Defendants produced certain key documents and data (including participant account statements, spreadsheets of participant data, and plan-related communications) and after the Court denied Defendants' motion to dismiss and Defendants had filed their Answers to the Complaint. Agmt at Recital ¶ G; Barton Decl. ¶ 2. ; *see also* ECF Nos. 65, 70-74. Based on the arguments that Defendants had made on the motion to dismiss and their Answers to the Complaint (as well as their affirmative defenses), Plaintiff's counsel had a thorough understanding of Defendants' arguments and defenses by the time of the mediation. Barton Decl. ¶ 3. Plaintiff's counsel have extensive experience in litigating ERISA class actions, which enabled them to carefully evaluate the benefits of the Settlement to the Class and the risks involved in proceeding to trial. Barton Decl. in Support of Class Certification ("Barton Class Cert. Decl.") (ECF No. 101-2) ¶ 4; Declaration of Adam Harrison Garner in Support of Class Certification ("Garner Class Cert. Decl.) (ECF No. 101-3) at ¶¶ 4, 12; *Lewis-Abdulhaadi*, 2025 WL 1510577, at *3 (finding these same plaintiff's "counsel have significant experience litigating class action ERISA cases."). Indeed, unlike many ERISA class action attorneys, Plaintiff's counsel have all tried ERISA actions. Barton Class Cert. Decl. ¶ 4; Garner

Class Cert. Decl. ¶ 12. Thus, the proposed Settlement is the result of good faith, well-informed, arm's-length negotiations, by well-informed and experienced counsel.

### B.    The Settlement Falls Within the Range of Possible Approval and has no Obvious Deficiencies.

In reviewing a proposed settlement for "obvious deficiencies," courts consider whether the settlement "provides the class with reasonable and adequate relief" and whether it "unreasonably favors the class representative or any segment of the class." *Mazon v. Wells Fargo Bank, N.A.*, No. CIV. 10-700 RBK/KMW, 2011 WL 6257149, at *2 (D.N.J. Dec. 14, 2011) (granting preliminary approval); *Atis*, 2018 WL 5801544, at *3 (same). Here, there are no "obvious deficiencies" with the settlement as it provides reasonable relief and it does not favor the class representative or any segment of the class.

#### 1.    *The Settlement Provides the Class with Reasonable and Adequate Relief.*

The proposed Settlement provides substantial monetary relief to the Class and contains significant non-monetary benefits. The monetary portion of the relief under the Settlement— $675,000—represents a meaningful recovery of the total monetary loss to the Plan accounts of the members of the Class. Agmt § IV. 1. Based on the data provided by Defendants, Plaintiff's counsel calculated the amount of contributions that were promised but were never made in 2022 and 2023 and also calculated the amount of investment losses from the failure to make timely contributions in 2018-2021 and also the amount of investment losses from Defendants' failure to make the contributions in 2022 and 2023. Barton Decl. ¶ 5. Relying on Defendants' data, Plaintiff's counsel calculated (1) the amount of contributions that should have been but were never made in 2022 and 2023 totaled $682,028.70, (2) the amount of investment losses for the 2022 and 2023 contributions totaled $214,720 and (3) the maximum investment losses for the delayed contributions (which were ultimately made, but were alleged to be untimely) totaled $93,460. *Id.* ¶ 5, 7. Based on those

