# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JO BENNETT, on behalf of herself and all others similarly situated,<br><br>        *Plaintiff*<br><br>v.<br><br>SCHNADER HARRISON SEGAL & LEWIS LLP, BARRY S. ALEXANDER, SAMANTHA J. BANKS, RICHARD A. BARKASY, ROBERTA BARSOTTI, KEVIN BLANTON, MELISSA SUE BLANTON, NADINE DOOLITTLE, ALLISON FIHMA DRACHMAN, STEPHEN DYE, STEPHEN FOGDALL, MEGAN E. HARMON, THEODORE HECHT, ANNE KANE, NICHOLAS J. LEPORE III, THERESA E. LOSCALZO, BRUCE P. MERENSTEIN, CYNTHIA A. MURRAY, KENNETH R. PUHALA, IRA NEIL RICHARDS, LISA JOAN RODRIGUEZ JACOBS, ROY S. ROSS, CARL J. SCHAERF, H. LEE SCHWARTZBERG, STEPHEN J. SHAPIRO, EDWARD J. SHOLINSKY, JAMES D. SHUPE, SAMUEL W. SILVER, JONATHAN B. SKOWRON, DAVID SMITH, BRUCE M. STRIKOWSKY, MATTHEW S. TAMASCO, KEITH E. WHITSON, MICHAEL J. WIETRZYCHOWSKI, AND ROBERT J. WILLIAMS<br><br>        *Defendants*<br><br>SCHNADER HARRISON SEGAL & LEWIS LLP RETIREMENT AND SAVINGS PLAN<br><br>    Nominal Defendant | Case No. 2:24-cv-00592-JMY |

## <u>SETTLEMENT AGREEMENT</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

RECITALS ......................................................................................................... 1

I.     DEFINITIONS............................................................................................. 3

II.    CLASS CERTIFICATION ........................................................................... 8

III.   CLASS NOTICE ........................................................................................ 9

IV.    QUALIFIED SETTLEMENT FUND........................................................... 11

V.     DISTRIBUTIONS FROM THE QUALIFIED SETTLEMENT FUND ......... 12

VI.    SPECIAL SUBTRUST OF THE PLAN...................................................... 17

VII.   PLAN OF ALLOCATION .......................................................................... 19

VIII.  SETTLEMENT ADMINISTRATION ........................................................ 20

IX.    ATTORNEYS' FEES, EXPENSES/COSTS & SERVICE AWARD ............ 23

X.     COURT APPROVAL & FINDINGS .......................................................... 25

XI.    INDEPENDENT FIDUCIARY .................................................................. 29

XII.   ISSUANCE OF NOTICE UNDER THE CLASS ACTION FAIRNESS ACT .............. 30

XIII.  CONDITIONS OF SETTLEMENT ........................................................... 31

XIV.   EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION .................... 33

XV.    RELEASES................................................................................................ 34

XVI.   RESTRICTION ON CERTAIN PUBLIC STATEMENTS ABOUT THE
       LAWSUIT & SETTLEMENT.................................................................... 35

XVII.  NO ADMISSION OF WRONGDOING OR INFIRMITY OF CLAIMS ........ 37

XVIII. MISCELLANEOUS PROVISIONS............................................................ 38

## INTRODUCTION

Subject to approval by the United States District Court for the Eastern District of Pennsylvania, this Class Action Settlement Agreement is made and entered into by and among Plaintiff, individually and on behalf of the Class, and Defendants to settle claims against Defendants, subject to the terms and conditions below. All capitalized terms shall have the meaning ascribed them by Section I of this Agreement.

## RECITALS

A.      Plaintiff Jo Bennett filed the original Complaint on February 7, 2024, docketed as Case No. 24-00592 in the United States District Court for the Eastern District of Pennsylvania, asserting claims on behalf of herself and a class of employee-participants of the Schnader Harrison Segal & Lewis LLP Retirement and Savings Plan and their beneficiaries for alleged violations of ERISA.

B.      On April 9, 2024, the Parties exchanged their Rule 26(a) Initial Disclosures.

C.      Defendants filed their Motion to Dismiss on May 14, 2024.

D.      The Court denied the Motion to Dismiss on July 23, 2024.

E.      Defendants answered the Complaint on August 27, 2024 and also asserted various affirmative defenses.

F.      On August 22, 2024, Plaintiff issued her First Request for Production of Documents.

G.      Prior to engaging in settlement discussions and reaching a settlement, Plaintiff's Counsel requested and Defendants produced certain discovery including (i) information about each participant's employment, dates of participation in the Plan, contributions, distributions and account balances from January 1, 2018 through the Plan's termination in 2023, (ii) the written

instrument governing the Plan and other documents required to be disclosed pursuant to ERISA

§ 104(b)(4), and other documents about the Plan and policies regarding contributions to the Plan,

and (iii) copies of relevant insurance policies.

   H.  After receiving the discovery, Plaintiff and Plaintiff's counsel and Defendants'

counsel and certain Defendants engaged in a mediation with John Utz who is an experienced

ERISA attorney who has experience mediating ERISA cases, on October 15, 2024. At the end of

the day of mediation, the Parties attending the mediation reached an oral settlement in principle

on the settlement amount and certain other settlement terms, which was contingent upon the

agreement of the other Defendants. Over the course of the next several weeks, counsel for the

Parties engaged in substantial negotiation over the material terms of the Settlement which was

then memorialized in a written term sheet that was fully executed on November 25, 2024.

   I.  Schnader represents that the Schnader Harrison Segal & Lewis LLP Retirement

and Savings Plan has been terminated and all amounts previously in the individual accounts in

the Plan have been distributed as of the date that this Settlement is executed.

   J.  Plaintiff and Plaintiff's counsel have concluded that the terms of this Settlement

are fair, reasonable, adequate and in the best interests of both the proposed Class and the Plan,

and Plaintiff and Defendants have agreed to settle the Action on the terms set forth herein.

   K.  Defendants deny the material allegations asserted in the Action, deny any wrong-

doing or liability whatsoever and state that they are entering into the Settlement to avoid the cost,

disruption, and uncertainty of litigation.

   L.  The Parties desire to promptly and fully resolve and settle with finality all of the

claims on the terms set forth herein and subject to the approval of the Court.

2

## I.  DEFINITIONS

As used in this Agreement, the following terms have the following meanings, unless a section or subsection of this Agreement specifically provides otherwise. Capitalized terms used in this Agreement, but not defined in this Section I, will have the meaning ascribed to them elsewhere in this Agreement.

A.  "Action" means the lawsuit entitled *Jo Bennett, v. Schnader Harrison Segal & Lewis LLP, et al.,* Case No. 24-00592 in the United States District Court for the Eastern District of Pennsylvania.

B.  "CAFA" means the Class Action Fairness Act.

C.  "Cash Settlement Amount" means six hundred seventy-five thousand dollars ($675,000.00) paid by or on behalf of Defendants, other than the Nominal Defendant, the Plan.

D.  "Class" means

Participants in the Schnader Harrison Segal & Lewis LLP Retirement and Savings Plan who were attorneys with the title of Income Partner or Counsel at Schnader Harrison Segal & Lewis at any time between February 7, 2018 to June 30, 2023 and who were assessed a "Non-Elective Retirement Contribution" as described in annual memoranda entitled "[Year] Retirement Contribution Calculation" (and for whom such assessment was not fully repaid or refunded) and the beneficiaries of such participants, except the Excluded Persons."

E.  "Class Counsel" means R. Joseph Barton of The Barton Firm LLP (f/k/a Barton & Downes LLP) and Adam H. Garner of The Garner Firm Ltd.

F.  "Class Member" means an individual who is a member of the Class.

G.  "Class Notice" means a form of notice provided to the Class Members that complies with the requirements of this agreement, Fed. R. Civ. P. Rule 23, and is approved by the Court.

H.  "Class Notice Packet" means the Class Notice and any other forms approved or directed by the Court.

3

I.       "Class Representative" means Plaintiff.

J.       "Complaint" means the operative Complaint in the Action (Dkt. 1).

K.       "Court" means the United States District Court for the Eastern District of Pennsylvania.

L.       "Defendants" means Schnader Harrison Segal & Lewis, LLP, Barry S. Alexander, Samantha J. Banks, Richard A. Barkasy, Roberta Barsotti, Kevin Blanton, Melissa Sue Blanton, Nadine Doolittle, Allison Fihma Drachman, Stephen Dye, Stephen Fogdall, Megan E. Harmon, Theodore Hecht, Anne Kane, Nicholas J. LePore III, Theresa E. Loscalzo, Bruce P. Merenstein, Cynthia A. Murray, Kenneth R. Puhala, Ira Neil Richards, Lisa Joan Rodriguez Jacobs, Roy S. Ross, Carl J. Schaerf, H. Lee Schwartzberg, Stephen J. Shapiro, Edward J. Sholinsky, James D. Shupe, Samuel W. Silver, Jonathan B. Skowron, David Smith, Bruce M. Strikowsky, Matthew S. Tamasco, Keith E. Whitson, Michael J. Wietrzychowski, and Robert J. Williams.

