## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JO BENNETT,

      Plaintiff,

v.

SCHNADER HARRISON SEGAL & LEWIS LLP, et al.,

      Defendants

Case No. 24-cv-00592-JMY

## <u>MEMORANDUM IN SUPPORT OF</u>
## <u>CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES &</u>
## <u>REIMBURSEMENT OF LITIGATION EXPENSES</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND .............................................................................................. 2

*Class Counsel's Pre-Litigation Investigation* ................................................ 2

*The Litigation & Settlement Negotiations* ................................................... 2

*The Settlement Agreement* .......................................................................... 4

*Amount of Attorneys' Fees & Expenses.* ....................................................... 5

ARGUMENT ................................................................................................... 5

I.    Class Counsel Should Be Awarded Fees Using the Percentage of Fund Method ............. 5

II.   Class Counsel's Request for A Fee of One-Third of the Common Fund Is Reasonable .... 6

    A.    The Size of the Fund & Number of Persons Benefited Favors the Fee Award ...... 7

    B.    The Absence of Objections Supports the Fee Award ........................................... 8

    C.    The Skill & Efficiency of the Attorneys Supports the Fee Award ........................ 8

    D.    The Complexity & Duration of the Litigation Supports the Fee Award ............. 10

    E.    The Risk of Non-Payment Favors the Fee Award ................................................ 11

    F.    The Amount of Time Devoted to the Case Favors the Fee Award ...................... 12

    G.    The Awards in Similar Cases Favors the Fee Award ........................................... 12

    H.    The Settlement Resulted Solely from the Efforts of Class Counsel .................... 13

    I.    The Requested Fee Is Consistent with Percentage in Individual Cases ............... 13

    J.    The Settlement Agreement Contains Innovative Terms ...................................... 14

III.  The Lodestar Cross-Check Confirms the Reasonableness of the Fee Request ............... 16

    A.    Class Counsel's Hourly Rates Are Reasonable ................................................... 18

        1.    Class Counsel's Rates Are Consistent With Rates Charged By Counsel Handling Complex ERISA Cases ............................................. 18

        2.    The Rates Are Reasonable Based on Paying Clients ............................... 22

        3.    Requested Fees are Reasonable Based on Local Hourly Rates in Non-

      ERISA Actions.............................................................................................. 22

    B.    Class Counsel's Hours Are Reasonable................................................. 24

IV.   Class Counsel Are Entitled to Reimbursement of Expenses From the Fund ................... 26

V.    Class Counsel Should Be Authorized to Pay the Settlement Administrator & the Special Fiduciary From the Settlement Fund. .............................................................. 27

CONCLUSION....................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahrendsen v. Prudent Fiduciary Servs., LLC*,
  No. 21-2157, 2023 WL 4139151 (E.D. Pa. June 22, 2023).....................................7, 12, 16, 27

*Alderfer v. Clemens Markets, Inc. Ret. Sav. & Profit Sharing Plan 003*,
  No. CIV.A. 10-4423, 2012 WL 12292160 (E.D. Pa. Apr. 19, 2012) .......................................8

*Amos v. PPG Indus., Inc.*,
  No. 2:05-CV-70, 2015 WL 4881459 (S.D. Ohio Aug. 13, 2015) .........................................20

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
  No. 3:02-CV-0134, 2016 WL 3522964 (M.D. Pa. June 28, 2016)........................................19

*In re AT&T Corp.*,
  455 F.3d 160 (3d Cir. 2006)................................................................................13, 17, 24

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994)..................................................................................................19

*Beesley v. Int'l Paper Co.*,
  No. 3:06-CV-703-DRH-CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014)..............................20

*Bell v. United Princeton Props., Inc.*,
  884 F.2d 713 (3d Cir. 1989)..............................................................................................25

*Bianucci v. Rite Aid Corp.*,
  No. 24-3356, 2025 WL 2166015 (E.D. Pa. July 30, 2025) .........................................8, 11, 22

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).............................................................................................................5

*Boxell v. Plan for Grp. Ins. of Verizon Commc'ns, Inc.*,
  No. 1:13-CV-089 JD, 2015 WL 4464147 (N.D. Ind. July 21, 2015) ....................................20

*Burnett v. Prudent Fiduciary Servs.*,
  No. 22-cv-270 (D. Del.), Dkt. 143-1.....................................................................................14

*Campbell v. Royal Bank Suppl. Exec. Ret. Plan*,
  646 F.Supp.3d 629 (E.D. Pa. 2022) ...............................................................................*passim*

*In re Cendant Corp. PRIDES Litig.*,
  243 F.3d 722 (3d Cir. 2001)...............................................................................................17

*Chrapliwy v. Uniroyal, Inc.*,
  670 F.2d 760 (7th Cir. 1982) ..............................................................................................20

*In re Cigna Corp. Sec. Litig.*,
    No. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) ....................................................13

*Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
    No. 3:20-CV-1277-S, 2022 WL 2805527 (N.D. Tex. July 18, 2022) ....................................10

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000)..............................................................................................9

*Cunningham v. Wawa, Inc.*,
    387 F.Supp.3d 529 (E.D. Pa. 2019) ........................................................................................9

*Cunningham v. Wawa, Inc.*,
    No. 18-3355, 2021 WL 1626482 (E.D. Pa. Apr. 21, 2021)........................................... *passim*

*Diaz v. BTG Int'l Inc.*,
    19-cv-1664-JMY, 2021 WL 2414580 (E.D. Pa. June 14, 2021) .................................... *passim*

*In re Diet Drugs*,
    582 F.3d 524 (3d Cir. 2009)....................................................................................................6

*Eaves v. Cnty. of Cape May*,
    239 F.3d 527 (3d Cir. 2001)..................................................................................................18

*Frommert v. Conkright*,
    223 F.Supp.3d 140 (W.D.N.Y. 2016) ...................................................................................20

*Glynn v. Maine Oxy-Acetylene Supply Co.*,
    No. 2:19-cv-00176-NT, 2022 WL 17617138 (D. Me. Dec 13, 2022)....................................14

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000)....................................................................................................8

*Gusman v. Unisys Corp.*,
    986 F.2d 1146 (7th Cir. 1993) ...............................................................................................22

*Hall v. AT&T Mobility LLC*,
    No. 07–5325 (JLL), 2010 WL 4053547 (D.N.J. Oct. 13, 2010)............................................13

*Halley v. Honeywell Int'l, Inc.*,
    861 F.3d 481 (3d Cir. 2017).................................................................................................5, 6

*Hawkins v. Cintas Corp.*,
    No. 1:19-CV-1062, 2025 WL 523909 (S.D. Ohio Feb. 18, 2025) .........................................19

*Henderson v. Emory Univ.*,
    No. CV 16-2920-CAP, 2020 WL 9848978 (N.D. Ga. Nov. 4, 2020) ....................................20

*Huffman v. Prudential Ins. Co. of Am.*,
    No. 2:10-cv-05135, 2019 WL 1499475 (E.D. Pa. Apr. 5, 2019)............................................10

*Hurtado v. Rainbow Disposal Co., Inc.*,
    No. 8:17-cv-01605-JLS-DFM, 2021 WL 2327858 (C.D. Cal. May 21, 2021) ......................14

*In re Ikon Office Sols., Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)......................................................................................26

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
    426 F.3d 694 (3d Cir. 2005)............................................................................................18

*Kelly v. Johns Hopkins Univ.*,
    No. 1:16-cv-2835-GLR, 2020 WL 434473 (D. Md. Jan. 28, 2020) ......................................21

*Lanni v. New Jersey*,
    259 F.3d 146 (3d Cir. 2001)............................................................................................18

*Lawson v. Love's Travel Stops & Country Stores, Inc.*,
    No. 1:17-CV-1266, 2021 WL 720359 (M.D. Pa. Feb. 24, 2021) ............................................24

*LeJeune v. Khepera Charter Sch.*,
    420 F.Supp.3d 331 (E.D. Pa. 2019) .................................................................................18

*Lewis-Abdulhaadi v. Union Sec. Ins. Co.*,
    No. 21-cv-03805-WB, 2025 WL 1510577 (E.D. Pa. Mar. 20, 2025)............................ *passim*