calculations the maximum losses for the Class would be $990,208. *Id.* ¶ 8. As a result, Plaintiff's counsel estimates that the $675,000 represents approximately 68% of the maximum recoverable loss. *Id.* Such a recovery exceeds class settlements approved by other courts of this Circuit in complex class action cases generally and ERISA cases specifically. *Cunningham v. Wawa, Inc.*, No. 18-3355, 2021 WL 1626482, at *6 (E.D. Pa. Apr. 21, 2021) (finding recovery of 18.0% of the best possible outcome for the Class Members and 28.1% for the Subclass Members in ERISA case were "in line with other approved settlements" in ERISA cases); *Stevens*, 2020 WL 996418, at *6 (finding ERISA settlement that provided more than 31% of the maximum proposed loss "compare[d] favorably to other class action settlements."); *Alderfer v. Clemens Markets, Inc. Ret. Sav. & Profit Sharing Plan 003*, No. CIV.A. 10-4423, 2012 WL 12292160, at *7 (E.D. Pa. Apr. 19, 2012) (finding settlement providing for $642,500 to be distributed to the class, less 30% in attorneys' fees, $28,000 in expenses and $5,000 incentive award – or $416,000 net – was reasonable).[3] As another Court in this District recently explained in approving an ERISA settlement reached by these same Plaintiff's Counsel: "Recoveries of 50% … significantly exceed the results achieved in many other complex class action lawsuits approved in this jurisdiction." *Lewis-Abdulhaadi*, 2025 WL 1510577, at *4 (finding that a monetary recovery of 72% "significantly exceeds the recoveries in other class actions settlements approved in this Circuit").[4] Thus, there should be no dispute that the amount here is sufficient to warrant preliminary approval.

---

[3] Numerous courts have approved settlements in ERISA cases recovering far less. *E.g., Sims v. BB&T Corp.*, No. 1:15-CV-732, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (19% of estimated losses); *Urakhchin v. Allianz Asset Mgmt. of Am.*, L.P., No. 8:15-cv-01614-JLS-JCG, 2018 WL 8334858, at *7 (C.D. Cal. July 30, 2018) (25% of estimated losses); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-cv-03698-NC, 2018 WL 2183253, at *6–7 (N.D. Cal. May 11, 2018) (approximately 10% of losses under Plaintiffs' highest model).

[4] *E.g. In re Corel Corp. Sec. Litig.*, 293 F.Supp.2d 484, 490 (E.D. Pa. 2003) (approving a settlement amounting to 15% of provable damages); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144 (E.D. Pa. 2000) (finding settlement "represent[ing] approximately seventeen percent [17%] of

In addition, the Settlement includes significant favorable non-monetary components. The Settlement is designed to allow Class Members' recovery to be distributed to Class Members via the Special SubTrust to enable Class Members to receive the tax-favored treatment of these benefits. Agmt § VI. Distributions designed to provide class members distributions from a tax-qualified retirement plan for income tax purposes provide an additional benefit to the Class. *Cunningham,* 2021 WL 1626482, at *7 (describing similar term as "innovative" and thus weighing in favor of approval); *Pfeifer v, Wawa, Inc.*, No. 16-497, 2018 WL 4203880, at *13 (E.D. Pa. Aug. 31, 2018) (same).

### 2. The Settlement Does Not Unduly Favor Plaintiff or a Segment of the Class.

"A class action settlement need not necessarily treat all class members equally." *Cohen v. Resolution Tr. Corp*., 61 F.3d 725, 728 (9th Cir. 1995), *vacated on other grounds*, 72 F.3d 686 (9th Cir. 1996). "[T]here is no rule that settlements benefit all class members equally" so long as any differences are "rationally based on legitimate considerations." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983) (citing *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 506 n.5 (5th Cir. 1981)). The Third Circuit has expressly recognized that "[V]aried relief among class members with differing claims is not unusual. Such differences in settlement value do not, without more, demonstrate conflicting or antagonistic interests within the class." *In re Pet Food Prods. Liab. Litig.,* 629 F.3d 333, 346 (3d Cir. 2010) (citations omitted). Differing recovery is "simply a reflection of the extent of the injury that certain class members incurred." *In re Ins. Brokerage Antitrust Litig.,* 579 F.3d 241, 272 (3d Cir. 2009).

---

single damages to the class [was] an amount significantly higher than the proportion of damages obtained in settlement agreements approved by other courts."); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 183 (E.D. Pa. 2000) (approving monetary settlement of 5.2% to 8.7% of best possible recovery for class members).