M.       "Defense Counsel" means the undersigned counsel for Defendants.

N.       "Election Distribution Packet" means any necessary forms and information for a Class Member to elect to receive a distribution (including a rollover) from the Settlement.

O.       "Excluded Persons" means the following persons who are excluded from the Class: (a) Defendants; (b) any equity partners of Schnader during the Class Period; (c) any fiduciary of the Plan with discretionary fiduciary authority with respect to the Non-Elective Retirement Contribution during the Class Period; (d) the beneficiaries of any such persons or the immediate family members of any such foregoing excluded persons; and (e) the legal representatives, successors and assigns of any such excluded persons.

P.       "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

Q.      "Escrow Account" means the account established by Class Counsel and the Defendants in the name of Schnader Harrison Settlement Fund into which the Cash Settlement Amount has been paid.

R.      "EIN" means Employer Identification Number, a unique nine-digit number assigned by the Internal Revenue Service.

S.      "Expense Award" will have the meaning set forth in Section IX.1 of this Agreement.

T.      "Fee Award" will have the meaning set forth in Section IX.1 of this Agreement.

U.      "Final Approval Hearing" means the hearing at which the Court will determine, among other things, whether the Settlement Agreement and the Plan of Allocation should be finally approved as fair, reasonable, and adequate, and whether an Order finally approving the Settlement Agreement should be entered;

V.      "Final Approval Motion" means the motion to be filed by Class Counsel requesting that the Court grant final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e).

W.      "Final Order" means the Order and Final Judgment, substantially in the form of an Order described in Section XI.2 below.

X.      "Independent Fiduciary" means the person(s) or entity hired by Defendants pursuant to Section XIV.

Y.       "Net Qualified Settlement Fund" has the meaning ascribed to it in Section V.4.

Z.      "Non-Appealable" means an order entered by the Court that is no longer subject to appeal, which will occur when: (i) if no appeal is taken therefrom, one day after the date on which the time to appeal therefrom (including any extension of time) has expired; or (ii) if any appeal is taken therefrom, one day after the date on which all appeals therefrom, including any

petitions for rehearing or re-argument, petitions for rehearing *en banc*, and petitions for writ of *certiorari* or any other writ, or any other form or review, have been finally disposed of, such that the time to appeal therefrom (including any extension of time) has expired, in a manner resulting in an affirmance of the Final Order.

AA.    "Parties" or "Settling Parties" means collectively Plaintiff, individually and on behalf of the Class, and all Defendants collectively.

BB.    "Party" refers to any of the Parties.

CC.    "Plan" means the Schnader Harrison Segal & Lewis LLP Retirement and Savings Plan.

DD.    "Plan of Allocation" means the plan for distribution of the proceeds of the Net Qualified Settlement Fund to be approved by the Court.

EE.    "Preliminary Approval Order" means the "Order Preliminarily Approving Settlement, Approving Form of Notice, and Setting Final Approval Hearing" in this Action, substantially in the form described in Section XI.1.

FF.    "Plaintiff" means Jo Bennett.

GG.    "Plaintiff's Counsel" means The Barton Firm LLP and The Garner Firm, Ltd.

HH.    "Plan Administrator" means the administrator of the Schnader Harrison Segal & Lewis LLP Retirement and Savings Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

II.    "Qualified Settlement Fund" means the Cash Settlement Amount plus any earnings and interest minus any Court-approved deductions and expenses, which is intended by the Settling Parties to be a "qualified settlement fund" for federal income tax purposes under IRC 468B and Treas. Reg. § 1.468B-1 at the earliest date possible and to ensure that the settlement

payments to the Class Members will be treated for income tax purposes as distributions to Class

Members from a tax-qualified retirement plan and trust. As used in this Agreement, the provi-

sions regarding a Qualified Settlement Fund will apply even if the Escrow Account is not a Qual-

ified Settlement Fund or before the Escrow Account becomes a Qualified Settlement Fund.

      JJ.    "Retirement Vehicle" means another tax-deferred retirement vehicle other than

the Plan into which Class Members may elect to have their respective proceeds of the Qualified

Settlement Fund paid that will preserve the tax benefits similar to those associated with ERISA-

covered and IRS-qualified plans.

      KK.    "Schnader" means Schnader Harrison Segal & Lewis LLP.

      LL.    "Service Award" means the award to be paid to the Class Representative out of

the Qualified Settlement Fund in an amount authorized by the Court.

      MM.    "Settled Claims" means the Settled Class Claims as well as other claims released

pursuant to this Settlement provided in Section XIV.

      NN.    "Settled Class Claims" means the claims that the Class will release pursuant to

this Settlement as provided in Section XIV.1.

      OO.    "Settlement" means the settlement and compromise of this Action as provided for

in this Settlement Agreement.

      PP.    "Settlement Administrator" means any person appointed by the Court, who is to

be responsible for, among other things, providing the Class Notice Packet to Class Members

and/or assisting with the administration of the Settlement.

      QQ.    "Settlement Agreement" means this Class Action Settlement Agreement and any

accompanying Exhibits, including any subsequent amendments thereto and any Exhibits to such

amendments.

RR.    "Special Fiduciary" means the person appointed by the Court to manage the Special SubTrust of the Plan.

SS.    "Special SubTrust" means the bank account into which proceeds from the Net Qualified Settlement Fund will be transferred after the Final Order is Non-Appealable for those Class Members who elect to direct settlement proceeds to a tax-qualified retirement vehicle and from which payments to those Class Members will be made. The Special SubTrust shall be treated for income tax purposes as a sub-trust of the Plan for the purpose of ensuring that settlement payments to Class Members will be treated for income tax purposes as distributions from a tax-qualified retirement plan and trust.

TT.    "Tax" or "Taxes" means any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority, including income tax and other taxes and charges on or regarding franchises, windfall or other profits, gross receipts, property, sales, use, capital stock, payroll, employment, social security, workers' compensation, unemployment compensation, or net worth; taxes or other charges in the nature of excise, withholding, *ad valorem*, stamp, transfer, value added or gains taxes; license, registration, and documentation fees; and customs' duties, tariffs, and similar charges.

UU.    "Termination Notice" will have the meaning set forth in Section XVII.2 of this Settlement Agreement.

## II.    CLASS CERTIFICATION

1.    **Motion**. Plaintiff will seek to certify Counts I-VII on behalf of the Class pursuant to Rule 23(b)(1) and/or (2).

2.      **Parties' Cooperation**. The Parties will cooperate and each use their best reasonable efforts to obtain certification of a mandatory settlement class under Rule 23(b)(1) and/or Rule 23(b)(2).

3.      **Non-Opposition**. Defendants will not object to or oppose certification of the Class at the Court or on any appeal concerning the approval of this Settlement so long as Plaintiff does not seek to allow members of the Class to opt-out of the Settlement.

## III.    CLASS NOTICE

1.      **Provision of Class Notice.** By the date specified in the Court's Preliminary Approval Order, the Settlement Administrator under the supervision of Class Counsel will provide the Class Notice to the Class Members.

2.      **Contents**. The Class Notice, in a form approved by the Court will contain: a brief description of the claims advanced by the Class; a summary of the terms of the Settlement Agreement; information on the attorneys' fees and costs sought by Class Counsel; a description of the proposed Plan of Allocation; and information about the Final Approval Hearing. Additionally, as part of the Class Notice or as an accompanying enclosure, the estimated settlement allocation for that Class Member (under the proposed Plan of Allocation) will also be provided.

3.      **Method of Providing Class Notice.** Class Notice will be provided to each individual Class Member: (a) by mailing via first class U.S. Mail or to the extent that email is known and available, by email, and (b) by posting the Class Notice (and certain other documents filed in the litigation) on a dedicated website. Defendants will cooperate with Class Counsel to facilitate providing Class Notice and other settlement-related communications by providing email and mailing addresses for all Class Members, to the extent such information is reasonably available in the records of Defendants.

4.    **Additional Information Provided with the Class Notice.** Along with the Class Notice, the Settlement Administrator, under the direction of Class Counsel, will provide each Class Member entitled to payment from the Settlement with any necessary information about how to request a distribution of that Class Member's settlement proceeds. Any Class Member will be entitled to request and receive the necessary forms to elect a distribution of his or her share of the Settlement.

5.    **Settlement Administrator.** A Settlement Administrator shall be appointed by the Court pursuant to Section VII.1 of this Agreement. The Parties and their counsel will reasonably cooperate with the Settlement Administrator to facilitate providing Notice and other settlement-related communications and administration.

6.    **Undeliverable Notices.** In the event that a Class Notice is sent by email and returned as undeliverable, the Notice will be sent by U.S. Mail. In the event that a Class Notice sent by U.S. Mail is returned as undeliverable, the Settlement Administrator will make reasonable efforts to obtain a valid mailing address and promptly resend the Class Notice to the Class Member by U.S. Mail.