*Loughner v. Univ. of Pittsburgh*,
    260 F.3d 173 (3d Cir. 2001)............................................................................................22

*Maldonado v. Houstoun*,
    256 F.3d 181 (3d Cir. 2001)............................................................................................23

*McDonough v. Toys R Us, Inc.*,
    80 F.Supp.3d 626 (E.D. Pa. 2015) ..................................................................................26

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)......................................................................................................18

*Molloy v. Aetna Life Ins. Co.*,
    No. 19-3902, 2024 WL 290283 (E.D. Pa. Jan. 25, 2024).................................................12, 13

*New England Biolabs, Inc. v. Miller*,
    No. 1:20-cv-11234-RGS, 2022 WL 20583575 (D. Mass. Oct. 26, 2022) ................................7

*In re Onix Grp., LLC Data Breach Litig.*,
    No. CV 23-2288-KSM, 2024 WL 5107594 (E.D. Pa. Dec. 13, 2024) ...................................22

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
No. 11-2164, 2017 WL 2734714 (D.N.J. June 26, 2017)...................................................9, 10

*Pa. Env't Def. Found. v. Canon-McMillan Sch. Dist.*,
152 F.3d 228 (3d Cir. 1998).......................................................................................................24

*Palmer v. C&D Techs., Inc.*,
897 F.3d 128 (3d Cir. 2018).......................................................................................................23

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010)....................................................................................................................12

*Pfeifer v. Wawa, Inc.*,
No. 16-497, 2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) ...................................14, 17, 20, 21

*Pledger v. Reliance Trust Co.*,
No. 15-04444, 2021 WL 2253497 (N.D. Ga. Mar. 8, 2021) ...................................................21

*In re Prudential Inc. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998).................................................................................................13, 17

*In re Remicade Antitrust Litig.*,
No. 17-cv-04326, 2023 WL 2530418 (E.D. Pa. Mar. 15, 2023) .............................................23

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005).......................................................................................6, 8, 17, 24

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
No. 08–1432 (DMC)(JAD), 2012 WL 1964451 (D.N.J. 2012)...............................................26

*Stevens v. SEI Inv. Co.*,
No. 18-4205, 2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ............................................. *passim*

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
No. 13-MD-2445, 2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ...............................................23

*Sullivan v. DB Inv. Inc.*,
667 F.3d 273 (3d Cir. 2011).......................................................................................................16

*Sweda v. Univ. of Pa.*,
No. 16-4329, 2021 WL 5907947 (E.D. Pa. Dec. 14, 2021)................................................12, 21

*Tomazzoli v. Sheedy*,
804 F.2d 93 (7th Cir. 1986) .......................................................................................................22

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*,
886 F.Supp. 445 (E.D. Pa. 1995) ..............................................................................................18

*In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*,
    No. CV163087MASLHG, 2022 WL 525807 (D.N.J. Feb. 22, 2022) ....................................17

*Varacallo v. Mass. Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005) ........................................................................................25

*In re Vicuron Pharms., Inc. Sec. Litig.*,
    512 F.Supp.2d 279 (E.D. Pa. 2007) ...............................................................................13

*Wachtel v. Health Net, Inc.*,
    482 F.3d 225 (3d Cir. 2007).............................................................................................10

*Whiteley v. Zynerba Pharms., Inc.*,
    No. 19-4959, 2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) ..................................23

*Yedlowski v. Roka Bioscience, Inc.*,
    No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016)..........................9, 12

**Statutes**

ERISA § 102, 29 U.S.C. § 1022 ........................................................................................3

ERISA § 104, 29 U.S.C. § 1024 ........................................................................................2

ERISA § 404, 29 U.S.C. § 1104 ........................................................................................3

ERISA § 405, 29 U.S.C. § 1105 ........................................................................................3

ERISA § 406, 29 U.S.C. § 1106 ........................................................................................3

**Other Authorities**

Fed. R. Civ. P. 23 ......................................................................................................1, 5

## INDEX OF EXHIBITS

Declaration of R. Joseph Barton ("Barton Decl.")

Declaration of Adam Harrison Garner ("Garner Decl.")

Declaration of Jeffrey J. Corrigan ("Corrigan Decl")

Declaration of Jennifer Lee ("Lee Decl.")

Declaration of Scott M. Lempert ("Lempert Decl.")

## SUMMARY OF LODESTAR

| The Barton Firm Lodestar | | | | | | |
|---|---|---|---|---|---|---|
| Name | Hours | 2023 Rate | 2024 Rate | 2025 Rate | Total (historical rates) | Total (current rates) |
| Joseph Barton (Partner, J.D. 2000) | 333.20 | $975 | $975 | $995 | $327,588.00 | $331,534.00 |
| Alexis Pool (Of Counsel, J.D. 2015) | 25.15 | N/A | N/A | $650 | $16,347.50 | $16,347.50 |
| Ming Siegel (Paralegal, B.A. 2016) | 96.70 | $280 | $280 | $285 | $27,270.50 | $27,559.50 |
| **Total** | **455.05** | | | | **$371,206.00** | **$375,441.00** |

| The Garner Firm Lodestar | | | | |
|---|---|---|---|---|
| Role | Timekeeper | Current Rate | Hours | Fees at Current Rates |
| Associate | Day, Jake S | $315.00 | 0.8 | $192.00 |
| Member | Garner, Adam Harrison | $700.00 | 16 | $5,040.00 |
| Of Counsel | Garner, Melanie J. | $690.00 | 193 | $135,100.00 |
| Paralegal | Moore-Keys, Tiffany | $240.00 | 4.8 | $3,312.00 |
| Paralegal | Farias, Layse | $200.00 | 12 | $2,400.00 |
| | | | | |
| | **TOTAL** | | **226.6** | **$146,044.00** |

## SUMMARY OF EXPENSES

| The Barton Firm Expenses | |
| --- | --- |
| **Expense** | **Amount** |
| Mailing/Postage | $53.60 |
| Mediation | $1,587.38 |
| Pacer | $82.80 |
| Printing/Copying | $22.62 |
| Travel/Lodging | $200.63 |
| Travel/Meals | $109.05 |
| Travel/Transport | $245.75 |
| **Total** | **$2,301.83** |
| The Garner Firm Expenses | |
| **Expense** | **Amount** |
| Filing Fee: | $405.00 |
| Pro Hac Vice Motion Fee: | $75.00 |
| Mediator: | $4,762.12 |
| Meals | $106.16 |
| **TOTAL** | **$5,348.28** |

x

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 23(h), Class Counsel seeks an award of attorneys' fees and expenses from the Settlement Fund. After two years of work, Class Counsel's efforts resulted in a Settlement, which was the product of a mediation with a mediator experienced in ERISA and of numerous negotiations over the terms with Defendants. The Settlement requires Defendants to pay $675,000 (which has already been paid into an escrow account), which Class Counsel calculates as 68% of the maximum loss to the Class (both from contributions that were never made in 2022 and 2023 and from delayed contributions in all years). The Settlement represents an average gross recovery $11,842 per Class member. The recovery in this Settlement, both on a percentage and average per class member basis, exceeds that of most other ERISA class actions, even when cases are settled at later stages of litigation. Despite the obstacle of a terminated Plan (which eliminated a ready way to distribute the payments in a tax-favorable way through an existing Plan), Class Counsel negotiated a serious of provisions designed to preserve, to the extent practicable, the tax-advantaged status of the settlement payments if Class members elected to have these payments paid into an IRA or another retirement plan.

Class Counsel's request for a fee award of one-third is less than their lodestar, is in line with the percentage awarded in other complex ERISA class actions, reflects the risks assumed and the significant recovery achieved for the Class, and is supported by all the factors set forth by the Third Circuit. Class Counsel also requests reimbursement of their modest expenses, the majority of which constitutes payment to the mediator and approval of the amounts charged by the Special Fiduciary and the Settlement Administrator. To date, no Class member has objected. Given the time, efforts and results obtained, the amounts that Class Counsel seeks for attorneys' fees and expenses are more than reasonable and should be awarded.