Here, the Settlement does not unduly favor a segment of the Class and treats class members equitably relative to one another. Indeed, the Settlement Agreement itself does not differentiate among Class Members. Instead, the Settlement Agreement contemplates that after the Final Order becomes Non-Appealable, the Settlement Fund—less taxes, certain expenses (e.g., escrow account fees), and any award of attorneys' fees and litigation expenses to Class Counsel—will be allocated among Class Members pursuant to a Court-approved Plan of Allocation. Agmt § VII.1. The terms of the Plan of Allocation are not part of the Settlement agreed to by the Parties but must be approved and can be modified by the Court without affecting finality of the Settlement. *Id.* Defendants are not entitled to any input on the Plan of Allocation, except that if necessary they may present any objection that the proposed Plan of Allocation would impact the tax-qualified status of the Plan. Agmt§ VII.2. Plaintiff's counsel provided Defendants' counsel with a copy of the Plan of Allocation and Defendants have not articulated any objection.

The Plan of Allocation contemplates that the distributions to Class Members will be allocated based on their pro rata losses relative to a hypothetical investment portfolio that applies equally to all Class Members. *See infra* III. The only differentiation among Class Members in the Agreement itself depends on whether they will receive payment from the Special SubTrust or from the Qualified Settlement Fund, but that is simply a choice each Class Member will make based on whether they timely return an election distribution form. Agmt § V.6. Thus, this factor supports approval of the settlement.

Finally, the Settlement Agreement contemplates that Plaintiff may seek a service award from the Fees & Expense Fund not to exceed $5,000. Agmt § IX.1. Any award will be in the discretion of the Court and is not a material term of the Settlement. Agmt § IX.5. "There is substantial precedent from this Circuit supporting approval of incentive payments." *Somogyi v.*

*Freedom Mortg. Corp.*, 495 F.Supp.3d 337, 353 (D.N.J. 2020) (collecting case); *see Lewis-Abdulhaadi*, 2025 WL 1510577, at *10 (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) and finding "[t]he Third Circuit has expressly authorized service awards to class representatives"); *Torres v. BrandSafway Indus. LLC*, No. 2:21-CV-01771-CCW, 2023 WL 346667, at *4 (W.D. Pa. Jan. 20, 2023) (holding $10,000 service award did not represent an obvious deficiency of settlement and granting preliminary approval). Thus, Plaintiff's ability to seek a service award at the discretion of and in an amount approved by the Court does not undermine the fairness of the settlement.

### 3.    *The Settlement Does Not Contemplate Excessive Compensation for Class Counsel.*

The Settlement Agreement provides that Class Counsel's fees will be paid from the Settlement Fund in an amount to be approved by the Court. Agmt § IX.1. The Third Circuit has recognized that this practice minimizes the risk of collusion on fee issues (as contrasted to paying fees separate from settlement funds). *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 802 (3d Cir. 1995). Defendants will not take a position on any attorneys' fees request, but Class Counsel must apply by motion for the approval of reasonable attorneys' fees and litigation expenses prior to both the final fairness hearing and the objection deadline and any fees and expenses must be approved by the Court. Agmt § VI.2. Such "clear sailing" provisions do not suggest collusion or excessive fees where, as here, class counsel's fees will be paid from the settlement fund rather than by defendants and there is no evidence class counsel bargained away claims of the class for their own fees. *NFL*, 821 F.3d at 447.

A decision about the appropriate amount of fees is appropriately deferred until final approval. *Currie v. Joy Cone Co.,* No. 2:23-CV-00764-CCW, 2024 WL 3157870, at *4 (W.D. Pa. June 25, 2024) (deferring such a decision until final approval because preliminary approval is a

lower standard); *Kopchak v. United Res. Sys.,* No. CV 13-5884, 2016 WL 4138633, at *5 (E.D. Pa. Aug. 4, 2016) (deferring decision about attorneys' fees until after the final fairness hearing and upon a review of class counsels' submissions on attorneys' fees). The Court will have the opportunity to consider the appropriateness of such an award at the final fairness hearing. Fed. R. Civ. P. 23(e)(2)(C)(iii). The Settlement provides that rejection or modification of Class Counsel's requested fees by the Court will not void the Settlement or provide a basis for any party to withdraw from it. Agmt § IX.5. There are thus no obviously deficient components of the Settlement regarding Class Counsel's compensation.