7.    **Class Data.** Within thirty (30) days after this Settlement Agreement is fully-executed, Defendants' Counsel will, to the extent not already disclosed, provide Class Counsel with the following contact information in electronic form for each Class Member, to the extent such information is reasonably available in Defendants' files: (1) name; (2) a street mailing address; (3) telephone number(s); (4) e-mail address(es); (5) Social Security number; (6) sufficient information identifying the beneficiary Class Members (including any persons who have a QDRO) for each participant Class Member, including any reasonably available information set

forth in (1)-(5) with respect to that beneficiary Class Member. Defendants will provide other information reasonably requested by Class Counsel or the Settlement Administrator. To the extent that there is a dispute about any such request or information, any dispute may be resolved by the Court after Class Counsel and Defense Counsel have conferred.

8.      **Information About Excluded Persons**: Within thirty (30) days after this Settlement Agreement is fully-executed, Defendants will, to the extent not already disclosed, provide Class Counsel with the names and information sufficient to identify the following persons in the spreadsheets previously provided in the Class Account Data: (a) persons who were equity partners of Schnader at any time during the Class Period other than Defendants; (b) any fiduciary of the Plan with discretionary fiduciary authority with respect to the Non-Elective Retirement Contribution at any time during the Class Period other than Defendants; (c) the beneficiaries of any Defendants or the immediate family members of any Defendants or other Excluded Persons.

9.      **Class Notice Expenses.** The expenses of Class Notice, including those of the Settlement Administrator, will be paid from the Qualified Settlement Fund.

10.      **Declaration Regarding Class Notice**. Within 30 days after the date on which Notice is required to be sent, the Settlement Administrator will file a declaration with the Court confirming that the Notice and related information was sent in accordance with the Preliminary Approval Order.

## IV.     QUALIFIED SETTLEMENT FUND

1.      **Payment of Cash Settlement Amount**. Defendants have paid the Cash Settlement Amount of $675,000.00 into the Escrow Account. The Cash Settlement Amount of $675,000, plus any earnings on the Cash Settlement Amount constitutes the Qualified Settlement Fund.

    2.    **Qualified Settlement Fund.** The Settlement Fund is intended to be a "qualified settlement fund" for federal income tax purposes under IRC 468B and Treas. Reg. § 1.468B-1 at the earliest date possible to ensure that the settlement payments to the Class Members will qualify for the tax benefits associated with ERISA-covered and IRC-qualified plans to the maximum extent possible. The Qualified Settlement Fund held in the Escrow Account will have its own EIN.

    3.    **Custody of Qualified Settlement Fund.** The Qualified Settlement Fund held in the Escrow Account will be deemed to be in the custody of the Court and will remain subject to the jurisdiction of the Court and will be administered in accordance with the terms of this Settlement Agreement and the Orders of the Court. Except as provided herein, the Qualified Settlement Fund proceeds in the Escrow Account will not be paid to the Class Members pursuant to the Plan of Allocation until the Final Order becomes Non-Appealable.

    4.    **Management of the Qualified Settlement Fund.** Until the Final Order becomes Non-Appealable or until the Settlement is terminated in accordance with this Agreement, the Qualified Settlement Fund will be held in the Escrow Account, for which an Escrow Agent will act pursuant to the terms of the Escrow Agreement or as ordered by the Court. After the Final Order becomes Non-Appealable, Class Counsel will have the sole right and duty to manage the Qualified Settlement Fund in compliance with the terms of the Final Order.

## V.    DISTRIBUTIONS FROM THE QUALIFIED SETTLEMENT FUND

    1.    **Expenses Before the Effective Date.** Until the Final Order becomes Non-Appealable or the Settlement is terminated in accordance with this Agreement, Class Counsel will be authorized to pay from the Qualified Settlement Fund in the Escrow Account upon notice to Defense Counsel (a) any actual or estimated taxes on any income earned on the Qualified Settlement Fund, (b) all costs and expenses related to the preparation of such tax filings or payments

12

or escrow fees and (c) up to $25,000 to pay for the costs of settlement administration, including the costs of providing Class Notice to the Class Members and the costs of the Settlement Administrator and charges by the Special Fiduciary. Any dispute regarding the reasonableness of any expense incurred, paid, or owing may be adjudicated by the Court, but in no event will such a dispute require Class Counsel to cause or allow the Qualified Settlement Fund to fail to file a tax return or make a tax payment in a timely manner.

2.  **Attorneys' Fees, Expenses/Costs & Service Award.** Pursuant to any deadline set by the Court, Class Counsel may file any motion with the Court requesting the payment of attorneys' fees, reimbursement of litigation expenses, settlement expenses (including the costs of the Special Fiduciary and Settlement Administrator) and any Service Award to be paid out of the Qualified Settlement Fund held in the Escrow Account. Any amounts so awarded by the Court will be deducted from the Qualified Settlement Fund held in the Escrow Account before transfer to the Special SubTrust and distribution to the Class.

3.  **Tax Reserve After the Effective Date**: Upon the Final Order becoming Non-Appealable, Class Counsel will be authorized to establish a reserve out of the Qualified Settlement Fund held in the Escrow Account to pay any Taxes that are or will be owed (but not yet due) and for expenses related to payment of Taxes or filing of tax returns or administration of the Settlement.

4.  **Calculation of the Net Qualified Settlement Fund.** The "Net Qualified Settlement Fund" will be calculated by deducting the following amounts from the Qualified Settlement Fund held in the Escrow Account: (a) any Taxes owed on the income or earnings by the Qualified Settlement Fund, any tax-related expenses, and the creation of any reserve for future expenses (as described above); (b) any expenses incurred in connection with the administration of

the Settlement or the Qualified Settlement Fund; (c) any amounts owed to the Special Fiduciary; and (d) any Fee Award and/or Expense Award to Class Counsel and any Service Award to be paid from the Qualified Settlement Fund.

5.    **Election Distribution Packet**.  Within 30 days after this Agreement is fully-executed, Schnader will provide Class Counsel with the form of the Election Distribution Packet used by the Plan in both a final and if available a modifiable format (e.g. Word). Class Counsel will then provide the Settlement Administrator with an Election Distribution Packet to be sent to each Class Member along with the or in addition to the Class Notice. A copy of the Election Distribution Packet will also be posted on the settlement website. The Election Distribution Packet will permit Class Members to elect to receive (a) a rollover distribution from the Special SubTrust to a tax qualified retirement vehicle either by wire transfer or automated clearing house (ACH), (with the Class Member incurring the wire transfer fee), unless an electronic transfer is not reasonably feasible (e.g. the Class Member does not have a tax qualified account that can receive wire or ACH transfer), then by check; or (b) by check from the Settlement Fund. The Election Distribution Packet will require Class Members to state whether the account to which the settlement payment is being transferred is a tax qualified retirement account.

6.    **Methods of Distributing the Net Qualified Settlement Fund to the Class**.

(a)    **Class Members Who Submit An Election Distribution Form.** For any Class Members who, within the later of 90 days after the Election Distribution Packet is sent to Class Members or 90 days after the Final Order becomes Non-Appealable (or as the Court otherwise permits), submits a completed Election Distribution form electing to transfer their settlement payment to a tax qualified retirement account, their

14

proceeds of the Net Qualified Settlement Fund will be transferred to the Special SubTrust for distribution from the Special SubTrust.

(b)    **Class Members Who Do Not Submit an Election Distribution Form.**  For Class Members who do not submit an Election Distribution Form to the Settlement Administrator within the time required by Section V.6(a) or who do not elect a distribution to a tax qualified retirement account, the Settlement Administrator will issue checks with a 180 day expiration date directly from the Qualified Settlement Fund to those Class Members at their last known address. In the event that those Class Members do not endorse the checks within the 180 days, those Class Members will forfeit their allocations unless they promptly request a reissue of the check.  Any cost to reissue the check will be deducted from the allocation to that Class Member. The voidance of checks shall have no effect on the Class Members' release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect

7.    **Distribution of any Remainder in the Qualified Settlement Fund**. After deducting the payment of any Fee Award, any Expense Award, the Service Award, the transfer of the Net Qualified Settlement Fund to the Special SubTrust, the payment of any other authorized expenses or taxes,  and making the distribution of the Qualified Settlement Fund to Class Members who can be located and cash their checks within 180 calendar days following issuance, any remaining amounts (including the amounts forfeited by those Class Members who do not timely cash checks issued from the Qualified Settlement Fund), shall be transmitted to a *cy pres* recipient approved by the Court. Class Counsel intend to propose, and Defendants will take no position on, designating the Pension Rights Center as the *cy pres* recipient.

8. **Tax Forms & Filings for the Qualified Settlement Fund**. The Settlement Administrator will issue to each Class Member receiving distributions directly from the Qualified Settlement Fund a Form 1099 or other tax forms consistent with any determinations by the Court. The Settlement Administrator will make or assist Class Counsel in making any other tax-related filings or forms as necessary for the Qualified Settlement Fund.

9. **Costs and Expenses Related to Settlement Administration and Distribution**. The costs of administration of the Qualified Settlement Fund will be paid from the Qualified Settlement Fund (regardless of whether the Settlement is terminated). Any costs relating to administration of the Settlement and the Qualified Settlement Fund and transfer of the Qualified Settlement Fund to the Special SubTrust, including any expenses to prepare any tax filings related to the Qualified Settlement Fund will be paid from the Qualified Settlement Fund. Any dispute among the Parties about the expenses incurred by Class Counsel or the Settlement Administrator will be presented to the Court for resolution. No fees, expenses, costs, or other charges that Defendants incur or for which Defendants are responsible will be charged to the Qualified Settlement Fund, including the costs of CAFA Notice, or the costs of the Independent Fiduciary.