## BACKGROUND

### Class Counsel's Pre-Litigation Investigation

Class Counsel's work on this case began in October 2023 shortly after Jo Benett contacted counsel after Schnader Harrison Segal & Lewis LLP ("Schnader") failed to make the 2022 contributions that it had promised to make into the Schnader Harrison Segal & Lewis LLP Retirement and Savings Plan ("The Plan") by September 2023. Garner Decl. ¶ 3. Shortly thereafter, Class Counsel obtained and reviewed numerous documents about the Plan and the policies regarding plan contributions from Ms. Bennett.  *Id.* ¶ 5. Class Counsel assisted Ms. Bennett in sending a written request for documents about the Plan to which she was entitled under ERISA § 104(b)(4) and for the names of the fiduciaries of the Plan, which request was sent on October 25, 2023. *Id.* Class Counsel assisted Ms. Bennett notifying Schnader and its Committees on November 7, 2023 that they should preserve documents regarding the failure to make contributions to the Plan. *Id.* ¶ 6.  After receiving the documents in response to Ms. Bennett's October 25, 2023 request in late November 2023, Class Counsel began reviewing those documents as well as those provided by Ms. Bennett, researching the law and in order to draft a Complaint. *Id.* ¶ 7.  In late December 2023, Class Counsel sent a letter to counsel for Schnader's insurer advising that Ms. Bennett would soon file a complaint alleging violations of ERISA regarding the contributions to the Plan, including mandatory "deferred compensation" payments that Schnader made as contributions to the Plan. *Id.* ¶ 8.

### The Litigation & Settlement Negotiations

After reviewing the documents and researching the relevant law under ERISA and the Internal Revenue Code, Class Counsel filed a Complaint on behalf of Plaintiff and a Class of participants and beneficiaries in the Plan against Schnader and the Plan fiduciaries (whom

Schnader had identified as its equity partners) and named the Plan as a nominal defendant. ECF No. 1. Count I alleges that Defendants violated their respective fiduciary duties under ERISA § 404(a)(1) by failing to segregate contributions to the Plan from Schnader's general assets. *Id*. ¶¶ 106, 111. Counts II and III allege that Defendants violated their respective fiduciary duties under ERISA §§ 406(a)(b), 29 U.S.C. § 1106(a)(b) by retaining the employee contributions and converting them to their own use. *Id*. at ¶¶ 114-140. Count V alleges that Schnader as Plan Administrator violated its fiduciary duties under ERISA § 102, 29 U.S.C. § 1022, and ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B) by failing to properly disclose to Plan participants information about the administration of the Plan. *Id*. at ¶¶ 147, 151-153. Count VI alleges that Defendants violated their respective fiduciary duties under ERISA § 405(a), 29 U.S.C. § 1105(a) by failing to disclose that the Plan does not require mandatory deferrals of Income Partner and Counsel compensation. *Id*. ¶¶ 159-161. Count VII alleges that Defendants are liable to Plaintiff and to the class as gratuitous transferees of the fiduciary breaches and prohibited transactions of the Plan. *Id*. ¶ 166.

Defendants responded to the Complaint by filing a motion to dismiss on May 14, 2024. ECF No. 55. Class Counsel filed an opposition to that motion on July 3, 2024. ECF No. 64. The Court denied Defendants' motion on July 22, 2024. ECF No. 66. Thereafter, Defendants filed their Answers to the Complaint. ECF Nos. 70-75. After the motion to dismiss was denied, the Parties agreed to engage in a mediation, but only after Defendants produced and Class Counsel reviewed certain key documents and data (including participant account statements, spreadsheets of participant data, and plan-related communications). Settlement Agreement ("Agmt") at Recital ¶ G. The Parties and their counsel engaged in a mediation with John Utz who is an experienced ERISA attorney with experience mediating ERISA cases. *Id.* at ¶ H. After attending a full day of

private mediation on October 15, 2024, the Parties agreed on certain monetary and non-monetary terms of a class settlement on behalf. *Id.*; ECF No. 81 ¶¶ 3, 4. Class Counsel then engaged in significant negotiations with Defendants for the next six weeks about a written term sheet that was executed on November 25, 2024. Agmt at Recital ¶ H. After the written term sheet was signed, Class Counsel then began drafting and negotiating the terms of a formal settlement agreement, which took an additional 9 months. *See* ECF Nos. 69, 78, 83, 87, 92, and 96. During that time, the Parties engaged in extensive settlement negotiations and then finalized a formal settlement agreement. ECF Nos. 81, 84, and 88.

**The Settlement Agreement**

As detailed on the motion for preliminary approval, the Settlement requires Defendants to pay $675,000, which has been paid into an interest-bearing escrow account and contains provisions to preserve the tax-favored treatment of the settlement payments. ECF No. 160-1 at 5-6. Preserving the tax-favored treatment of these payments was complicated because the Plan had been terminated and there was no Schnader-sponsored ERISA-covered plan into which the settlement proceeds could be paid. *See* Agmt. (Dkt. 106-4) at Recital ¶ I. Despite this obstacle, Class Counsel negotiated specific provisions designed "to ensure that the settlement payments to the Class Members will qualify for the tax benefits associated with ERISA-covered and IRC-qualified plans to the maximum extent possible." *Id.* §§ IV.2, VIII.4. These specific provisions were detailed on the motion for preliminary approval. ECF No. 160-1 at 5-6. Class Counsel specifically negotiated and insisted on these provisions – over significant original resistance by Defendants – to ensure that the settlement payments to Class Members would be tax advantaged to the maximum extent possible. Barton Decl. ¶ 29. These provisions were custom-tailored for this settlement as a result of Class Counsel's efforts to ensure that Class Members would benefit

from tax-favored treatment of the payments despite a terminated plan. *Id.*

Since preliminary approval, Class Counsel has overseen the notice to the Class, which included providing an estimated allocation for each class member. Barton Decl. ¶ 31. To date, no Class member has objected. *Id.* ¶ 26.

***Amount of Attorneys' Fees & Expenses.***

Class Counsel spent over 680 hours on this case from inception. Barton Decl. ¶ 12; Garner ¶ 10.  Based on their customary hourly rates, counsel's lodestar totals $521,485 through November 30, 2025. *Id.* Class Counsel have incurred $7,650.11 in expenses in connection with this litigation to date. Barton Decl. ¶¶ 23; Garner Decl. ¶ 13..

## ARGUMENT

### I.    Class Counsel Should Be Awarded Fees Using the Percentage of Fund Method

Federal Rule of Civil Procedure 23(h) provides "[i]n a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. Rule 23(h). The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Courts utilize two main approaches in analyzing a request for attorneys' fees by class counsel: the "percentage of the fund" method and the "lodestar" method. *Diaz v. BTG Int'l Inc.*, 19-cv-1664-JMY, 2021 WL 2414580, at *8 (E.D. Pa. June 14, 2021) (Younge, J.). "Common fund cases . . . are generally evaluated using a 'percentage-of-recovery' approach, followed by a lodestar cross-check. The percentage-of-recovery approach compares the amount of attorneys' fees sought to the total size of the fund." *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 496 (3d

Cir. 2017); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("The percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure."). The percentage of the common fund method is appropriate even in cases where the statute under which the claim is brought allows for fee-shifting if plaintiff is successful. *In re Diet Drugs,* 582 F.3d 524, 540 (3d Cir. 2009) (rejecting argument that court should have used lodestar rather than common fund method in class action settlement where underlying statute allowed for fee-shifting). This Court applied the common fund approach in awarding a one-third fee from a class action settlement in an ERISA case. *Diaz,* 2021 WL 2414580, at *8 (awarding "attorneys' fees equal to 33.1/3% percent of the $560,000.00 settlement fund"). As this settlement creates a common fund, the percentage-of-the-fund method should be used rather than a purely lodestar-focused analysis. But Class Counsel's requested award is reasonable under either approach.

## II.     Class Counsel's Request for A Fee of One-Third of the Common Fund Is Reasonable

The Third Circuit has identified the following non-exhaustive factors to consider in determining whether attorneys' fees are reasonable under the percentage-of-recovery approach:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; and (7) the awards in similar cases, and (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*Halley*, 861 F.3d at 496 (quotations and citations omitted). All of these factors support awarding Class Counsel a fee that is one-third of the settlement fund.