## III.        The Plan of Allocation Should be Preliminarily Approved.

The Plan of Allocation, while not part of the Settlement Agreement, is subject to the Court's review and approval. Agmt § VII.1 "The [a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. CV157658MASLHG, 2021 WL 358611, at *3 (D.N.J. Feb. 1, 2021). "A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.,* 726 F.2d 956, 964 (3d Cir. 1983)). "In determining whether a [p]lan of [a]llocation is fair, reasonable, and adequate, courts give great weight to the opinion of qualified counsel." *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-1432, 2012 WL 1964451, at *6 (D.N.J. May 31, 2012). "Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *In re Aetna Inc.*, No. CIV. A. MDL 1219, 2001 WL 20928, at *12 (E.D. Pa. Jan. 4, 2001); *see In re Wilmington Tr. Sec. Litig.*, No. 10-CV-

15

0990-ER, 2018 WL 3369674, at *3 (D. Del. July 10, 2018) (preliminarily approving similar pro rata plan of allocation); *Mehling,* 246 F.R.D. at 473 n.3 (same).

The Plan of Allocation meets the standards for approval. It proposes to allocate the Net Settlement Fund (i.e. the Fund plus any earnings, minus any Court-approved deductions), on a pro rata basis among Class Members based on their losses, which is calculated based on (1) contributions that were not paid in 2022 and 2023 and (2) the amount of lost earnings that were never paid (i.e. in 2022 or 2023) or that were paid on a delayed basis as compared to a hypothetical investment portfolio. Plan of Allocation at ¶¶ 5 & 6. The Plan of Allocation proposes that Class Member's minimum loss payment will be $25 to ensure that all Class Members, even those with de minimis losses, benefit from the settlement. *Id*. at ¶ 7. Other than that provision, the Plan of Allocation proposes that the Settlement Fund will be allocated based on Class Members' losses. *Id.* at ¶ 5-7. Courts in this Circuit have approved other settlements that guarantee a minimum payment to Class Members. *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 143 & 147 (D.N.J. 2013) (approving plan of allocation in class action settlement that guaranteed minimum payment to class members of $10); *Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455, 463 (E.D. Pa. 2008) (approving plan of allocation in a class action settlement of ERISA retirement plan litigation with minimum payment of $50). Thus, the Plan of Allocation is also fair, reasonable and adequate and should be preliminarily approved.

## IV.    The Court Should Make Preliminary Findings to Ensure the Tax-Favored Provisions of the Settlement.

The Settlement Agreement contemplates that the Court will make the following findings regarding the structure of the Settlement:

1)  pursuant to Treas. Reg. § 1.468B-1, the Qualified Settlement Fund meets the requirements of a "qualified settlement fund" for federal income tax purposes;

2) pursuant to Internal Revenue Service Revenue Ruling 2002-45, payments from the Special SubTrust are "restorative payments;"

3) the Special SubTrust qualifies as a sub-trust of the Plan such that distributions from the SubTrust will be treated for income tax purposes as distributions from a tax-qualified retirement plan and trust;

4) the Special Fiduciary will report distributions from the Special SubTrust on Form 1099-R using the Plan's Employer Identification Number ("EIN");

5) distributions from the Special SubTrust are eligible for tax-free rollover treatment;

6) pursuant to Section 415 of the Internal Revenue Code, distributions from the Special SubTrust are not subject to the annual limits on contributions; and

7) the SubTrust will maintain 100% of its assets in a federally-insured financial institution and in accounts that are insured by the Federal Deposit Insurance Corporation and designed for capital preservation until the amounts are distributed to Class Members.

Agmt § X.1(h). Indeed, the Settlement is conditioned on such findings. *Id.* § XIII.1. Such findings are intended that the settlement payments to the Class Members will qualify for the tax benefits associated with ERISA-covered and IRC-qualified plans. *Id.* § IV.2. This is intended to ensure that Class Members can properly transfer their settlement payments into a tax qualified retirement vehicle. *See id.* §§ V.5, V.6(a), VI.1, VIII.4, 5. As the Plan was a tax-qualified, ERISA-covered plan, had these contributions been timely made, these amounts would have qualified for such treatment and these provisions are merely intended to ensure that the settlement payments to the Class Members through the SubTrust do not give rise to immediate taxation and jeopardize what the tax deferred nature of these plan benefits.

### 1. The Qualified Settlement Fund meets the requirements of a "qualified settlement fund" pursuant to Treas. Reg. § 1.468B-1.