10. **Restrictions on Administration and Distribution Expenses**. Defendants (including the Plan) will not charge any fees, expenses, costs, or impose other charges on Class Members to receive their proceeds from this Settlement, except that the costs for or incurred by the Special Fiduciary will be paid out of the Qualified Settlement Fund or the SubTrust. Any amounts charged by the Settlement Administrator or the Special Fiduciary will be approved by the Court and paid out of the Qualified Settlement Fund.

11. **Tax Liability**. The Settling Parties will not have any liability or

16

responsibility in connection with any tax withholding, failure to withhold, or payment of any Taxes incurred by or with respect to the Qualified Settlement Fund, and any such Taxes will be paid out of the Qualified Settlement Fund.

## VI.    SPECIAL SUBTRUST OF THE PLAN

        1.    **Establishment of, Filings Related to & Termination of the Special SubTrust**.  Defendant Schnader will be responsible for establishing a Special SubTrust of the Plan within twenty-one (21) days after the entry of the Preliminary Approval Order, preparing and submitting any Form 5500 Series or similar filings associated with establishing the Special SubTrust, and terminating the Special SubTrust following distribution of its assets. The sole pur-pose of the Special SubTrust will be to distribute the Net Qualified Settlement Fund to Class Members. The SubTrust will be established at a federally-insured financial institution that has branches in Philadelphia and in a location convenient to the Special Fiduciary. The SubTrust of the Plan will have the same EIN as the Plan and use that EIN for all purposes. The Special Sub-Trust is intended to operate as a sub-trust of the Plan to ensure that the settlement payments to the Class Members will be treated for income tax purposes as distributions to Class Members from a tax-qualified retirement plan and trust. Distributions to Class Members paid from the Spe-cial SubTrust will be reported on Form 1099-R and eligible for tax-free rollover treatment.

        2.    **Information to Establish & Administer the Special SubTrust.**  Within twenty-one (21) days after the Court enters the Preliminary Approval Order, Schnader will pro-vide the Special Fiduciary with the EIN of the Plan and any other information requested by the Special Fiduciary that is necessary to allow the Special Fiduciary to manage the Special Sub-Trust of the Plan. The Special Fiduciary will, upon Defendants' request, provide Defendants with information necessary to establish the Special SubTrust and prepare Form 5500 Series filings. To the extent that there is any dispute about requested information, such disputes will be presented

17

to the Court to resolve.

        3.    **Special Fiduciary of the Special SubTrust**. Class Counsel will recommend that the Court appoint a Special Fiduciary and the Court will appoint a Special Fiduciary of the SubTrust to administer and manage the Special SubTrust and oversee the distribution of the Net Qualified Settlement Fund to the Class Members pursuant to the Plan of Allocation. The Special Fiduciary will have no discretion with respect to the amounts to be allocated to Class Members but will simply follow the allocation instructions provided by Class Counsel or the Settlement Administrator so long as they are consistent with the Plan of Allocation and any Orders of the Court. The Special Fiduciary will be approved and appointed by the Court to administer the Settlement and will report to Class Counsel and the Court. The Special Fiduciary will have experience as a fiduciary of ERISA-covered Plans.

        4.    **Investment of the Assets of the Special SubTrust**. The SubTrust will maintain 100% of its assets in a federally-insured financial institution and in accounts that are insured by the FDIC and designed for capital preservation until the amounts are distributed to Class Members.

        5.    **Distributions from the Special SubTrust to the Class.** After the proceeds of the Net Qualified Settlement Fund which are attributable to those Class Members who submitted an appropriate Election Form have been transferred to the Special SubTrust, the Special Fiduciary will make a distribution to those Class Members (who are entitled to receive a distribution from the Settlement under the Plan of Allocation) as directed by the election form within the later of: (i) 30 days of receiving the distribution or rollover instructions from the Class Member, or (ii) 30 days after receiving the transfer of the Net Settlement Proceeds to the Special SubTrust or (iii) 30 days after the Special Fiduciary has received a direction from Class

Counsel or the Settlement Administrator regarding the allocation of any portion of the proceeds of the Net Qualified Settlement Fund to each such Class Member. Distributions to Class Members from the SubTrust will be made by ACH or wire transfer, unless the Class Member represents that they do not have a tax qualified account that can receive wire or ACH transfers in which case the payment will be made by check.

6.    **Tax Forms & Filings for Distributions from the Special SubTrust**. The Special Fiduciary will cause to be issued to each Class Member receiving distributions from the Special SubTrust, a 1099-R with the EIN of the Plan. Any tax-related filings or forms that are necessary will use the EIN of the Plan.

7.    **No Liability for Special SubTrust**. Neither the Settling Parties nor their counsel will have any liability or responsibility in connection with any tax withholding, failure to withhold, or payment of any expenses or taxes (if any) incurred by or with respect to the Special SubTrust, and any such costs or taxes will be paid out of the Qualified Settlement Fund or the Special SubTrust.

8.    **Defendants' Obligations with Respect to the Special SubTrust.** Neither Defendants nor their counsel shall have any responsibilities with respect to the Special SubTrust other than those mentioned in Sections VI.1 and VI.2.

## VII.   PLAN OF ALLOCATION

1.    **Proposed Plan of Allocation**. Class Counsel will propose and submit, a Plan of Allocation to the Court as to the recommended method of determining and distributing the proceeds of the Qualified Settlement Fund (net of attorneys' fees and expenses) to members of the Class.

2.    **Defendants' Limited Involvement.** Defendants shall have no responsibility for preparing the Plan of Allocation. Class Counsel has provided Defense Counsel with a

draft of Class Counsel's proposed Plan of Allocation before Defendants executed this Agreement. Any disputes about the Plan of Allocation will be resolved by the Court.

        3.      **Excluded Persons Prohibited from Receiving Proceeds from the Settlement.** None of the Excluded Persons will either directly or indirectly receive any of the proceeds from this Settlement. Defendants acknowledge that neither they nor any of their beneficiaries under the Plan will receive any allocation of any amount from this Settlement. Any Defendants who were participants or beneficiaries in the Plan agree that they shall not seek any amount from this Settlement.

        4.      **No Claim Based on Distribution in Accordance with the Plan of Allocation.** The Class Members will not have any claim against, and will hold harmless, Plaintiff, the Plan, Defendants, counsel to any of the foregoing (including Class Counsel), the Settlement Administrator, and the Special Fiduciary or other individuals involved in the distribution under the Plan of Allocation, from any claim related to distributions from the Qualified Settlement Fund or the Special SubTrust made substantially in accordance with this Settlement Agreement, the Plan of Allocation, or as otherwise may be authorized by the Court.

## VIII.   SETTLEMENT ADMINISTRATION

        1.      **Appointment of Settlement Administrator.** Class Counsel will propose a Settlement Administrator to administer this Settlement and any such Settlement Administrator will be approved and appointed by the Court to administer the Settlement and will report to Class Counsel and the Court. The Settlement Administrator will have experience providing notice to Class Members and administering settlements in employment or employee benefit class action settlements, and qualified settlement funds. The Settlement Administrator shall not be any business with or in which any Party or their counsel (or the firm of such counsel) has any personal relationship or financial interest.

2.    **Settlement Administrator's Responsibilities.** The Settlement Adminis-

trator will undertake the following tasks to administer this Settlement consistent with the terms

of this Settlement, the Plan of Allocation, and the Orders of the Court and such other procedures

required by the Court or as directed by Class Counsel:

a)    Print and mail the Class Notice Packet and Election Distribution

Packet to the Class Members in accordance with this Settlement Agreement and

any order of the Court and undertake to trace and re-mail all undeliverable mail or

take other reasonable steps to locate missing Class Members;

b)    Provide any information on any new addresses to Class Counsel;

c)    Provide Class Counsel and Defense Counsel with copies of any ob-

jections to the Settlement (to the extent such objections are not filed with the

Court);

d)    Provide Class Counsel and Defense Counsel with any questions by

Class Members regarding the data on the individualized addendum enclosed with

the Class Notice or the amounts that Class Members are entitled to under the Plan

of Allocation;

e)    Respond to questions from Class Members or refer Class Members

to Class Counsel for responses, including questions regarding data on the individ-

ualized addendum enclosed with the Class Notice or the amounts that Class Mem-

bers are entitled to under the Plan of Allocation;

f)    Maintain and staff a toll-free phone number and a web site until at

least six (6) months after distributions of the Net Qualified Settlement Fund or

from the Special SubTrust have been made to Class Members;

21

g)       File with the Court a declaration confirming compliance with the

procedures approved by the Court for providing notice to the Class;

h)       Receive Election Distribution Forms and provide them to Class

Counsel and the Special Fiduciary;

i)       Assist the Special Fiduciary with any administrative tasks related

to the Special SubTrust;

j)       Instruct the Special Fiduciary as to how the Net Qualified Settle-

ment Fund will be allocated among the Class and distributed to individual Class

Members from the Special SubTrust, and issue payments from the Qualified Set-

tlement Fund to Class Members who do not elect a rollover distribution from the

Special SubTrust;

k)       Monitor the Qualified Settlement Fund and file all informational

and other tax returns necessary or advisable with respect to the Qualified Settle-

ment Fund (including without limitations the returns described in Treas. Reg. Sec-

tion 1.468B-2(k));

l)       Any other responsibilities set forth in this Agreement and any other

responsibilities agreed to by the Settling Parties related to administration of the

Settlement and consistent with the orders of the Court or any other responsibilities

ordered by the Court.