**A.      The Size of the Fund & Number of Persons Benefited Favors the Fee Award**

This factor evaluates the "size of the fund" compared to "the number of beneficiaries." *Cunningham v. Wawa, Inc.,* No. 18-3355, 2021 WL 1626482, at *7 (E.D. Pa. Apr. 21, 2021) (finding this factor supports a fee award where settlement in an ERISA divided by 4,000 class members yielded an average "recovery of approximately $5,000 for each Member"). This Court approved an award of one-third of a $560,000 settlement in ERISA class action to be divided among 1,555 class members for an average gross recovery of $360 per class member. *Diaz,* 2021 WL 2414580, at *8. Indeed, an "average gross recovery of more than $11,000 per class member" is "significantly higher than that approved in many other ERISA class actions." *New England Biolabs, Inc. v. Miller,* No. 1:20-cv-11234-RGS, 2022 WL 20583575, at *3 (D. Mass. Oct. 26, 2022); *see Ahrendsen v. Prudent Fiduciary Servs., LLC,* No. 21-2157, 2023 WL 4139151, at *7 (E.D. Pa. June 22, 2023) (finding that an average payments of $9,300 per class member "exceeds the typical recovery in other ERISA cases in [this] Circuit"). Here, the recovery of $675,000, which will be divided among 76 class members, represents an average gross recovery of $11,842 per class member. Barton Decl. ¶ 28.

As explained on preliminary approval, the settlement provides an excellent result for class members on a percentage basis as well. ECF 106-1 at 10-11. As another Court in this District recently explained in approving an ERISA settlement reached by these same Class Counsel: "Recoveries of 50% … significantly exceed the results achieved in many other complex class action lawsuits approved in this jurisdiction." *Lewis-Abdulhaadi v. Union Sec. Ins. Co.*, No. 21-cv-03805-WB, 2025 WL 1510577, at *4 (E.D. Pa. Mar. 20, 2025); *see Cunningham* 2021 WL 1626482, at *6 (finding recovery of 18.0% of the best possible outcome for the Class Members and 28.1% for the Subclass Members in ERISA case were "in line with other approved

settlements" in ERISA cases); *Stevens v. SEI Inv. Co.*, No. 18-4205, 2020 WL 996418, at *6 (E.D. Pa. Feb. 28, 2020) (finding ERISA settlement that provided more than 31% of the maximum proposed loss "compare[d] favorably to other class action settlements."); *Alderfer v. Clemens Markets, Inc. Ret. Sav. & Profit Sharing Plan 003*, No. CIV.A. 10-4423, 2012 WL 12292160, at *7 (E.D. Pa. Apr. 19, 2012) (finding settlement providing for $642,500 to be distributed to the class, less 30% in attorneys' fees, $28,000 in expenses and $5,000 incentive award – or $416,000 net – was reasonable). As the $675,000 represents approximately 68% of the maximum recoverable loss, Class Counsel has achieved an excellent result for the class. ECF 106-1 at 10-11. Thus, this factor favors the requested fee.

### B. The Absence of Objections Supports the Fee Award

"[T]he absence of substantial objections by class members to the fee request[] weigh[s] in favor of approving the fee request." *In re Rite Aid*, 396 F.3d at 305. While the deadline for objections has not expired, no Class members have objected to date. Barton Decl. ¶ 26.

### C. The Skill & Efficiency of the Attorneys Supports the Fee Award

This factor evaluates the "skill and efficiency of the attorneys" based on both their prior experience in the subject matter and class action litigation and their efficiency "in resolving these claims." *Bianucci v. Rite Aid Corp.,* No. 24-3356, 2025 WL 2166015, at *9 (E.D. Pa. July 30, 2025). The goal of the percentage fee award is to ensure "that competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000). Class Counsel's skill and efficiency is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Stevens*,

2020 WL 996418, at *11. "The single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000). Here, the efforts of Class Counsel have produced an excellent settlement, providing substantial benefits to the Class. *Supra* II.A. This settlement, including innovative elements designed to preserve the tax-favored status of the settlement payments despite the termination of the Plan and the winding up of Schnader, were a result of the skill and experience of Class Counsel. *Infra* III.A. Thus, Class Counsel's skill supports the fee request.

Other courts in this District have recognized that these Class Counsel "have significant experience litigating class action ERISA cases." *Lewis-Abdulhaadi,* 2025 WL 1510577, at *3; *Cunningham v. Wawa, Inc*., 387 F.Supp.3d 529, 539 (E.D. Pa. 2019) (finding Co-Lead Class Counsel Barton had "substantial experience with both class actions and ERISA litigation, and their performance … well confirms their competence."); *Campbell v. Royal Bank Suppl. Exec. Ret. Plan*, 646 F.Supp.3d 629, 644–45 (E.D. Pa. 2022) (finding Garner was "among a limited number of attorneys who have significant experience handling ERISA matters" and who had "successfully litigated ERISA cases"). The efficiency of Class Counsel in resolving this case is illustrated by other ERISA cases in which counsel have expended more hours to recover less of a percentage of the maximum recovery and less per class member. *Lewis-Abdulhaadi.,* 2025 WL 1510577 at *8 (citing other ERISA cases where counsel expended 2,700 to 8,144 hours on litigation). Thus, Class Counsel's efficiency and efficacy support the fee request.

"The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by [Class] Counsel." *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016); *see P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. 11-2164, 2017 WL 2734714, at *11 (D.N.J. June 26, 2017)

(same). Here, Defendants were vigorously represented by counsel from Groom Law Group, a firm that specializes in ERISA litigation. *See Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 3:20-CV-1277-S, 2022 WL 2805527, at *5 (N.D. Tex. July 18, 2022) (considering Groom Law Group's substantial experience in defending ERISA cases in awarding fees to plaintiff's counsel).[1] The ability of Class Counsel to overcome Defendants' motion to dismiss, and secure a significant recovery for the Class from Defendants represented by experienced ERISA counsel further confirms the quality of Class Counsel's representation. Thus, this factor favors the requested fee.

### D.    The Complexity & Duration of the Litigation Supports the Fee Award

This factor considers "the probable costs, in both time and money of continued litigation." *Universal Travel,* 2017 WL 2734714, at *12 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995)); *Stevens,* 2020 WL 996418, at *11. The Third Circuit has recognized that "ERISA is an enormously complicated statute." *Wachtel v. Health Net, Inc.,* 482 F.3d 225, 237 (3d Cir. 2007).

Complex ERISA class actions like this one often take much longer to resolve. *E.g.*, *Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-cv-05135, 2019 WL 1499475, at *4 (E.D. Pa. Apr. 5, 2019) (resolving after nearly nine years). Continued litigation would require prevailing on class certification completing document discovery, deposing numerous witnesses, and submitting expert reports and testimony. Barton Decl. ¶ 19. Had this litigation continued, Defendants almost certainly would have moved for summary judgment, which Plaintiff would have opposed, and if summary judgment was denied, then prepared for trial. *Id.* Both Class

---

[1] Groom Law Group not only focuses exclusively on employee benefits issues, but advertises itself to be "unparalleled experts" and "experienced litigators" on employee benefit matters. https://www.groom.com/

Counsel have significant experience trying ERISA actions and do not shy away from trial, Class Counsel have sufficient experience to recognize that trial would require substantial time and expense and results are uncertain. Barton Decl. ¶¶ 5-7, 19; Garner Decl. ¶ 14. Even if Plaintiff recovered a larger judgment at trial on behalf of the Class, the actual recovery would likely be postponed for years, because Defendants would likely appeal and collection against numerous individual defendants would take considerable time and effort. Barton Decl. ¶ 19. Even when a plaintiff obtains a complete judgement, the ability to collect against individual defendants is problematic and uncertain. This is particularly true in this case given the number of individual Defendants and Schnader's status as a partnership in the process of dissolution.

### E.    The Risk of Non-Payment Favors the Fee Award

"The risk created by representing a party on a contingent fee basis "militates in favor of approval." *Bianucci*, 2025 WL 2166015, at *9. In another ERISA case, this Court approved an award of one-third of the settlement in part because "[a]t inception of th[e] litigation, Counsel faced the very real prospect of obtaining no financial recovery for their clients." *Diaz*, 2021 WL 2414580, at *8. Here, Plaintiffs' Counsel undertook this complex class action on an entirely contingent basis and prosecuted the claims with no guarantee of compensation or recovery of any related expenses. Barton Decl. ¶ 22; Garner Decl. ¶ 4.