A fund is a "qualified settlement fund" under Treas. Reg. § 1.468B-1 if the following elements are met:

- It is established pursuant to an order of, or is approved by…any agency or instrumentality [of the United States] (including a court of law)…and is subject to the continuing jurisdiction of that governmental authority;

- It is established to resolve or satisfy one or more contested or uncontested claims that has resulted from an event…that has occurred…that has given rise to at least one claim asserting liability…arising out of a violation of law; and

- The…fund is a trust under applicable state law, or its assets are otherwise segregated from other assets of the transferor (and related persons).

Treas. Reg. § 1.468B-1(c). Here, the Qualified Settlement Fund meets all of these requirements.

The Qualified Settlement Fund is established pursuant to the Settlement for which the Plaintiffs currently seek approval, and it may only operate upon this Court's approval. *See* Agmt § X. The Court maintains continuing jurisdiction over the Settlement. Agmt § IV.3. The Qualified Settlement Fund is established to facilitate the resolution of Plaintiff's' claims, which arise from alleged violations of ERISA. Agmt at Recital ¶ L. Lastly, the Qualified Settlement Fund's assets have already been segregated from Defendants' assets, having been placed in an escrow account pursuant to Agmt § IV.1. Thus, the Court should find that the Qualified Settlement Fund is a "qualified settlement fund" pursuant to Treas. Reg. § 1.468B-1.

### 2. *Payments from the Special SubTrust are "restorative payments," and are not subject to annual contribution limits.*

IRS Regulation § 1.415(c)-1(b)(2)(ii)(C) provides helpful guidance in categorizing various types of payments to a defined contribution plan as a "contribution" or a "restorative payment" depending upon the purpose for which the payments have been made:

"A restorative payment that is allocated to a participant's account does not give rise to an annual addition for any limitation year. For this purpose, restorative payments are payments made to restore losses to a plan resulting from actions by a fiduciary for which there is reasonable risk of liability for breach of a fiduciary duty under title I of the Employee Retirement Income Security Act of 1974 (88 Stat. 829), Public Law 93–406 (ERISA) or under other applicable federal or state law, where plan participants who are similarly situated are treated similarly with respect to the

payments. Generally, payments to a defined contribution plan are restorative payments only if the payments are made in order to restore some or all of the plan's losses due to an action (or a failure to act) that creates a reasonable risk of liability for such a breach of fiduciary duty (other than a breach of fiduciary duty arising from failure to remit contributions to the plan). This includes payments to a plan made pursuant to … a court-approved settlement, to restore losses to a qualified defined contribution plan on account of the breach of fiduciary duty[.] Payments made to a plan to make up for losses due merely to market fluctuations and other payments that are not made on account of a reasonable risk of liability for breach of a fiduciary duty under title I of ERISA are not restorative payments and generally constitute contributions that give rise to annual additions under paragraph (b)(4) of this section."

26 C.F.R. § 1.415(c)-1.

Here, payments from the Special SubTrust will occur after litigation alleging breach of fiduciary duties will be made subject to this Court's approval. Defendants have already deposited the settlement amount in escrow in a federally insured financial institution. Agmt § IV.1. IRS Revenue Ruling 2002-45 contemplates this very situation, and states that payments precisely like the ones demanded by the Settlement Agreement are "restorative:"

"Employer M maintains Plan X, a defined contribution plan, for the benefit of M's employees. The plan is qualified under § 401(a). Employer M caused an unreasonably large portion of the assets of Plan X to be invested in Entity G, a high-risk investment. It is later determined that the investment has become worthless…

Employer M becomes aware that participants in Plan X are concerned about the investment in Entity G and are considering taking legal action. Employer M also learns that lawsuits alleging fiduciary breach have been filed against other companies by those companies' employees over losses to their qualified retirement plans due to investment in Entity G. Employer M decides to make the payment to Plan X before a lawsuit is filed, after reasonably determining that it has a reasonable risk of liability for breach of fiduciary duty based on all of the relevant facts and circumstances. …

[T]herefore, the payment is made based on a reasonable determination that there is a reasonable risk of liability for breach of fiduciary duty and to restore losses to the plan… the payment is a restorative payment (as defined in this revenue ruling) and, as such, is not a contribution to a qualified plan."