3.       **Special Fiduciary.** The Special Fiduciary will be responsible for manag-

ing the Special SubTrust, including, consistent with the Plan of Allocation and the directions

from the Settlement Administrator or Class Counsel, distributing the settlement payments to the

Class Members. The Special Fiduciary will comply with the instructions of the Settlement Administrator or Class Counsel regarding the amounts to allocate to Class Members so long as those instructions are consistent with the Plan of Allocation approved by the Court and other orders of the Court. Defendants will not take any actions that interfere with the Special Fiduciary unless the Special Fiduciary's actions contradict an express term in this Agreement or a Court order.  Any disputes regarding the Special Fiduciary's actions will be presented to the Court for resolution.

4.    **Tax Deferred Benefits of the Plan**. Distributions paid to Class Members through the Special SubTrust are intended to be treated for income tax purposes as distributions to Class Members from the Plan (i.e. a tax-qualified retirement plan and trust) to the maximum extent possible, reported on Form 1099-R using the Plan's EIN, and eligible for tax-free rollover treatment. A condition of this Settlement is that the distributions of the proceeds of the Net Settlement Fund paid to Class Members preserve to the maximum extent possible, the tax benefits associated with ERISA-covered and IRC-qualified pension plans.

5.    **Tax Treatment of the Plan & Distributions.** The Parties will use their best efforts to ensure that the Settlement will not adversely affect the tax-qualified status of the Plan and that the distributions from the Special SubTrust qualify for treatment for income tax purposes as distributions to Class Members from a tax-qualified retirement plan and trust, including eligibility for tax-free rollover treatment and reporting on Form 1099-R.

IX.    **ATTORNEYS' FEES, EXPENSES/COSTS & SERVICE AWARD**

1.    **Attorneys' Fees, Expenses & Service Award from the Qualified Settlement Fund.** Prior to the deadline for Class Members to object to the Settlement and by a date to be set by the Court, Class Counsel will be entitled to file any motion with the Court requesting

approval of the following to be paid from the Qualified Settlement Fund: (a) an award of attorneys' fees (the "Fee Award"); (b) reimbursement of litigation costs and expenses (the "Expense Award"); (c) payment of any settlement administration expenses; and (d) an award to the Class Representative ("Service Award"). Any Fee Award, Expense Award, Service Award and settlement administration expenses will be paid solely from the Qualified Settlement Fund and is subject to the Court's approval at the Final Approval Hearing.

2. **Defendants' Non-Opposition.** Defendants and their counsel will take no position regarding the application for or an award of the Fee Award, the Expense Award or the Service Award. Defendants will take no position on the payment of any settlement administration expenses so long as they do not require payment of more than $25,000 before the Final Order is Non-Appealable.

3. **Payment of Fees/Expenses to Class Counsel.** All amounts to be paid pursuant to this Section will be paid into an account designated by Class Counsel to be distributed and allocated among any Plaintiff's Counsel as directed by Class Counsel. Neither Defendants nor their insurers will have any input as to the division of such fees and expenses among Class Counsel.

4. **Timing of Payment of the Fee Award Expense Award.** In the event that the Court grants any Fee Award or Expense Award, disbursement of any Fee Award or Expense Award from the Qualified Settlement Fund may be made upon the Final Order becoming Non-Appealable. In the event that there is no appeal of the Final Approval of the Settlement, but an appeal solely of a Fee Award or an Expense Award, Class Counsel will be entitled to a disbursement from the Qualified Settlement Fund of such amount of attorneys' fees and/or such amount

of expenses/costs as to which there is no appeal or the amount of which is not contested on appeal.

      5.      **Non-Materiality of Fee Award, Expense Award and Service Award.** In the event that this Court refuses to award attorneys' fees, allow reimbursement of expenses/costs, or a Service Award in whole or in part, or any such award is rejected or modified on appeal, such rejection or modification will not constitute a material modification of this Settlement Agreement, will not void this Settlement Agreement, and will not provide a basis for any Party to withdraw from this Settlement Agreement.

      6.      **Defendants' Attorneys' Fees & Expenses**. Defendants will bear their own attorneys' fees, expenses, and costs. No amount of the attorneys' fees, expenses, or costs of this Litigation incurred by Defendants or the administration of this Settlement incurred by any of the Defendants (or the Plan or any its service providers) will be paid by, or charged to, any amounts paid in this Settlement or, directly or indirectly, to any Class Member.

## X.      COURT APPROVAL & FINDINGS

      1.      **Preliminary Approval Order.** Class Counsel, on behalf of the Class, will move the Court to enter the Preliminary Approval Order ("Preliminary Approval Motion"). The Preliminary Approval Motion will seek an Order in a form agreed upon by the Settling Parties which will propose among other things:

      (a)      Preliminary Approval of the Settlement as set forth in this Settlement Agreement, subject to further hearing and determination under Fed. R. Civ. P. 23(e);

      (b)      Approval of the form of Class Notice, substantially in the form agreed-upon by the Parties, and the manner of distribution and publication which

is consistent with this Agreement, Fed. R. Civ. P. Rule 23, and the requirements of due process;

(c)     Preliminary Approval of the Plan of Allocation;

(d)     Appointment of the Settlement Administrator;

(e)     Appointment of the Special Fiduciary;

(f)     Deadlines by which all objections to the Settlement must be made or any submissions to the Settlement Administrator regarding their Plan account data must be made;

(g)     A schedule for a hearing date for the Court to determine whether the Settlement Agreement should be finally approved as fair, reasonable, and adequate, and whether an Order finally approving the Settlement Agreement should be entered ("Final Approval Hearing");

(h)     Find that (1) the Qualified Settlement Fund meets the requirements of a "qualified settlement fund" for federal income tax purposes under Treas. Reg. § 1.468B-1, (2) payments from the Special SubTrust are "restorative payments" to the Plan within the meaning set forth in IRS Revenue Ruling 2002-45; (3) the Special SubTrust qualifies as a sub-trust of the Plan such that distributions from the SubTrust will be treated for income tax purposes as distributions from a tax-qualified retirement plan and trust, (4) the Special Fiduciary will report distributions from the Special SubTrust on Form 1099-R using the Plan's EIN, (5) distributions from the Special SubTrust are eligible for tax-free rollover treatment; (6) distributions from the Special SubTrust are not subject to the annual limits on

26

contributions under Section 415 of the Internal Revenue Code; and (7) the Sub-Trust will maintain 100% of its assets in a federally-insured financial institution and in accounts that are insured by the FDIC and designed for capital preservation until the amounts are distributed to Class Members.

(i)     That no objection to the Settlement Agreement will be heard and no papers submitted in support of said objection will be received and considered by the Court at the Final Approval Hearing unless the objection and reasons there-fore, along with copies of any supporting papers, are filed with the Clerk of the Court and served on the Parties within the time set by the Court after the publica-tion and/or distribution of the Class Notice;

(j)     A deadline for filing a Final Approval Motion and for Class Coun-sel's application for Fee Award, and Expense Award;

(k)     A deadline for filing any motion or brief in support of any addi-tional findings requested to be made by the Court on Final Approval;

(l)     That the Final Approval Hearing may be continued from time to time by Order of the Court if necessary, and without further notice to the Class;

(m)     Require Defendants to produce the Class Data required pursuant to this Agreement to the extent that such data is reasonably available and within their possession, custody or control.

2.     **Final Approval of the Settlement.** If the Court preliminarily approves this Settlement, and if neither Defendants nor Class Counsel have exercised any right to with-draw pursuant and within the times required by this Agreement, Class Counsel will file a Final Approval Motion, which will seek entry of a proposed Final Order in a form to be agreed-upon

by the Settling Parties and will, among other things request that the Court order and/or find as follows:

        (a)     Order Final Approval of the Settlement of the claims of the Class set forth in this Settlement Agreement;

        (b)     Adjudge that the Settlement is fair, reasonable, and adequate to the Class pursuant to Fed. R. Civ. P. 23(e);

        (c)     Finally Approve the Plan of Allocation;

        (d)     Dismiss the Action against Defendants with prejudice;

        (e)     Adjudge that Plaintiff and the Class have released and waived any and all Settled Class Claims against Defendants as provided in this Settlement Agreement;

        (f)     Adjudge that Defendants have released and waived any and all Settled Claims against Plaintiff and the Class as provided in this Settlement Agreement;

        (g)     Adjudge that the Settling Parties, Defense Counsel, Plaintiff's Counsel, and Class Counsel will not have any liability or responsibility in connection with any tax withholding, failure to withhold, or payment of any expenses or taxes (if any) incurred by or with respect to the Special SubTrust or the Escrow Account.