Another court in this District recognized that the "risk of nonpayment" was "even greater" where "lead counsel face[d]" the prospect of "[the corporate defendant's] bankruptcy." *Bianucci*, 2025 WL 2166015, at *9 (finding that this "this significant risk of nonpayment" favored "granting of the fee award"). Analogously here, Class Counsel faced a significant risk of non-payment by handling this on contingency and because Schander was in the process of dissolving when the case was filed. Barton Decl. ¶ 22; Garner Decl. ¶ 14.

### F.    The Amount of Time Devoted to the Case Favors the Fee Award

This factor "looks at counsel's time devoted to the litigation." *Yedlowski*, 2016 WL 6661336, at *22. There is a "strong" presumption that the lodestar constitutes a reasonable fee. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). A lodestar multiplier of less than one "is strong evidence that the requested fees are reasonable." *Lewis-Abdulhaadi,* 2025 WL 1510577, at *8 (quoting *In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*, No. CV163087MASLHG, 2022 WL 525807, at *7 (D.N.J. Feb. 22, 2022)). In an ERISA class action where the parties proceeded to mediation and settlement shortly after the initial conference, another court in this District found that class counsel's expending "700 hours of attorney and other professional and paraprofessional time" was "reasonable for a complex class case." *Stevens*, 2020 WL 996418, at *12. Here, Class Counsel engaged in mediation after defeating the motion to dismiss and, as this Court knows from the status reports, engaging in lengthy negotiations over the terms of the settlement (and particularly the non-monetary terms). Barton Decl. ¶ 13. To accomplish this settlement, Class Counsel has expended approximately 681.65 hours which has a value of $521,485. Thus, this factor favors the requested fee.

### G.    The Awards in Similar Cases Favors the Fee Award

In complex ERISA cases, courts across the country "routinely award attorneys' fees in the amount of one-third of the total settlement fund." *Molloy v. Aetna Life Ins. Co.,* No. 19-3902, 2024 WL 290283, at *6 n.41 (E.D. Pa. Jan. 25, 2024); *Ahrendsen*, 2023 WL 4139151, at *5 (awarding fees of one-third in an ERISA class action after finding "[i]n complex ERISA cases, courts in this Circuit … routinely award attorneys' fees in the amount of one-third of the total settlement fund"); *Sweda v. Univ. of Pa.*, No. 16-4329, 2021 WL 5907947, at *6 (E.D. Pa. Dec. 14, 2021) (awarding fees of one-third after noting that at least 21 ERISA cases where one-third

of the settlement plus costs was awarded). Thus, this factor favors the requested fee.

### H.    The Settlement Resulted Solely from the Efforts of Class Counsel

The Third Circuit has advised district courts to examine whether class counsel benefited

from a governmental investigation or enforcement actions concerning the alleged wrongdoing,

because this can indicate whether counsel should be given full credit for obtaining the value of

the class settlement. *See In re Prudential Inc. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d

283, 338 (3d Cir. 1998); *In re AT&T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006). Where "Class

Counsel were the only attorneys pursuing the claims at issue in this case, this factor weighs in

favor of approval." *Stevens*, 2020 WL 996418, at *12 (finding this factor favored fees in an

ERISA case); *In re Vicuron Pharms., Inc. Sec. Litig.*, 512 F.Supp.2d 279, 287 (E.D. Pa. 2007)

(finding fee supported by the fact that in the absence of governmental investigations, "class

counsel had to perform all the work."); *In re Cigna Corp. Sec. Litig.*, No. 02-8088, 2007 WL

2071898, at *6 (E.D. Pa. July 13, 2007) (finding this factor favored requested fee because "class

counsel accomplished this result without any prior investigation or involvement by" a

government agency). Here, there was no litigation by the government and the result is solely the

result of work by Class Counsel.

### I.    The Requested Fee Is Consistent with Percentage in Individual Cases

A fee of one-third is "consistent with a privately negotiated contingent fee in the

marketplace." *Hall v. AT&T Mobility LLC*, No. 07–5325 (JLL), 2010 WL 4053547, at *21

(D.N.J. Oct. 13, 2010). Other courts in this District have recognized in ERISA cases that "the

customary contingency fee would likely range between thirty and forty percent of the recovery."

*Stevens,* 2020 WL 996418, at *12; *Molloy*, 2024 WL 290283, at *6 (finding the customary fee in

an individual case would be a 40% contingency fee agreement). As a fee of one-third is

consistent with the fee percentage in an individual case, this factor favors the requested fee.

**J.      The Settlement Agreement Contains Innovative Terms**

In prior ERISA litigations where Mr. Barton was Co-Lead Class Counsel, another court in this District found that the class settlement "contain[ed] an innovative element" because "it allow[ed] Class Members the opportunity to distribute their recovery to an IRA or other tax-qualified retirement plan." *Cunningham,* 2021 WL 1626482, at *7; *Pfeifer v. Wawa, Inc.*, No. 16-497, 2018 WL 4203880, at *13 (E.D. Pa. Aug. 31, 2018) (same). In another ERISA class action led by Mr. Barton, where "the [Plan] had been terminated, Class Counsel secured a Settlement Agreement that structure[d] the monetary payment to Class Members" in order to "preserve the tax advantages that Class Members would have enjoyed" under the Plan. *Hurtado v. Rainbow Disposal Co., Inc.,* No. 8:17-cv-01605-JLS-DFM, 2021 WL 2327858, at *4 (C.D. Cal. May 21, 2021) (finding "Class Counsel's procurement of this additional benefit" supported an upward adjusted from the Ninth Circuit's "attorneys' fees benchmark"). Not every ERISA class settlement include such provisions. *Glynn v. Maine Oxy-Acetylene Supply Co.*, No. 2:19-cv-00176-NT, 2022 WL 17617138, at *4 (D. Me. Dec 13, 2022) (describing payments in an ERISA class action would simply sent from the settlement fund by check to class members). In a another ERISA class action in this Circuit, which also involved a terminated plan, the settlement merely provided that the money would be paid into a settlement fund and then distributed to class members by checks payable to the class member, to IRAs, or a retirement plan. *Burnett v. Prudent Fiduciary Servs.*, No. 22-cv-270 (D. Del.), Dkt. 143-1 §6 & 7.24. But there were no other provisions to ensure that these payments would receive tax-favorable treatment. *See id.*[2]

---

[2] Counsel in that case sought fees based on hourly rates that ranged from $700 to $1,250 per hour for partners, $620 to $785 per hour for associates and $200 to $380 per hour for paralegals. ECF

Preserving the tax-favored treatment of these payments was complicated because the Plan had been terminated and there was no Schnader-sponsored ERISA-covered plan into which the settlement proceeds could be paid. *See* Agmt. (Dkt. 106-4) at Recital ¶ I. Despite this obstacle, Class Counsel negotiated specific provisions designed "to ensure that the settlement payments to the Class Members will qualify for the tax benefits associated with ERISA-covered and IRC-qualified plans to the maximum extent possible." *Id.* §§ IV.2, VIII.4. These specific provisions included: (1) requiring Schnader to establish a Special SubTrust of the Plan, *Id.* § VI.1-2; (2) having the Court appoint a Special Fiduciary to administer the Special SubTrust, *Id.* § VI.3; (3) allowing Class Members to elect to transfer settlement proceeds to retirement plan or IRA, *Id.*§§ V.5 & V.6(a); (4) providing that the Special Fiduciary through the Settlement Administrator will issue 1099-Rs to Class Members *Id.*§§ V.8, VI.6; and (5) requesting the Court to make findings, among others, that (a) payments from the Special SubTrust are "restorative payments" to the Plan within the meaning set forth in IRS Revenue Ruling 2002-45; (b) the Special SubTrust qualifies as a sub-trust of the Plan such that distributions from the SubTrust will be treated for income tax purposes as distributions from a tax-qualified retirement plan and trust; (c) the Special Fiduciary will report distributions from the Special SubTrust on Form 1099-R using the Plan's EIN; (d) distributions from the Special SubTrust are eligible for tax-free rollover treatment; and (e) distributions from the Special SubTrust are not subject to the annual limits on contributions under Section 415 of the Internal Revenue Code; *Id.* §§X.1(h) & X.1(k). Indeed, the Settlement Agreement specifically conditions in this Settlement that the distributions of the proceeds of the Net Settlement Fund paid to Class Members preserve, to the maximum extent

---

No. 156 ¶ 30; ECF No. 157 ¶ 12. Mr. Stris, who has same years of experience as Mr. Barton, bills at $1,250 per hour.

possible, the tax benefits associated with ERISA-covered and IRC-qualified pension plans and the Court making the requested findings. Agmt. §§ VIII.4 & XIII.1(c), (d). Class Counsel specifically negotiated and insisted on these provisions – over significant original resistance by Defendants – to ensure that the settlement payments to Class Members would be to the maximum extent possible. Barton Decl. ¶ 29. These provisions were custom-tailored for this settlement as a result of Class Counsel's efforts to ensure that Class Members would benefit from tax-favored treatment of the payments despite a terminated plan.