Rev. Rul. 2002-45, 2002-2 C.B. 116, 2002 WL 1378252 (July 22, 2002). This settlement presents

a stronger case that the payments are "restorative," as litigation was in progress when the settlement was reached, rather than merely contemplated, and the payments are required by a Settlement Agreement resulting from the litigation, and subject to court approval. Thus, the Court should find that the payments from the Special SubTrust are "restorative payments."

As the Special SubTrust are restorative payments, distributions from the Special SubTrust are not subject to the annual limits on contributions. 26 C.F.R. § 1.415(c)-1. Thus, the Court should find that distributions from the Special SubTrust are not subject to the annual limits on contributions.

### 3. *The Special SubTrust qualifies as a sub-trust of the Plan and should maintain 100% of its assets in a federally insured financial institution.*

The Settlement requires Schnader to establish the Special SubTrust as a sub-trust of the Plan to ensure that distributions to Class Members enjoy the same tax treatment as though the distributions were benefits distributed from the Plan. Agmt § VI.1. Because the terms of the Settlement Agreement require Schnader to establish the Special SubTrust expressly as a sub-trust of the Plan, sub-trust assets should be treated as Plan assets. *Id*. The Settlement Fund will flow to the Special SubTrust as though it is a Plan asset. The Special Fiduciary is tasked with managing the Special SubTrust on behalf of Schnader and for the benefit of Class Members, and assumes the obligations ERISA imposes on fiduciaries. Agmt § VI.3; *see also* 29 U.S.C. §§ 1104. As such, Schnader has agreed, with the cooperation of the Special Fiduciary, to prepare and submit any Form 5500 or similar filings associated with the establishment of the Special SubTrust so that DOL retains regulatory control of the Special SubTrust, just as it would for the Plan. Agmt §§ VI.1, VI.2; *see also* 26 C.F.R. § 301.6057-2 (requiring the submission of a form 5500 series to notify DOL of certain changes in plan status.)

To ensure continuing compliance with ERISA and the Internal Revenue Code and to preserve its assets which should be distributed shortly after the Final Order is Non-Appealable, the Settlement requires that the assets of the Special SubTrust will be maintained 100% in a federally-insured financial institution, and in accounts that are insured by the Federal Deposit Insurance Corporation. Thus, the Special SubTrust assets should enjoy the same tax treatment, and be protected by the same federal oversight and backstopping, as assets held in tax qualified retirement plans. *See* 12 C.F.R. § 330.14 (insuring deposits in retirement accounts maintained in insured institutions on a "pass-through" basis.)

By finding, based on the above, that the Special SubTrust is, as the Settlement Agreement intends, a sub-trust of the Plan, the Court will ensure that distributions to Class Members are treated as though they are distributions from a tax-qualified retirement plan for tax purposes. This serves to help make the Class Members whole as the amounts at issue in this litigation should have been custodied in the Class Member's retirement accounts and subject to tax-favored treatment under ERISA and the Internal Revenue Code. The value of the distributions of the Special SubTrust will therefore not be impaired merely by the fact that Class Members are receiving their retirement benefits through the operation of the Settlement Agreement rather than through the operation of the Plan. Because the Settlement Agreement intends to compensate Class Members for benefits they would have otherwise received through the Plan, the distributions under the Settlement Agreement should be treated as distributions of Plan assets. Thus, the Court should find that the Special SubTrust is a sub-trust of the Plan.

### 4. The Special Fiduciary should be authorized to report distributions from the Special SubTrust on Form 1099-R using the Plan's EIN.

In further support of the Settlement Agreement's intention to treat distributions to Class Members like distributions from a tax qualified retirement plan as is possible under the law, the

Settlement provides that the Special Fiduciary will report distributions from the Special SubTrust on Form 1099-R using the Plan's EIN. Agmt §§ VI.1, 6, VII.4,5. These reports will further demonstrate that the assets held in the Special SubTrust, and any distributions thereof, are likewise Plan assets and may be treated as distributions from the Plan for tax purposes.