        (h)     Bar and permanently enjoin the Parties and the Class from prosecuting any and all Settled Claims, as provided in this Settlement Agreement, against any Party from whom they have released claims;

        (i)     Determine Class Counsel's request(s) for Fee Award and Expense Award;

        (j)     Retain exclusive jurisdiction, without affecting the finality of the Order

entered, with regard to: (i) implementation of this Settlement Agreement; (ii) disposition of the Qualified Settlement Fund and distributions from the Escrow Account and Special SubTrust; and (iii) enforcement and administration of this Settlement Agreement, including the release provisions thereof; and

(k)     Find that (1) the Qualified Settlement Fund continues to meet the requirements of a "qualified settlement fund" for federal income tax purposes under Treas. Reg. § 1.468B-1, (2) payments from the Special SubTrust are "restorative payments" to the Plan within the meaning set forth in IRS Revenue Ruling 2002-45; (3) the Special SubTrust continues to qualify as a sub-trust of the Plan such that distributions from the SubTrust will be treated for income tax purposes as distributions from a tax-qualified retirement plan and trust, (4) the Special Fiduciary will report distributions from the Special SubTrust on Form 1099-R using the Plan's EIN, (5) distributions from the Special SubTrust are eligible for tax-free rollover treatment; (6) distributions from the Special SubTrust are not subject to the annual limits on contributions under Section 415 of the Internal Revenue Code; (7) the SubTrust will maintain 100% of its assets in a federally-insured financial institution and in accounts that are insured by the FDIC and designed for capital preservation until the amounts are distributed to Class Members.

(l)     To the extent that Defendants have timely complied with CAFA and provided CAFA Notice consistent with this Agreement, find that notice to the appropriate state and federal officials has been provided as required by CAFA and Defendants have satisfied their obligations pursuant to 28 U.S.C. § 1715.

## XI.    INDEPENDENT FIDUCIARY

1.      **Hiring.** Schnader will hire an Independent Fiduciary (for which the specific person or entity hired will be subject to Class Counsel's approval) to approve the Settlement consistent with Prohibited Transaction Exemption 2003-39. Any expense of an Independent Fiduciary will be paid by Defendants and will not be paid out of the Qualified Settlement Fund. In the event of any dispute about the person or entity, the Court will appoint the Independent Fiduciary.

2.      **Timing of Opinion.** The Independent Fiduciary will issue to Class Counsel and Defendants' counsel its final opinion no later than twenty-one (21) days prior to the deadline for Class Counsel to file the Motion in Support of Final Approval. If the Independent Fiduciary fails to issue its final opinion within the time required by this Paragraph, Defendants will be obligated to hire another Independent Fiduciary consistent with Paragraph 1.

3.      **Effect of Non-Approval**. If at any point, the Independent Fiduciary issues an opinion that does not approve all aspects of this Settlement Agreement as satisfying PTE 2003-39, Defendants or Class Counsel will have the right, but not the obligation, to withdraw from the Settlement Agreement so long as such right is exercised within seven (7) days of receipt of the Independent Fiduciary's opinion.

## XII.   ISSUANCE OF NOTICE UNDER THE CLASS ACTION FAIRNESS ACT

1.      **CAFA Notice.** Pursuant to CAFA, Defendants, at their own expense, will prepare and provide the CAFA Notice as specified by 28 U.S.C. § 1715.

2.      **CAFA Notice Provided to Class Counsel.** Defendants will provide Class Counsel with confirmation that the CAFA Notices were timely served pursuant to 28 U.S.C. § 1715.  Defendants will provide Class Counsel with a copy of the CAFA Notice materials within five (5) business days after they are sent.

## XIII.  CONDITIONS OF SETTLEMENT

1.      **Conditions.**  Each of the following is an express condition of Settlement:
(a) all Defendants agree to and sign this Settlement; (b) the Class Account Data provided to
Class Counsel regarding the Class is materially accurate (including as to the persons who are
members of the Class and the amounts of contributions in dispute as to such participants); (c) the
Court makes the findings requested in Section X.1(h) in connection with or as part of the Prelim-
inary Approval Order; (d) Court makes the findings requested in Section X.2(k) in connection
with or as part of the Final Approval Order; (e) the Independent Fiduciary issues an opinion that
the Settlement is consistent with PTE 2003-39 as described in Section XI.1; (f) the Court certi-
fies at least one of Counts I, II, III, IV, VI or VII as a class action under Rule 23(b)(1) or (b)(2)
on behalf of the Class substantially similar to that defined in this Agreement; (g) the Court enters
a Preliminary Approval Order substantially in the form as contemplated by this Agreement; (h)
the Court enters the Final Order, substantially in the form as required by this Agreement; and (i)
the Final Order becomes Non-Appealable.

2.      **Effect of Court Orders Inconsistent With this Agreement**.  In the event
that the Court does not enter an Order that is consistent with the conditions in Paragraph 1(c),
(d), and (f)-(h) of this Section, Class Counsel and Defendants will each have the right to with-
draw from and void this Settlement so long as the notice of the exercise of such right is provided
to the Court and the opposing Party within 14 days after the date on which the Court enters the
Order.

3.      **Effect of Decisions Regarding the Tax-Status of Settlement Distribu-
tions.** In the event that the Internal Revenue Service takes the position prior to the Final Order
becoming Non-Appealable that (i) the distributions paid to Class Members through the Special
SubTrust cannot be treated for income tax purposes as distributions to Class Members from a

tax-qualified retirement plan and trust or (ii) the distributions from the Special SubTrust cannot

be reported on Form 1099-R with the Plan's EIN number or (iii) the distributions are not eligible

for tax-free rollover treatment to another Retirement Vehicle, Class Counsel or Defendants will

have the right to withdraw from and void this Settlement so long as the notice of the exercise of

such right is provided within 14 days after the date on which Class Counsel or Defendants re-

spectively learns of the triggering event.

4.      **Material Correctness of Defendants' Information About Class Mem-**

**bers ("Class Account Data"):** A condition of this Settlement is that the information and data

about the Class – including the number of Class members, their account balances, investments,

distributions, other account activity and whether they signed releases—provided by Schnader to

Class Counsel in the Fall of 2024 is materially correct. In the event that the Class Account Data

produced by Schnader to Class Counsel in the Fall of 2024 was not materially correct, Class

Counsel will have the unilateral right prior to the Final Approval Hearing to withdraw from and

void this Settlement so long as the notice of the exercise of such right is provided to the opposing

Party within 14 days after the date Class Counsel learns of the material incorrectness of the Class

Account Data. In the event that Class Counsel only learns after the Final Approval Hearing that

the Class Account Data produced by Schnader in the Fall of 2024 was not materially correct, this

Agreement does not affect the rights, remedies, or defenses which the Parties may have under

state or federal law.

5.      **Non-Conditional Matters.** Court approval of the Fee Award, the Expense

Award or the Service Award are not conditions of the Settlement. No action by the Court or any

courts of appeal related to the Fee Award, the Expense Award or the Service Award will prevent

the Final Order approving the Settlement from becoming Non-Appealable; however, to the ex-
tent that there is an appeal of the Fee Award, the Expense Award, or Service Award, the amounts
in dispute will not be distributed to the Special SubTrust or to Class Members until after the res-
olution of the issues on appeal.

## XIV.   EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

1.    **Termination Notice Right to Terminate.** In the event that one of the
Conditions in Section XIII is not met and the Final Order has not become Non-Appealable, Class
Counsel or Defendants, as applicable, may withdraw from this Settlement by providing written
notice to counsel for all other Parties to the Settlement within fourteen days (14) days after the
event prompting the right to terminate ("Termination Notice") and subject to other time limits or
conditions set forth in this Agreement. In the event that the Final Order has not become Non-Ap-
pealable, the Party providing such Termination Notice will be entitled to withdraw based on the
specified condition not being met and may void the Settlement within the time period specified
in Section XVII.2.

2.    **Effectiveness of Termination Notice.** The Termination Notice will be-
come effective to void the Settlement Agreement only if and after the Settling Parties have failed
to reach a written modification of the Settlement Agreement within thirty (30) days of the Termi-
nation Notice to modify this Settlement Agreement to resolve the issue.

3.    **Effect of Withdrawal.** In the event that the Final Order does not become
Non-Appealable or one of the Settling Parties exercises its right to withdraw from the Settlement
Agreement within the time specified above and the Parties have not entered into a written modi-
fication of the Settlement Agreement within thirty (30) days of such occurrence: (a) Class Coun-
sel and Defense Counsel will promptly notify the Escrow Agent in writing that the Settlement
Agreement has been terminated and the Qualified Settlement Fund (including any interest or

earnings accrued while in Escrow, but less any amount paid or owing for taxes, tax filings or es-crow fees and minus up to $25,000 of any other expenses incurred in connection with adminis-tering the Settlement) should be returned to Defendants within five (5) business days of such written request in accordance with the Escrow Agreement; (b) the Settling Parties will not be re-leased from the claims asserted in this Litigation; (c) this Agreement will be void; and (d) the Parties' positions, rights, and responsibilities will be deemed to have reverted to their respective status in this Action as of October 15, 2024 and, except as may otherwise be expressly provided herein, the Settling Parties will proceed in all respects as if this Settlement Agreement never ex-isted.