Additionally, in some ERISA settlements, defendants negotiate that the cost of their hiring an independent fiduciary (which the Department of Labor requires of fiduciaries for ERISA settlements) to be paid from the settlement fund. *Ahrendsen*, 2023 WL 4139151, at *4 (approving settlement where $15,000 for independent fiduciary would be paid from settlement fund); *Diaz*, 2021 WL 2414580, at *2 (approving $560,000 settlement where up $25,000 would be used to pay the costs of the Independent Fiduciary); *Stevens,* 2020 WL 996418, at *14 (approving settlement where $15,000 to be paid from settlement for the Independent Fiduciary). Here, Defendants have agreed to pay for the Independent Fiduciary. Agmt. § XI.1.

Finally, the Settlement provides that Defendants and the Plan will not charge any fees, expenses or costs or impose other charges on Class Members to receive their proceeds from this Settlement, except that the costs for or incurred by the Special Fiduciary will be paid out of the Qualified Settlement Fund or the SubTrust, which must be approved by the Court. Agmt.§ V.10.

### III.    The Lodestar Cross-Check Confirms the Reasonableness of the Fee Request

Courts may award attorneys' fees through the lodestar method – multiplying "the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services." *Sullivan v. DB Inv. Inc.*, 667 F.3d 273, 330 (3d Cir. 2011) (citation omitted). Where the litigation

creates a common fund, such as this case, however, the lodestar is a "cross-check of the court's primary fee calculation using the percentage-of-recovery methodology." *Prudential*, 148 F.3d at 342. A lodestar cross-check is "suggested," but not mandatory. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 735 (3d Cir. 2001). "The lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *In re AT&T Corp.*, 455 F.3d at 164. Because the lodestar calculation serves only as a verification of the primary calculation, it "need entail neither mathematical precision nor bean-counting." *In re Rite Aid,* 396 F.3d at 305-6 (approving as "proper" an "abridged lodestar analysis" as cross-check for percentage-of-recovery calculation); *see Stevens*, 2020 WL 996418, at *12 ("The Court need not receive or review actual billing records when conducting [a lodestar cross-check] analysis").

Here, the lodestar cross-check confirms that Class Counsel's fee request is reasonable. Class Counsel's lodestar (at current rates) are $521,485 as summarized in the chart below:[3]

| Firm | Hours | Fees |
|------|-------|------|
| The Barton Firm LLP | 455.05 | $375,441.00 |
| The Garner Firm, Ltd. | 226.60 | $146,044.00 |
| **Total** | **681.65** | **521,485.00** |

The requested percentage of the common fund award constitutes a lodestar multiplier of approximately 0.43. A lodestar multiplier of less than one "is strong evidence that the requested fees are reasonable," *In re Valeant*, 2022 WL 525807, at *7. It is well below the range that has been recognized as reasonable in this Circuit. *See Pfeifer*, 2018 WL 4203880, at *14 (finding a lodestar multiplier of 2.7 to be "well within the range of reasonableness"); *see In re Cendant*, 243 F.3d at 742 (acceptable multipliers "range from 1.35 to 2.99").

---

[3] More detailed breakdowns of the time billed by professionals in this action are set forth in the accompanying declarations. Barton Decl. ¶ 12; Garner Decl. ¶ 10. Upon the Court's request, Class Counsel will submit detailed contemporaneous billing records under seal.

### A.    Class Counsel's Hourly Rates Are Reasonable

In determining the hourly rate for a fee award, one of "two methods may be used: basing the fee award on current rates or adjusting the fee based on historical rates to reflect its present value." *Eaves v. Cnty. of Cape May,* 239 F.3d 527, 541 (3d Cir. 2001). The court may not, however, simply use historical rates without adjusting for delay. *Lanni v. New Jersey,* 259 F.3d 146, 150 (3d Cir. 2001) (finding that such a calculation was a "misapplication of the appropriate legal standard"); *LeJeune v. Khepera Charter Sch.,* 420 F.Supp.3d 331, 340 (E.D. Pa. 2019) (finding the appropriate rate was the *current* market rate, rather than "the date of service" because a contrary argument conflicted with Third Circuit precedent). Awarding rates charged at the time of the fee petition (as opposed to historic rates at the time the work was done) accounts for the time value of money. *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) ("[C]ompensation received several years after the services were rendered – as it frequently is in complex civil rights litigation – is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings.").

### 1.    Class Counsel's Rates Are Consistent With Rates Charged By Counsel Handling Complex ERISA Cases

The Supreme Court has "consistently looked to the marketplace as our guide as to what is 'reasonable'" in evaluating fee awards. *Jenkins*, 491 U.S. at 285. "[I]n most cases, the relevant rate is the prevailing rate in the forum of the litigation," but there is an exception to this "forum rate rule" where "the need for the special expertise of counsel from a distant district is shown." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005) (cleaned up). This case presents an exception to that general rule.

Complex cases arising under ERISA "demand[] a quality of service for which relatively expensive representation is to be expected." *In re Unisys Corp. Retiree Med. Benefits ERISA*

*Litig.*, 886 F.Supp. 445, 477 (E.D. Pa. 1995) (awarding fees based on hourly rates "albeit expensive" are reasonable compared to the standard rates "in complex class actions"); *see Cunningham*, 2021 WL 1626482, at *8 (reaching the same conclusion and finding class counsel's, including Barton's, "hourly rates are reasonable given the complexity of this ERISA action and the skill and experience of the attorneys involved"). "It is well-recognized that 'ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation.'" *Campbell,* 646 F.Supp.3d at 644 (approving Garner's rates), *aff'd.,* 2024 WL 4380142 (3d Cir. Oct. 3, 2024). Indeed, there are "a limited number of attorneys who have significant experience handling ERISA matters." *Id. at* 644–45 (recognizing Mr. Garner as one of them); *see Hawkins v. Cintas Corp.,* No. 1:19-CV-1062, 2025 WL 523909, at *4 (S.D. Ohio Feb. 18, 2025) (finding there are relatively few firms with ERISA litigation expertise). Class Counsel have significant ERISA experience and expertise. Barton Decl. ¶¶ 4-7; Garner Decl. on Class Cert (ECF No. 101-3) ¶¶ 3-4.

Additionally, "[i]t is well-established that litigating class action lawsuits calls for ***experience*** litigating class actions, given the separate set of responsibilities that are required of class counsel that are unique to class actions." *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.,* No. 3:02-CV-0134, 2016 WL 3522964, at *5 (M.D. Pa. June 28, 2016) (distinguishing a prior class action case where out-of-forum rates were applied because of the experience required to litigate a class action); *see Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (explaining the "adequacy of representation" requirement in Rule 23 and the need for class counsel to be "experienced and qualified to prosecute the claims on behalf of the entire class"). The rates charged by Class Counsel here are consistent with the rates charged by other local class

action attorneys who do not have ERISA expertise. *E.g.*, Corrigan Decl. ¶¶ 6-7. This case not only required expertise in ERISA, but ERISA class action experience.