Reporting the distributions to Class Members on Form 1099-R links the income from the distributions to the Plan. Though the distributions are made from the Special SubTrust rather than the Plan itself, using the Plan's EIN affirms the connection between the SubTrust and the Plan, and therefore the Plan and the distributions. *See* 26 C.F.R. § 1.414(w)-1(d)(iii) (requiring that withdrawals from retirement accounts be reported on Form 1099-R).

For these reasons, the Court should find that the Special Fiduciary will report distributions from the Special SubTrust on Form 1099-R using the Plan's EIN.

### 5.    *Distributions from the Special SubTrust should be determined to be eligible for tax-free rollover treatment.*

Distributions from a tax qualified retirement plan are eligible for tax-free rollover treatment. 26 U.S.C.A. § 402(c)(1). The Plan is a qualified retirement plan under 26 U.S.C.A. § 402(c)(8)(B) and 26 U.S.C.A. § 401. The Court should find that distributions from the Special SubTrust are likewise eligible for tax-free rollover treatment because, as argued above, the Special SubTrust is a sub-trust of the Plan, and assets held in the Special SubTrust are plan assets. Therefore, distributions from the Special SubTrust are entitled to the same tax treatment, including tax-free rollover, that would be available to distributions made directly from the Plan.

## V.    The Proposed Form of Class Notice and Notice Plan Should Be Approved

Rule 23 requires the court to "direct notice in a reasonable manner to all class members who would be bound by [a proposed settlement, voluntary dismissal, or compromise]." Fed. R. Civ. P. Rule 23(e)(1). Notice to the Class satisfies due process if it is "reasonably calculated under

all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Pfeifer,* 2018 WL 2057466, at *6; *Mehling*, 246 F.R.D. at 477. "To meet this standard, notice must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the fairness hearing and that objectors maybe heard." *Id*.; *see In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) (same). Here, the Class Notice describes in plain language: (i) a summary of the claims advanced by the Class; (ii) a summary of the terms of the Settlement Agreement; (iii) information on the attorneys' fees and costs sought by Class Counsel; (iv) a description of the proposed Plan of Allocation; (v) the estimated settlement allocation for that Class Member; and (vi) the date and place for the Fairness Hearing.

Rule 23(e) affords the district court discretion as to the manner of the notice. Fed. R. Civ. P. 23(e)(1). It is well-established that notice sent by first class mail to each member of the class "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974). In recent years, courts have also approved notice by email. *E.g., Saint v. BMW of N. Am., LLC,* No. CIV.A. 12-6105 CCC, 2015 WL 2448846, at *8 (D.N.J. May 21, 2015); *Skeen v. BMW of N. Am., LLC*, No. 2:13-CV-1531WHW-CLW, 2016 WL 4033969, at *7 (D.N.J. July 26, 2016) (finding that a 94% email success rate met the notice requirements of Fed. R. Civ. P. 23(c)(2)(B)). Here, the Notice will be sent by first-class U.S. mail and email (if known) to each Class Member. Defendants will cooperate with Class Counsel to facilitate providing Class Notice by providing email and mailing addresses for all Class Members, to the extent such information is reasonably available in the records of Defendants. Agmt § III.3.

## VI.    The Court Should Appoint CPT Group as the Settlement Administrator

"Parties may use class notice experts or professional claims administrators to provide a class notice and otherwise administer a settlement." *In re Remicade Antitrust Litig.*, No. 17-cv-

04326, 2022 WL 3042766, at *9 (E.D. Pa. Aug. 2, 2022) (citing Fed. R. Civ. P. 23 note(c)(2)

(2018)). And courts often appoint those settlement administrators. *Id.*; *Pfeifer,* 2018 WL 2057466,

at *7 (appointing settlement administrator in ERISA settlement). To facilitate the Class Notice,

Plaintiff proposes that CPT Group, an experienced class action administration services vendor be

appointed to serve as the Settlement Administrator for purposes of effectuating the Class Notice.