**XV.    RELEASES**

1.    **As to the Class Claims.** Upon the Final Order becoming Non-Appealable, and provided that each Party has performed their respective obligations under this Settlement Agree-ment to be performed on or prior to such date by such Party:

> a.    **Release of Defendants by the Class.** Plaintiff and the Class Members (in-cluding their beneficiaries, heirs, executors, representatives and assigns), abso-lutely and unconditionally release, covenant not to sue and forever release and discharge Defendants and (as applicable) their past, present, and future attorneys, agents, spouses, children, insurers, beneficiaries, legal representatives, heirs, ex-ecutors, administrators, predecessors-in-interest, successors-in-interest, and legal representatives from all claims alleged in the Complaint (whether those claims seek individual relief or relief for the Plan) and any claim based on the same fac-tual predicate as the Complaint or arising out of the same factual predicate as the claims alleged in the Complaint from February 2018 to the date that this Settle-ment Agreement is signed by or on behalf of Plaintiff.

34

      b.      **Release of Plaintiff and the Class by Defendants.** Defendants individually and to the extent that any of them are fiduciaries of the Plan, as fiduciaries of and on behalf of the Plan absolutely and unconditionally release, covenant not to sue and forever release and discharge Plaintiff, Plaintiff's Counsel (and any of the attorneys or employees of their firms), Class Counsel, and (as applicable) their past, present, and future attorneys, agents, spouses, children, insurers, beneficiaries, legal representatives, heirs, executors, administrators, predecessors-in-interest, successors-in-interest, and legal representatives from all claims that Defendants have or have had against Plaintiff, Plaintiff's Counsel (and any attorneys of those firms), and Class Counsel for bringing the Action, including any claims for attorneys' fees, sanctions, expenses and costs.

      2.      **Non-Released Claims.** Notwithstanding the foregoing or any other language in this Settlement Agreement, the Settling Parties are not releasing Claims to enforce this Settlement Agreement.

## XVI.    RESTRICTION ON CERTAIN PUBLIC STATEMENTS ABOUT THE LAW-SUIT & SETTLEMENT

      1.      **Restriction on Certain Public Statements.** The Parties and their counsel agree to the following as to any public statements regarding the lawsuit and the settlement – other than those made to the Court (e.g. at hearings or in filings) or those approved or mandated by the Court (e.g. the class notice) – such as those made to the press or any website (other than the website maintained to provide notice to the Class described in Section III.2 of this Agreement):

      (a)      The Parties and their counsel agree (1) not to issue a press release regarding the lawsuit or the settlement agreement that has not been approved by

Class Counsel and Defense Counsel; and (2) any other such public state-

ments regarding the lawsuit or settlement will be limited to statements that

are truthful factual statements or opinions supporting the settlement as fair

and adequate.

(b)     The Parties and their counsel may express opinions in such public state-

ments so long as (1) they are supportive of the settlement as fair and ade-

quate; (2) counsel for the opposing party has been provided a reasonable

period of advanced notice of the statement, and (3) either (i) counsel for

the opposing party has consented to the statement (whose approval will

not be unreasonably withheld), or (ii) counsel has failed to object after a

reasonable period of time, or (4) the statement has been approved by the

Court.

2.      **Non-Applicability of this Section.** Nothing in this Section XV will pre-

clude the Parties or their counsel from repeating statements contained in documents filed with

the Court (prefaced by "Plaintiff contends" or "the Complaint alleges" or substantially similar

phrases) or publishing on a website documents previously publicly filed on the Court's docket.

This Section XV shall not limit the ability of Plaintiff or Plaintiff's counsel to communicate di-

rectly with class members regarding the lawsuit or the terms of the settlement, nor shall it limit

Class Counsel's or the Settlement Administrator's ability to maintain a website related to the set-

tlement for purposes of settlement administration. To the extent that any portion of this Section

XV would limit Class Counsel's obligations to the Class (including under Rule 23 or the rules of

professional responsibility) that portion will not apply to Class Counsel.

3.   **Termination of this Section.** This Section XV will become void if the Settlement is not approved by the Court or either Class Counsel or Defendants excise their right to withdraw from the Settlement under Section XIII.1.

## XVII.  NO ADMISSION OF WRONGDOING OR INFIRMITY OF CLAIMS

1.   **No Admission of Wrongdoing** This Settlement Agreement embodies a compromise of disputed claims and nothing in the Settlement Agreement will be interpreted or deemed to constitute any finding of wrongdoing by Defendants or give rise to any inference of liability in this or any other proceeding. This Settlement Agreement will not be offered or received against Defendants or as any admission by any such Party with respect to the truth of any fact alleged by Plaintiff or the validity of any claim that had been or could have been asserted in the Action or in any litigation or of any liability, negligence, fault, or wrongdoing of any such Party.

2.   **No Admission of Infirmity of Claims.** This Settlement Agreement is not, nor may it be deemed to be, nor may it be used as an admission of, or as evidence of any infirmity in the claims asserted by Plaintiff and Class Members.

3.   **No Admission as to Nature of Contributions to the Plan.** Nothing in this Settlement Agreement will be construed to suggest whether the contributions at issue in this Action were employer contributions or employee contributions.

4.   **Use in Proceedings.** This Settlement Agreement may be used in such proceedings as may be necessary to consummate or enforce this Settlement Agreement or the Final Order, and any Party may file this Settlement Agreement and/or the Final Order in any action that may be brought against it to support a claim, a defense, or a counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, or

in any action that may be brought to enforce any claim assigned pursuant to this Settlement

Agreement. Defendants may use and disclose this Settlement Agreement in connection with any

proceeding involving any of their insurers or any governmental agency with respect to the Plan.

**XVIII.**        **MISCELLANEOUS PROVISIONS**

1.        **Confidentiality**. This Settlement Agreement and its terms shall remain

confidential until it is filed with the Court except as follows: (a) the terms and this Agreement

may be disclosed to proposed settlement administrators, the Escrow Agent and similar providers

and Defendants' insurers on the condition that those persons agree to keep the settlement terms

confidential until the Settlement Agreement has been filed with the Court; (b) as otherwise

agreed by the Parties or ordered by the Court.

2.        **Destruction of Documents Designated as Confidential:** In addition to

the archival copies of documents to which outside Counsel for any Party is entitled to retain pur-

suant to Section XIII of the Protective Order, Class Counsel will be entitled to retain following

Final Disposition (as defined in the Protective Order): (a) the documents and data of Plan partici-

pants used to calculate losses and distributions to the Class and (b) data provided to provide

Class Notice. Additionally, the Settlement Administrator may maintain the Class Data used to

provide Class Notice or to calculate distributions to the Class under the Settlement for one year

following Final Disposition (as defined in the Protective Order). Both Class Counsel and the Set-

tlement Administrator will maintain the foregoing information as Confidential subject to the Pro-

tective Order entered by the Court.

3.        **Tax Obligations and Tax Advice.** No opinion or advice concerning the

Tax consequences of the Settlement Agreement has been given or will be given by counsel in-

volved in the Action to the Class, nor is any representation or warranty in this regard made by

virtue of this Settlement Agreement. The Tax obligations of the Class and the determination

38

thereof are the sole responsibility of each Class Member, and it is understood that the Tax conse-
quences may vary depending on the particular circumstances of each Class Member. No charge
or claim may be asserted against any Class Member, Class Counsel, Defendants' Counsel, the
Escrow Account, the Special SubTrust, or the Qualified Settlement Fund for reimbursement of
any Tax, including any penalty or excise tax, imposed or sought to be imposed upon any Defend-
ant in relation to or as a consequence of this Agreement.

       4.     **Binding Effect.** This Settlement Agreement will be binding upon, and in-
ure to the benefit of, the successors, assigns, executors, administrators, affiliates, heirs, spousal
beneficiaries, and legal representatives of the Settling Parties, provided, however, that no assign-
ment by any Settling Party will operate to relieve such Party of its obligations hereunder.

       5.     **Good Faith.** The Settling Parties: (a) acknowledge that it is their intent to
consummate this Settlement; (b) agree to exercise their best efforts and to act in good faith to co-
operate to the extent necessary to effectuate and implement all terms and conditions of this Set-
tlement Agreement; and (c) agree to exercise their best efforts and to act in good faith to cooper-
ate to the extent necessary to obtain the fullest possible participation of all Class Members in any
Settlement. The Settling Parties also agree to promptly execute and/or provide such documenta-
tion as may be reasonably required to obtain preliminary and final approval of this Settlement.

       6.     **Modification.** This Settlement Agreement may be amended or modified
only by written instrument signed by Class Counsel on behalf of Plaintiff and the Class and by
Defense Counsel on behalf of Defendant(s) that they represent or their respective successors in
interest and to the extent that such modifications are made after approval by the Court and such
modification is material, after the Court has approved such modification.