As a result, courts in this District and across the country have repeatedly concluded that given the complexity of ERISA class actions, there is "a national market for ERISA class action attorneys." *Pfeifer,* 2018 WL 4203880, at *14; *see Lewis-Abdulhaadi,* 2025 WL 1510577, at *9 (recognizing same); *Campbell,* 646 F.Supp.3d at 645 n.12 (acknowledging the same); *Frommert v. Conkright*, 223 F.Supp.3d 140, 151 (W.D.N.Y. 2016) (finding that because ERISA is a "highly specialized area[] of law, the relevant legal community is national in scope.").[4] Given the complex subject matter of such ERISA cases, "the hourly rates to be applied here are not strictly bound by what would be typical for counsel from this district." *Id.* The appropriateness of a national market is confirmed by other attorneys with significant ERISA class action experience. Corrigan Decl. ¶¶ 7-8; Lempert Decl. ¶¶ 8-10; Lee Decl. ¶¶ 7-9.

The appropriateness of a national market is buttressed by Defendants retaining out-of-state counsel. *Henderson v. Emory Univ.*, No. CV 16-2920-CAP, 2020 WL 9848978, at *2 (N.D. Ga. Nov. 4, 2020) (finding a national market in an ERISA case based in part on defendants hiring "large multi-national law firms and utilize[ing] attorneys from offices across the nation"); *see Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 n.18 (7th Cir. 1982) (explaining that when "defendant has hired expensive, out of town counsel, the plaintiffs seem justified in saying that

---

[4] Numerous other courts have concluded that "the market for legal services" by plaintiffs' firms handling ERISA breach of fiduciary duty cases "is a national one." *Beesley v. Int'l Paper Co.*, No. 3:06-CV-703-DRH-CJP, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014); *see Amos v. PPG Indus., Inc.*, No. 2:05-CV-70, 2015 WL 4881459, at *9 (S.D. Ohio Aug. 13, 2015) (same); *Boxell v. Plan for Grp. Ins. of Verizon Commc'ns, Inc.*, No. 1:13-CV-089 JD, 2015 WL 4464147, at *9 (N.D. Ind. July 21, 2015) (finding that because "ERISA is a specialized field with a limited number of attorneys who specialize in representing plaintiffs. . . there is a national market for the services of those attorneys.").

the nature of the case required the skills of out-of-town specialists."); *Sweda,* 2021 WL 5907947, at *7 (acknowledging same). Here, Defendants did not hire a Philadelphia firm, but were exclusively represented by the Groom Law Group in Washington, D.C. This case was not only complex because it involved ERISA, but also because of various tax issues, numerous defendants and a terminated plan. Barton Decl. ¶ 19. As such, both sides hired out-of-state attorneys who had specialized expertise in these complex areas. Given the need for specialized expertise, it is reasonable to use the rates of the national market for complex ERISA matters.

Courts in this District have previously found that these Class Counsel's rates are reasonable and consistent with the national market in "complex ERISA litigation." *Lewis-Abdulhaadi,* 2025 WL 1510577, at *9 (approving the 2025 rates of The Barton Firm and The Garner Firm). Other courts in this District have approved the hourly rates of Mr. Barton (and the attorneys and paralegal who worked with him). *Cunningham,* 2021 WL 1626482, at *8 (approving Mr. Barton's then rate of $875 per hour, as well as his paralegal's and associates' rates in an ERISA class action settlement); *Pfeifer,* 2018 WL 4203880, at *14 (same). On a contested fee motion, another court in this District approved Mr. Garner's then-hourly rate, and suggested his then-hourly rate was "below the market rate." *Campbell,* 646 F.Supp.3d at 644.

The hourly rates for Class Counsel used in the calculation of the lodestar are consistent, if not lower than rates sought and approved in ERISA class actions. *E.g. Kelly v. Johns Hopkins Univ.,* No. 1:16-cv-2835-GLR, 2020 WL 434473, at *6 (D. Md. Jan. 28, 2020) (approving rates "for attorneys with at least 25 years of experience, $1,060 per hour; for attorneys with 15–24 years of experience, $900 per hour; for attorneys with 5–14 years of experience, $650 per hour; for attorneys with 2–4 years of experience, $490 per hour; and for Paralegals and Law Clerks, $330 per hour"); *Pledger v. Reliance Trust Co.*, No. 15-04444, 2021 WL 2253497, at *22-23

(N.D. Ga. Mar. 8, 2021) (approving hourly rates of $650 to $1,060 for attorneys in ERISA class action). Adjusting these rates for inflation would generate rates of $1,301 per hour for Mr. Barton, $1,105 per hour for Mr. Garner, $798 and $405 for paralegals. Yet, their actual rates are lower. *Compare* Barton Decl. ¶ 12 *and* Garner Decl. ¶ 10 *with* Lee Decl. ¶ 7 *and* Lempert Decl. ¶ 8. Thus, Class Counsel's rates are reasonable compared to the national market.

## 2. The Rates Are Reasonable Based on Paying Clients

The rates that counsel actually charge their paying clients is strong evidence of the appropriate market value of their services. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) (explaining an attorney's usual billing rate is "the starting point in ascertaining a reasonable hourly rate"); *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986) ("For private counsel with fee-paying clients, the best evidence is the hourly rate customarily charged by counsel or by her law firm."). These actual rates are the best evidence of what the market will bear, as compared to a "rate devised by the court" because "[l]awyers do not come from cookie cutters"; rather, "[c]lients are willing to pay more, per hour, for . . . better lawyers." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993). Not only do Class Counsel have extensive ERISA experience (and more than some charging higher rates), but each have some clients who pay their hourly rates. Barton Decl. ¶ 17; Garner Decl. ¶ 11.

## 3. Requested Fees are Reasonable Based on Local Hourly Rates in Non-ERISA Actions

In approving a fee award in a class action, another court in this District recently found that "hourly rates, which range from $1,300 to $850 for partners, $800 to $520 for associates, and $350 to $150 for support staff" were "reasonable in this market." *Bianucci*, 2025 WL 2166015, at *9 n.6. Other recent cases in this District have found hourly rates in class actions as high as $1057 and $1550 per hour to be reasonable. *In re Onix Grp., LLC Data Breach Litig.*,

No. CV 23-2288-KSM, 2024 WL 5107594, at *16 (E.D. Pa. Dec. 13, 2024) (approving fees where the highest rate was $1057 per hour); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.,* No. 13-MD-2445, 2024 WL 815503, at *17 (E.D. Pa. Feb. 27, 2024) (approving fees where the highest hourly rate was $1550 per hour); *In re Remicade Antitrust Litig.,* No. 17-cv-04326, 2023 WL 2530418, at *28 (E.D. Pa. Mar. 15, 2023) (finding hourly rates between $115 and $1,325 were reasonable and "fall well within the range of rates charged by other attorneys in this market"); *Whiteley v. Zynerba Pharms., Inc.,* No. 19-4959, 2021 WL 4206696, at *14 (E.D. Pa. Sept. 16, 2021) (finding hourly rates ranging from $110 to $1,100 were "well within the range of what is reasonable and appropriate in this market"). Jeffrey Corrigan, a local attorney who handles non-ERISA class actions, confirms that Class Counsel's rates are consistent with the local rates of class action attorneys. Corrigan Decl. ¶¶ 7-8.

The requested hourly rates are also supported by the Attorney Fee Schedule of the Community Legal Services of Philadelphia, Inc. ("CLS"), which the Third Circuit has found as "being well developed" and "a fair reflection of the prevailing market rates in Philadelphia." *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (quotations omitted); *see Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 132-33 (3d Cir. 2018). CLS reports the range of average hourly rates for all attorneys, regardless of their practice area or skill, with more than twenty-five years of experience as $735-850, as of January 2023.[5] Even using the two-year old CLS rates as the 2025 local rates, the lodestar would still be more than $271,740 for The Barton Firm alone. Barton Decl. ¶ 30. In other words, using those rates, the requested fees would still be below the actual lodestar. "[It] is well settled that a 'lodestar multiplier of less than one' … 'reveals that

---

[5] *Attorney Fees - Community Legal Services*, Community Legal Services of Philadelphia, https://clsphila.org/about-community-legal-services/attorney-fees. This number is based on Philadelphia law firm market survey data and increases in the Consumer Price Index.

the fee request constitutes only a fraction of the work that the attorneys billed' and thus favors approval." *Lawson v. Love's Travel Stops & Country Stores, Inc.,* No. 1:17-CV-1266, 2021 WL 720359, at *6 (M.D. Pa. Feb. 24, 2021) (quoting *Altnor v. Preferred Freezer Servs., Inc.*, 197 F.Supp.3d 746, 767 (E.D. Pa. 2016)). Thus, the local rates also support the requested fee.