Barton Decl. ¶ 11 and Exs. E & F. (CPT Group's Proposals). Plaintiff's counsel selected CPT

Group following a competitive process in which Class Counsel solicited bids from 11 settlement

administration services vendors. Barton Decl. ¶ 11. Class Counsel has worked with CPT Group in

other cases and are comfortable recommending their appointment here. *Id.* ¶ 12. Plaintiff's counsel

do not have a financial interest in CPT Group. *Id.*

## VII.    The Court Should Appoint William Einhorn as the Special Fiduciary

Courts in this Circuit have recognized that under ERISA, the Court's "equitable powers"

include the ability to appoint fiduciaries of an ERISA-covered plan. *Perez v. Kwasny*, No. 14-

4286, 2016 WL 558721, at *3 (E.D. Pa. Feb. 9, 2016); *Perelman v. Perelman,* No. 10-5622, 2012

WL 3704783, at *6 (E.D. Pa. Aug. 28, 2012); *see also Su v. Env'l Instrumentation Co.,* No. 23-

cv-01824-JCS, 2023 WL 4995721, at *3 (N.D. Cal. July 17, 2023) (finding appointment of an

independent fiduciary is appropriate equitable relief and granting such appointment). Courts also

appoint independent or special fiduciaries to perform specified tasks in connection with

settlements. *Chesemore v. Alliance Holdings, Inc.,* No. 09-cv-413-wmc, 2014 WL 4415919, at *1.

n.1 (W.D. Wis. Sept. 5, 2014) (noting the court appointed an independent fiduciary to perform a

valuation in connection with a settlement). In *Wilson v. Venture Financial Group, Inc*., No. 09-cv-

05768-BHS, 2011 WL 4389374, at *3 (W.D. Wash. Apr. 26, 2011), the court appointed an

"Independent Fiduciary for the purposes of effectuating the distribution of the Net Settlement

Amount consistent with the Plan of Allocation." *Id.* (approving appointment and fee of $15,000).

Here, Mr. Einhorn should be appointed as a Special Fiduciary for several reasons. The first such reason is necessity. Schnader is in dissolution and there is no one available to serve as a Plan fiduciary for purposes of effectuating settlement. Moreover, the only former Schnader personnel who could conceivably be available to serve as a fiduciary of the Plan are also individual Defendants in this case who are alleged to have breached their fiduciary duties to the Class. Such persons should not be administering the Plan, even for purposes of settlement. Moreover, Mr. Einhorn is unquestionably qualified to serve as the Plan's Special Fiduciary. Mr. Einhorn has been a member of the Pennsylvania Bar since 1978 and is an experienced labor and employment attorney who served as the assistant administrator and, subsequently, as administrator of the Teamsters Pension Trust Fund of Philadelphia and Vicinity and the Teamsters Health and Welfare Fund of Philadelphia and Vicinity (collectively, "the Teamster Funds"), both of which are ERISA-regulated employee benefit plans, for 20 years.[5] *See* Barton Decl. Ex. D (Curriculum Vitae of William J. Einhorn).  He has been a Trustee of the Pennsylvania Employee Benefits Trust Fund since 2010 and of the Teamster Funds since 2016. *Id.* Mr. Einhorn has similarly served as an independent fiduciary or professional trustee of various other ERISA-regulated employee benefit plans since his retirement as the administrator of the Teamster Funds in 2015. *Id.* Lastly, Defendants have no objection to Mr. Einhorn's appointment as the Special Fiduciary. *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Preliminary Approval of the Class Action Settlement Agreement should be granted.

---

[5] Mr. Garner worked with Mr. Einhorn at the Teamster Funds until his departure in 2016.

Respectfully submitted,

/s/ Adam H. Garner
Adam Harrison Garner (320476)
Melanie J. Garner (315058)
THE GARNER FIRM, LTD.
1617 John F. Kennedy Blvd., Suite 550
Philadelphia, PA 19103
(215) 645-5955 (Tel)
(215) 645-5960 (Fax)
melanie@garnerltd.com
adam@garnerltd.com

R. Joseph Barton (admitted *pro hac vice*)
THE BARTON FIRM, LLP
1633 Connecticut Ave., NW, Ste. 200
Washington D.C. 20009
Telephone: (202) 734-7046
jbarton@thebartonfirm.com

*Attorneys for Plaintiff*

Dated: August 12, 2025