7.     **Representations.** This Settlement Agreement (and the Confidential Supplemental Agreement) constitutes the entire agreement among the Settling Parties, and no representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in such documents.

8.     **Authorization.** Each signatory to this Settlement Agreement represents that he or she is authorized to enter into this Settlement Agreement on behalf of the respective Parties he or she represents. Should any non-signing Party ever contend that they did not authorize their counsel to sign this Settlement Agreement on their behalf, counsel for that Party and their law firms shall defend, indemnify, and hold harmless the other Parties with respect to any and all claims, demands, actions, causes of action, or losses related to such contention.

9.     **Counterparts.** This Settlement Agreement may be executed in one or more original, photocopied, or facsimile counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument.

10.     **Governing Law.** All terms of this Settlement Agreement will be governed by and interpreted according to the laws of the Commonwealth of Pennsylvania without regard to its rules of conflicts of law and in accordance with the laws of the United States, except that ERISA will govern (and preempt Pennsylvania law) to the extent applicable.

11.     **Waiver.** The waiver by one Party of any breach of this Settlement Agreement by any other Party will not be deemed a waiver of any other breach of this Settlement Agreement. The provisions of this Settlement Agreement may not be waived except by a writing signed by the affected Party, or counsel for that Party, or orally on the record in court proceedings.

12. **Continuing Jurisdiction.** The Settling Parties agree to submit to the jurisdiction of the Court and will be bound by the terms of this Settlement Agreement, including, without limitation, disputes related to implementing and enforcing the Settlement embodied in this Settlement Agreement. Any and all disputes related to claims that are not satisfactorily resolved by the Settling Parties will be submitted to the Court for final resolution. The Final Order will provide that the Court will have continuing jurisdiction over this Settlement.

13. **Enforcement of this Agreement.** In the event that any Party to this Agreement believes that another Party to this Agreement has breached the terms of this Agreement, that Party will notify the alleged breaching Party and Counsel in writing setting forth the nature of the breach and the requested method to cure the breach at least 14 days prior to filing any litigation to enforce the terms of the Settlement Agreement (and if the allegedly breaching Party is a Class Member regardless of whether that Class Member has separate counsel, Defendants must also notify Class Counsel in writing). In the event that the allegedly breaching Party fails to cure the alleged breached as set forth in the written notification after 14 days, the other Party may then file an action to enforce the Settlement Agreement. A Party who substantially prevails in any action to enforce the Settlement Agreement will be entitled to attorneys' fees and expenses; however, attorneys' fees and expenses will not be available to a Party that failed to provide the breaching Party written notification to cure the breach as set forth in this Paragraph.

14. **Extensions.** The Settling Parties reserve the right, subject to the Court's approval, to request any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

15. **Final and Complete Resolution.** The Settling Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect

to this Action. The Settlement compromises claims which are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties agree that the Cash Settlement Amount and the other terms of the Settlement Agreement were negotiated in good faith at arm's-length by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

16.    **Duplicative Provisions.** In interpreting this Settlement Agreement, duplicative and/or overlapping release provisions will not be presumed or construed to be intended to release separate claims or have different meanings.

The Parties hereto, intending to be legally bound hereby, have caused this Settlement Agreement to be executed by them or their duly authorized counsel, on the date set forth below.

Agreed by Plaintiff on behalf of the Class          Agreed by:

Dated: August 1, 2025

_____          _____
R. Joseph Barton (admitted *pro hac vice*)          Schnader Harrison Segal & Lewis LLP
The Barton Firm LLP
1633 Connecticut Ave, Suite 200          By: _____
Washington D.C. 20009
Tel: (202) 734-7046          Position: _____
jbarton@thebartonfirm.com
                                                       Dated: _____

Adam Harrison Garner (320476)          _____
Melanie J. Garner (315058)          Schnader Harrison Segal & Lewis LLP
The Garner Firm, Ltd.          Retirement & Savings Plan
1617 John F. Kennedy Blvd., Suite 550
 Philadelphia, PA 19103          By: _____
Tel: (215) 645-5955
Fax: (215) 645-5960          Position: _____
adam@garnerltd.com
melanie@garnerltd.com          Dated: _____


*Attorneys for Plaintiff*          Agreed by:

                                                       _____
                                                       Barry S. Alexander

                                                       Dated: _____

                                                       Agreed by:

                                                       _____
                                                       Samantha J. Banks

                                                       Dated: _____

                                                       Agreed by:

                                                       _____
                                                       Richard A. Barkasy

                                                       Dated: _____

43

Agreed by Plaintiff on behalf of the Class

Agreed by:

Dated: August __, 2025

**Signed by:**

_keith Whitson_

F0AA5D6CA4374FB...

_____

R. Joseph Barton (admitted *pro hac vice*)

Schnader Harrison Segal & Lewis LLP

The Barton Firm LLP

1633 Connecticut Ave, Suite 200

By: _____ Keith Whitson

Washington D.C. 20009

Tel: (202) 734-7046

Position: _____ Liquidating Partner

jbarton@thebartonfirm.com

Dated: _____ 8/4/2025

Adam Harrison Garner (320476)

**Signed by:**

Melanie J. Garner (315058)

_keith Whitson_

_____

F0AA5D6CA4374FB...

The Garner Firm, Ltd.

Schnader Harrison Segal & Lewis LLP

1617 John F. Kennedy Blvd., Suite 550

Retirement & Savings Plan

Philadelphia, PA 19103

Tel: (215) 645-5955

By: _____ Keith Whitson

Fax: (215) 645-5960

adam@garnerltd.com

Position: _____ Liquidating Partner

melanie@garnerltd.com

Dated: _____ 8/4/2025

*Attorneys for Plaintiff*

Agreed by:

**DocuSigned by:**

_Barry Alexander_

_____

5BC44565AA434AD...

Barry S. Alexander

Dated: _____ 8/1/2025

Agreed by:

**Signed by:**

_Samantha Banks_

_____

8C13A44F72A4461...

Samantha J. Banks

Dated: _____ 8/4/2025

Agreed by:

**Signed by:**

_Richard Barkasy_

_____

BBE96ECA44EE42B...

Richard A. Barkasy

Dated: _____ 8/5/2025

Agreed by:

_____    Roberta Barsotti
Roberta Barsotti

Dated: _____    8/4/2025

Agreed by:

_____    Kevin S. Blanton
Kevin Blanton

Dated: _____    8/1/2025

Agreed by:

_____    Melissa Blanton
Melissa Sue Blanton

Dated: _____    8/5/2025

Agreed by:

_____    Nadine Doolittle
Nadine Doolittle

Dated: _____    8/1/2025

Agreed by:

_____
Allison Fihma Drachman

Dated: _____    8/5/2025

Agreed by:

_____    Stephen Dye
Stephen Dye

Dated: _____    8/5/2025

Agreed by:

_____
Stephen Fogdall

Dated: _____8/5/2025_____


Agreed by:

_____
Megan E. Harmon

Dated: _____8/1/2025_____


Agreed by:

_____
Theodore Hecht

Dated: _____8/4/2025_____


Agreed by:

_____
Anne Kane

Dated: _____8/4/2025_____


Agreed by:

_____
Nicholas J. Lepore III

Dated: _____8/1/2025_____


Agreed by:

_____
Theresa E. Loscalzo

Dated: _____8/1/2025_____

Agreed by:

_____
Bruce P. Merenstein

Dated: _____
       8/3/2025

Agreed by:

_____
Cynthia A. Murray

Dated: _____
       8/4/2025

Agreed by:

_____
Kenneth R. Puhala

Dated: _____
       8/1/2025

Agreed by:

_____
Ira Neil Richards

Dated: _____
       8/1/2025

Agreed by:

_____
Lisa John Rodriguez Jacobs

Dated: _____
       8/1/2025

Agreed by:

_____
Roy S. Ross

Dated: _____
       8/1/2025

Agreed by:

_____
Carl J. Schaerf

Dated: _____ 8/1/2025

Agreed by:

_____
H. Lee Schwartzberg

Dated: _____ 8/1/2025

Agreed by:

_____
Stephen J. Shapiro

Dated: _____ 8/1/2025

Agreed by:

_____
Edward J. Sholinsky

Dated: _____ 8/4/2025

Agreed by:

_____
James D. Shupe

Dated: _____ 8/1/2025

Agreed by:

_____
Samuel W. Silver

Dated: _____ 8/1/2025

Agreed by:

_____
Jonathan B. Skowron

Dated: _____ 8/1/2025

Agreed by:

_____
David Smith

Dated: _____ 8/1/2025

Agreed by:

_____
Bruce M. Strikowsky

Dated: _____ 8/1/2025

Agreed by:

_____
Matthew S. Tamasco

Dated: _____ 8/4/2025

Agreed by:

_____
Keith E. Whitson

Dated: _____ 8/1/2025

Agreed by:

_____
Michael J. Wietrzychowski

Dated: _____ 8/4/2025

Agreed by:

Signed by:

*Robert Williams*

19E988F464F2448...

_____

Robert J. Williams

Dated: ____8/4/2025____