### B.    Class Counsel's Hours Are Reasonable

In calculating the lodestar cross-check, the Court multiplies a reasonably hourly rate by "the number of hours reasonably worked on a client's case." *In re Rite Aid*, 396 F.3d at 305. In "cross-checking" the percentage of recovery award against the lodestar, the Third Circuit has emphasized that the calculation is "not a full-blown lodestar inquiry" and need not entail "mathematical precision" or "bean-counting." *AT&T,* 455 F.3d at 169, n.6 (citing *In re Rite Aid*, 396 F.3d at 306). "The lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *Id.* at 164 (citing *In re Rite Aid*, 396 F.3d at 307). As a result "the district court may rely on summaries submitted by counsel and need not review billing records." *In re Rite Aid*, 396 F.3d at 306-07.

"In calculating the second part of the lodestar determination," i.e., the time reasonably expended, a district court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Pa. Env't Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998). In order to reduce the hours, "the Third Circuit has emphasized that a district court must 'go line, by line, by line' through the billing records supporting the fee request." *Campbell*, 646 F.Supp.3d at 647 (quoting *Interfaith,* 426 F.3d at 713). In evaluating a fee award in an ERISA case after settlement, the Third Circuit has cautioned district courts from reducing the number of hours claimed by an attorney if the adverse

24

party has declined to "raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure." *Bell v. United Princeton Props., Inc.,* 884 F.2d 713, 719 (3d Cir. 1989). The one exception is that "a judge may reduce requested fees with respect to matters within the judge's personal knowledge—for example, the amount of time spent by counsel at trial or in conference with the judge." *Id.* As motions for fees in class action cases are filed *before final judgment,* the lodestar does not account for time that will be expended on final approval, the final approval hearing and "the continuing responsibilities [class counsel] will have in responding to Class Member inquiries, assisting the [Settlement Administrator]." *Varacallo v. Mass. Mut. Life Ins. Co.,* 226 F.R.D. 207, 253 (D.N.J. 2005)*.*

Class Counsel have spent 681.65 hours in the litigation of this case. Barton Decl. ¶ 12; Garner Decl. ¶ 10. These hours exclude time that counsel would not bill to a paying client, such as redundant or administrative time. Barton Decl. ¶ 16. These hours include time spent investigating the claims, drafting the Complaint, opposing the motion to dismiss, reviewing materials produced in advance of mediation, preparing for and appearing at mediation, negotiating with opposing counsel, drafting and negotiating the settlement term sheet and the Settlement Agreement, and drafting motions for preliminary approval and class certification. Barton Decl. ¶ 13; Garner Decl. ¶ 12. Of course, these hours do not include time that will be expended on the final approval motion, attending the final approval or the post-judgment settlement administration.

The time expended by Class Counsel is significantly lower than that reflected in many other fee awards in complex class action ERISA settlements given Class Counsel's successful resolution of this case at an early stage, before extensive formal written discovery, depositions, and dispositive motions practice. *See Cunningham*, 2021 WL 1626482, at *8 (finding 2,203.15

25

hours expended by class counsel reasonable in ERISA fiduciary breach class action); *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08–1432 (DMC)(JAD), 2012 WL 1964451, at *8 (D.N.J. 2012) (holding expenditure of 4,640 hours by class counsel reasonable in ERISA fiduciary breach class action). In an ERISA class action where the parties proceeded to mediation and settlement shortly after the initial Rule 16 conference – and apparently, unlike here, counsel there did not have to oppose a motion to dismiss – another court in this District found that Class Counsels' expending "700 hours of attorney and other professional and paraprofessional time" were "reasonable for a complex class case." *Stevens*, 2020 WL 996418, at *12. In this case, the settlement required more time due to the complexities added by a terminated plan and Class Counsel's negotiation of terms designed to protect the tax-favored treatment of the settlement payments to the Class.

## IV.     Class Counsel Are Entitled to Reimbursement of Expenses From the Fund

"In the Third Circuit, it is standard practice to reimburse litigation expenses in addition to granting fee awards." *McDonough v. Toys R Us, Inc.*, 80 F.Supp.3d 626, 658 (E.D. Pa. 2015) (citing *In re AT & T Corp.*, 455 F.3d at 169); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . *reasonable* litigation expenses from that fund"). To date, Class Counsel have expended $7,650.11 in prosecuting this case. Barton Decl. at ¶ 23; Garner Decl. at ¶ 13. These expenses consists of ordinary litigation expenses such as copying, attorney travel, filing fees, and the cost of a mediator. Barton Decl. ¶ 23; Garner Decl. ¶ 13. Class Counsel kept expenses at a reasonable level and incurred only costs that were necessary for the prosecution of this action. Barton Decl. ¶ 12; Garner Decl. ¶ 13.

These expenses are summarized below: [6]

| The Barton Firm Expenses | |
|---|---|
| **Expense** | **Amount** |
| Mailing/Postage | $53.60 |
| Mediation | $1,587.38 |
| Pacer | $82.80 |
| Printing/Copying | $22.62 |
| Travel/Lodging | $200.63 |
| Travel/Meals | $109.05 |
| Travel/Transport | $245.75 |
| **Total** | **$2,301.83** |
| The Garner Firm Expenses | |
| **Expense** | **Amount** |
| Filing Fee: | $405.00 |
| Pro Hac Vice Motion Fee: | $75.00 |
| Mediator: | $4,762.12 |
| Meals | $106.16 |
| **TOTAL** | **$5,348.28** |

As Class Counsel will incur additional expenses prior to the final approval hearing, Class

Counsel may submit an updated summary of their expenses prior to the final approval hearing.

**V.    Class Counsel Should Be Authorized to Pay the Settlement Administrator & the Special Fiduciary From the Settlement Fund.**

Reimbursement of expenses from the common fund "includes reimbursement for

settlement administration." *Stevens*, 2020 WL 996418, at *14. Settlement Administration

expenses in ERISA class action often amount to more than what will be incurred here. *E.g.,*

*Ahrendsen,* 2023 WL 4139151, at *4 (approving settlement administration expenses of $17,500);

*Stevens,* 2020 WL 996418, at *14 (approving $24,936 for the Settlement Administrator). Here,

the Settlement Administrator expenses will be $10,000. Dkt 106-9. As this was sought by a

competitive bid process and less than the amounts in other ERISA class settlements, it should be

approved. Likewise, the Special Fiduciary will charge $7,000 ($6,500 in fees and $500 in

---

[6] Upon the Court's request, Class Counsel will provide more detail about litigation expenses.

expenses). Dkt. 106-7. As illustrated by the amount charged by independent fiduciaries to review

settlements. *Supra* II.J. Thus, the amounts changed by the Settlement Administrator and the

Special Fiduciary are reasonable and should be approved.

## CONCLUSION

For the reasons above, Class Counsel respectfully requests that the Court grant Class

Counsel's Motion for attorneys' fees and reimbursement of litigation expenses.

Respectfully submitted,

_____
R. Joseph Barton (*Pro Hac Vice*)
The Barton Firm LLP
1633 Connecticut Ave, Suite 200
Washington D.C. 20009
Tel: (202) 734-7046
jbarton@thebartonfirm.com

Adam Harrison Garner (320476)
Melanie J. Garner (315058)
The Garner Firm, Ltd.
1617 John F. Kennedy Blvd., Suite 550
Philadelphia, PA 19103
Tel: (215) 645-5955
Fax: (215) 645-5960
adam@garnerltd.com
melanie@garnerltd.com

*Attorneys for Plaintiff*

Dated: December 5, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of December, 2025, a copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

_____
Ming Siegel